No. 25-5181

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTRO DE TRABAJADORES UNIDOS, et al.,

Plaintiffs-Appellants,

v.

SCOTT BESSENT, et al.,

Defendants-Appellees.

On Appeal from the United States
District Court for the District of Columbia
No. 1:25-cv-00677-DLF
Hon. Dabney L. Friedrich

**BRIEF OF APPELLANTS CENTRO DE TRABAJADORES
UNIDOS, IMMIGRANT SOLIDARITY DUPAGE, SOMOS UN
PUEBLO UNIDO, AND INCLUSIVE ACTION FOR THE CITY**

Kevin L. Herrera
Mark H. Birhanu
Raise the Floor Alliance
1 N. LaSalle Street
Suite 1275
Chicago, Illinois 60602
(312) 795-9115

Nandan M. Joshi
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-7733
njoshi@citizen.org

Alan B. Morrison
George Washington University
Law School
2000 H Street, NW
Washington, DC 20052
(202) 994-7120

June 27, 2025

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES, AND RULE 26.1 DISCLOSURE

As required by Circuit Rules 26.1, 28(a)(1), and Federal Rule of Appellate Procedure 26.1, counsel for appellants, hereby certify as follows:

## Parties and Amici

Plaintiffs in the district court and appellants in this Court:

- Centro de Trabajadores Unidos
- Immigrant Solidarity DuPage
- Somos Un Pueblo Unido
- Inclusive Action for the City

Defendants in the district court and appellees in this Court:

- Scott Bessent, in his official capacity as Secretary of the Treasury
- Internal Revenue Service
- Melanie Krause, in her official capacity as acting Commissioner of Internal Revenue, was named a defendant in the district court. William H. Long II has since been confirmed as the Commissioner of Internal Revenue and is an appellee in this Court by virtue of Fed. R. App. P. 43(c).
- Department of Homeland Security
- Kristi Noem, in her official capacity as Secretary of Homeland Security
- U.S. Immigration and Customs Enforcement
- Todd M. Lyons, in his official capacity as acting Director of U.S. Immigration and Customs Enforcement.

The following amici appeared in the district court:

- 105 members of Congress, listed in the attachment to the certificate of parties, rulings, and related cases, and Rule 26.1 statement filed with this Court on May 29, 2025.

- Cambridge Economic Opportunity Committee and Community Economic Development Center of Southeastern Mass

American Oversight moved to intervene in the district court for the limited purpose of seeking unsealing of judicial records. ECF 59. The district court denied intervention. Minute Order (May 12, 2025).

## Rulings Under Review

Memorandum Opinion and Order, dated May 12, 2025 (ECF 67), issued by Judge Dabney L. Friedrich in No. 1:25-cv-677-DLF (D.D.C.).

## Related Cases

This case has not previously been before this Court or any other court other than the district court from which this appeal was taken. Undersigned counsel is unaware of any other case that is related to this case.

## Rule 26.1 Disclosure

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, plaintiffs-appellants Centro de Trabajadores Unidos,

Immigrant Solidarity DuPage, Somos Un Pueblo Unido, and Inclusive Action for the City state that they are nonprofit, non-stock corporations. They have no parent corporations, and no publicly traded corporations have an ownership interest in them.

Centro de Trabajadores Unidos, Immigrant Solidarity DuPage, and Somos Un Pueblo Unido are membership organizations devoted to promoting the interests of their immigrant worker members.

Inclusive Action for the City is a certified Community Development Financial Institution that provides loans to underinvested communities, including immigrant entrepreneurs.

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases, and
    Rule 26.1 Disclosure.......................................................i

Table of Authorities..............................................................v

Glossary ..........................................................................xiv

Introduction........................................................................1

Jurisdiction.........................................................................4

Question Presented .............................................................4

Statutory Provisions............................................................4

Statement of the Case .........................................................4

    A.    Statutory and regulatory framework...........................4

    B.    This lawsuit and the IRS-ICE data-sharing
        agreement................................................................18

Summary of Argument.......................................................25

Standard of Review ...........................................................29

Argument...........................................................................30

I.    Section 6103(i)(2) may not be used solely to obtain
    taxpayer address information from the IRS...............30

II.    Appellants are likely to succeed on their claim that
    the IRS acted arbitrarily in agreeing to share
    taxpayer information with ICE. ................................43

III.    The remaining factors support a grant of a
    preliminary injunction. .............................................48

Conclusion ........................................................................54

Certificate of Compliance..................................................56

Certificate of Service ........................................................57

Statutory Addendum

# TABLE OF AUTHORITIES*

**Cases**                                                               **Page(s)**

*American Bus Ass'n v. Slater,*
    231 F.3d 1 (D.C. Cir. 2000) ............................................................... 33

*Arizona v. United States,*
    567 U.S. 387 (2012) ....................................................................... 5, 18

*Changji Esquel Textile Co. v. Raimondo,*
    40 F.4th 716 (D.C. Cir. 2022) ..................................................... 29, 49

*Children's Hospital Ass'n of Texas v. Azar,*
    933 F.3d 764 (D.C. Cir. 2019) ........................................................ 45

*Consolidated Edison Co. of New York v. FERC,*
    315 F.3d 316 (D.C. Cir. 2003) ........................................................ 48

*Davis v. Michigan Department of the Treasury,*
    489 U.S. 803 (1989) .......................................................................... 32

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) .......................................................................... 45

*EPIC v. IRS,*
    910 F.3d 1232 (D.C. Cir. 2018) ................................................... 7, 8

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) .......................................................................... 44

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) .......................................................................... 44

*FDA v. Wages & White Lion Investments,*
    145 S. Ct. 898 (2025) ........................................................................ 44

*Food Marketing Institute v. Argus Leader Media,*
    588 U.S. 427 (2019) .......................................................................... 34

---

\* Authorities upon which we chiefly rely are marked with asterisks.

v

*Graham County Soil & Water Conservation District*
 *v. United States ex rel. Wilson,*
 559 U.S. 280 (2010) ..................................................................... 31

*Harrington v. Purdue Pharma L.P.,*
 603 U.S. 204 (2024) ..................................................................... 32

*Hospitality Staffing Solutions, LLC v. Reyes,*
 736 F. Supp. 2d 192 (D.D.C. 2010) ........................................... 51

*Huisha-Huisha v. Mayorkas,*
 27 F.4th 718 (D.C. Cir. 2022) .................................................... 54

*League of Women Voters of the United States v. Newby,*
 838 F.3d 1 (D.C. Cir. 2016) ........................................................ 53

*Media Matters for America v. Paxton,*
 138 F.4th 563 (D.C. Cir. 2025) ................................................... 53

*National Treasury Employees Union*
 *v. U.S. Department of the Treasury,*
 838 F. Supp. 631 (D.D.C. 1993) ................................................. 51

*Ohio v. EPA,*
 603 U.S. 279 (2024) ..................................................................... 43

*POET Biorefining, LLC v. EPA,*
 970 F.3d 392 (D.C. Cir. 2020) .................................................... 47

*Sandpiper Residents Ass'n v. HUD,*
 106 F.4th 1134 (D.C. Cir. 2024) ................................................. 33

*Singh v. Berger,*
 56 F.4th 88 (D.C. Cir. 2022) ...................................................... 52

*Syncor International Corp. v. Shalala,*
 127 F.3d 90 (D.C. Cir. 1997) ...................................................... 47

*Tierney v. Schweiker,*
 718 F.2d 449 (D.C. Cir. 1983) .................................................... 50

*Trump v. Deutsche Bank AG,*
943 F.3d 627 (2d Cir. 2019),
*vacated and remanded sub nom.,*
*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) ............................ 51

*Trump v. Mazars USA, LLP,*
591 U.S. 848 (2020) .................................................................... 51

*Trump v. Thompson,*
20 F.4th 10 (D.C. Cir. 2021) ...................................................... 30

*Türkiye Halk Bankasi A.S. v. United States,*
598 U.S. 264 (2023) ............................................................... 31, 32

*Winter v. NRDC,*
555 U.S. 7 (2008) ........................................................................ 29

**Statutes**

5 U.S.C. § 553(b)(A) ..................................................................... 47

5 U.S.C. § 706(2)(A) ..................................................................... 43

8 U.S.C. § 1227 .............................................................................. 5

8 U.S.C. § 1253(a)(1) .................................................................... 22

26 U.S.C. § 1 ............................................................................. 4, 5

26 U.S.C. § 6012 ........................................................................ 4, 5

26 U.S.C. § 6103 ...................... 1, 14, 15, 20, 21, 28, 31, 43, 49, 50, 53, 54

26 U.S.C. § 6103(b)(1) .................................................................. 10

26 U.S.C. § 6103(b)(2)(A) ............................................................. 11

26 U.S.C. § 6103(b)(3) .................................................................. 10

26 U.S.C. § 6103(b)(6) .................................................................. 11

26 U.S.C. § 6103(i)(1) ...................................................... 31, 34, 36, 37

\*    26 U.S.C. § 6103(i)(2) ............ 10–14, 22–28, 30–32, 34, 36–42, 44–48, 54

26 U.S.C. § 6103(i)(2)(A) .................................................. 9, 41

26 U.S.C. § 6103(i)(2)(B) ................................................. 10, 41

26 U.S.C. § 6103(i)(2)(B)(i) ............................................ 32, 46

26 U.S.C. § 6103(i)(2)(B)(iv) ............................................... 41

26 U.S.C. § 6103(i)(2)(C) ............................................ 11, 24, 33

26 U.S.C. § 6103(i)(4) .................................................. 27, 36

26 U.S.C. § 6103(i)(4)(A) ..................................................... 36

26 U.S.C. § 6103(i)(4)(B) ..................................................... 36

26 U.S.C. § 6103(i)(5) ............................... 12, 13, 24, 27, 35, 38, 39

26 U.S.C. § 6103(i)(7) ....................................................... 35

26 U.S.C. § 6103(i)(7)(A) ..................................................... 35

26 U.S.C. § 6103(i)(7)(B) ..................................................... 35

26 U.S.C. § 6103(i)(7)(C) ............................................... 35, 37

26 U.S.C. § 6109 ............................................................... 6

26 U.S.C. § 6109(d) ............................................................ 6

26 U.S.C. § 6109(i) ............................................................ 6

26 U.S.C. § 6651 .............................................................. 5

26 U.S.C. § 7201 .............................................................. 5

26 U.S.C. § 7701(b) ........................................................... 5

28 U.S.C. § 1291(a)(1) ........................................................ 4

28 U.S.C. § 1331 ............................................................. 4

Tax Reform Act of 1976,
  Pub. L. No. 94-455, tit. XII, sec. 1202(a),
  90 Stat. 1520, 1667 .......................................................... 7, 8, 9, 34, 39

Tax Equity & Fiscal Responsibility Act of 1982,
  Pub. L. No. 97-248, § 356(a), 96 Stat. 324, 644 ........................... 13, 35

Revenue Act of 1978,
  Pub. L. No. 95-600, § 701(bb), 92 Stat. 2763, 2922 (1978) ............... 11

Victims of Terrorism Tax Relief Act of 2001,
  Pub. L. No. 107-134, § 201(b), 115 Stat. 2427, 2440 ........................ 35

**Legislative Materials**

\* H.R. Conf. Rep. No. 97-760 (1982) ............................................. 13, 38, 47

H.R. Rep. No. 95-700 (1978) ...................................................... 11, 33, 46

\* S. Rep. No. 95-745 (1978) .......................................................... 11, 33, 46

\* S. Rep. No. 94-938, pt. 1 (1976) ......................................... 7, 8, 9, 10, 34, 39

*Social Security Number and Individual Taxpayer
  Identification Number Mismatches and Misuse: Hearing
  Before the Subcomm. on Oversight and Subcomm. on Soc.
  Sec. of the H. Comm. on Ways & Means*, 108th Cong. 12
  (2004) ....................................................................................... 16

*The Internal Revenue Service's Response to Committee
  Recommendations Contained in its August 5, 2015 Report:
  Hearing before the S. Comm. on Finance*, 104th Cong., 1st
  Sess. 28 (2015) ........................................................................ 16

**Federal Register**

61 Fed. Reg. 26788 (May 29, 1996) ............................................. 7, 15

60 Fed. Reg. 30211 (June 8, 1995) .............................................. 15

89 Fed. Reg. 93172 (Nov. 26, 2024) ............................................. 45

Executive Order 14159, 90 Fed. Reg. 8443 (Jan. 30, 2025)................... 18

Executive Order 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025)............. 18, 21

Executive Order 14165, 90 Fed. Reg. 8467 (Jan. 30, 2025)................... 18

**IRS and Treasury Materials**

Assistant Chief Counsel (Disclosure Litigation), IRS,
Disclosure Litigation Reference Book (rev. Apr. 2000),
https://www.google.com/books/edition/Disclosure_Litigatio
n_Reference_Book/uumGnjISUOoC................................................... 14

Internal Revenue Manual § 11.3.28.1.1(1) (Apr. 17, 2025) ................... 34

\*   Internal Revenue Manual § 11.3.28.4(5) (Apr. 17, 2025) ........... 14, 32, 44

\*   IRS, Disclosure and Privacy Law Reference Guide,
Pub. 4639 (Oct. 2012), https://www.irs.gov/pub/irs-
pdf/p4639.pdf.................................................... 14, 32, 45, 46

IRS, Disclosure Report for Public Inspection Pursuant to
Internal Revenue Code Section 6103(p)(3)(C) for Calendar
Year 2023, JCX-14-24 (Apr. 25, 2024),
https://www.jct.gov/publications/2024/jcx-14-24/ ............................ 40

IRS, Disclosure Report for Public Inspection Pursuant to
Internal Revenue Code Section 6103(p)(3)(C) for Calendar
Year 2022, JCX-6-23 (Apr. 18, 2023),
https://www.jct.gov/publications/2023/jcx-6-23/ ............................... 40

IRS, Disclosure Report for Public Inspection Pursuant to
Internal Revenue Code Section 6103(p)(3)(C) for Calendar
Year 2021, JCX-8-22 (May 17, 2022),
https://www.jct.gov/publications/2022/jcx-8-22/ ............................... 40

IRS, Disclosure Report for Public Inspection Pursuant to
Internal Revenue Code Section 6103(p)(3)(C) for Calendar
Year 2020, JCX-1721 (Apr. 13, 2021),
https://www.jct.gov/publications/2021/jcx-17-21/ ............................. 40

IRS, Disclosure Report for Public Inspection Pursuant to Internal Revenue Code Section 6103(p)(3)(C) for Calendar Year 2019, JCX-13-20 (Apr. 24, 2020), https://www.jct.gov/publications/2020/jcx-13-20/ ............................. 40

IRS, Disclosure Report for Public Inspection Pursuant to Internal Revenue Code Section 6103(p)(3)(C) for Calendar Year 2018, JCX-21-19 (May 14, 2019), https://www.jct.gov/publications/2019/jcx21-19/ ............................. 40

IRS, Disclosure Report for Public Inspection Pursuant to Internal Revenue Code Section 6103(p)(3)(C) for Calendar Year 2017, JCX-29-18 (Apr. 18, 2018), https://www.jct.gov/publications/2018/jcx-29-18/ ............................. 40

IRS, Introduction to residency under U.S. tax law (Mar. 12, 2025), https://www.irs.gov/individuals/international-taxpayers/introduction-to-residency-under-us-tax-law ..................... 6

IRS, Tax Information Section Guidelines for Federal, State, and Local Agencies, Publication 1075 (rev. Nov. 2021), https://www.irs.gov/pub/irs-pdf/p1075.pdf ....................................... 50

Memorandum from Gordon C. Milbourn III, Acting Deputy Inspector General for Audit, for Deputy Commissioner for Services & Enforcement 3 (Jan. 8, 2004), https://famguardian.org/PublishedAuthors/Govt/TIGTA/2004-30-023.pdf .................................................................................... 16

Memorandum from Pamela J. Gardiner, Deputy Inspector General for Audit, to Commissioner Rossotti 5 (Sept. 28, 1999), https://cdn.cnsnews.com/attachments/itin_report-tigta-september_1999.pdf ................................................................. 15

Treasury Inspector General for Tax Administration, Administration of the Individual Taxpayer Identification Number Program, Rep. No. 2024-400-012 (Dec. 19, 2023), https:// www.tigta.gov/sites/default/files/reports/2024-11/2024400012fr.pdf ......................................................................... 52

## Regulations

20 C.F.R. § 422.104 ................................................................. 6

## Other Authorities

American Immigration Council, The Facts About the
    Individual Taxpayer Identification Number (ITIN),
    https://www.americanimmigrationcouncil.org/wp-
    content/uploads/2025/01/the_facts_about_the_individual_t
    ax_identification_number_0.pdf ........................................ 49

Andrew Duehren & Eileen Sullivan, *I.R.S. Prepares to Help
    Find Immigrants Targeted for Deportation*, N.Y. Times
    (Mar. 22, 2025) ................................................................. 20

Bernie Becker & Myah Ward, *IRS upheaval cracks agency
    resistance to data sharing with immigration officials*,
    Politico Pro (Mar. 28, 2025) ............................................. 21

ICE, Annual Report (Dec. 19, 2024),
    https://www.ice.gov/doclib/eoy/iceAnnualReportFY2024 .................. 43

Jacob Bogage & Jeff Stein, *IRS nears deal with ICE to share
    addresses of suspected undocumented immigrants*, Wash.
    Post (Mar. 22, 2025) ......................................................... 20

Jacob Bogage, Jeff Stein, Maria Sacchetti & Lisa Rein, *DHS
    asks IRS for addresses of people believed to be in U.S.
    illegally*, Wash. Post (Feb. 28, 2025) ........................... 19, 42

Julia Ainsley, Ryan J. Reilly, Allan Smith, Ken Dilanian, &
    Sarah Fitzpatrick, *A sweeping new ICE operation shows
    how Trump's focus on immigration is reshaping federal
    law enforcement*, NBC News (June 4, 2025) ...................... 19

Maria Sacchetti, *Undocumented and paying taxes, they seek a
    foothold in the American Dream*, Wash. Post (Mar. 11,
    2017) ................................................................................ 17

Marshall Cohen & Rene Marsh, *IRS reaches data-sharing deal with DHS to help find undocumented immigrants for deportation*, CNN (Apr. 8, 2025).........................................42

National Immigration Law Center, FAQ: Individual Taxpayer Identification Number (ITIN): A Powerful Tool for Immigrant Taxpayers, https://www.nilc.org/resources/itinfaq/.............................49

Nick Miroff & Maria Sacchetti, *Trump officials issue quotas to ICE officers to ramp up arrests*, Wash. Post (Jan. 26, 2025)...........19

Press Briefing by Press Secretary Karoline Leavitt, 2025 WL 326107 (Jan. 29, 2025).........................................18

Rebecca Beitsch, *IRS, DHS reach deal on information sharing on migrants*, The Hill (Apr. 8, 2025).................................22

Richard Rubin & Michelle Hackman, *IRS Nears Deal to Share Data for Immigration Enforcement*, Wall St. J. (Mar. 22, 2025).........................................20

Tax Payments by Undocumented Immigrants, Inst. on Taxation & Econ. Policy (July 30, 2024), https://itep.org/undocumented-immigrants-taxes-2024/....................7

*Treasury Responds to Groups' Concern Over Targeting ITIN Users*, Tax Notes (Mar. 24, 2004), https://www.taxnotes.com/research/federal/other-documents/treasury-tax-correspondence/treasury-responds -to-groups-concern-over-targeting-itin-users/yqkt...........................17

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| DHS | Department of Homeland Security |
| DOJ | Department of Justice |
| ICE | U.S. Customs and Immigration Enforcement |
| IRS | Internal Revenue Service |
| ITIN | Individual taxpayer identification number |
| MOU | Memorandum of Understanding |

## INTRODUCTION

Immigrants not authorized to work in this country are legally compelled to file federal tax returns and pay taxes on the income that they earn. The Internal Revenue Service (IRS) is required by law to keep the information furnished by taxpayers confidential—including from immigration authorities and other law enforcement agencies—except under the tightly circumscribed circumstances in 26 U.S.C. § 6103 where Congress has authorized limited disclosure.

One such circumstance is when law enforcement seeks access to information provided by someone *other than* the taxpayer to support a criminal investigation or proceeding, but not for other purposes, such as to aid in this case the civil enforcement of the immigration laws. When complying with a valid request for such information, the IRS may release to the investigating agency the name and address of the taxpayer to which the information pertains. But if a law enforcement agency seeks information furnished by the taxpayer, it is required to make an individualized showing to a judge and to get the court's sign-off before the IRS can lawfully disclose the taxpayer information. By statute,

information disclosure by the IRS in response to criminal inquiries has functioned this way for fifty years.

President Trump's prioritization of civil immigration enforcement has upended settled law and policy governing information disclosure at the IRS. Removing undocumented immigrants requires locating them. IRS databases contain the addresses of millions of taxpaying immigrants—information that the Department of Homeland Security (DHS) and its subagency U.S. Immigration and Customs Enforcement (ICE) can use to carry out the administration's immigration enforcement agenda. The IRS and DHS therefore cut a deal, under which the IRS would share taxpayer addresses with ICE on a mass scale, without ICE first obtaining court approval.

Appellants are organizations that serve immigrant communities, which include undocumented workers who pay taxes in reliance on the privacy protections that Congress and the IRS have assured them would prevent repurposing of their tax information for immigration enforcement. Appellants brought this action after reports surfaced that an information-sharing deal between the IRS and DHS was in the works. While briefing on a motion for a preliminary injunction was underway, the IRS

and DHS entered into a memorandum of understanding (MOU) that declares DHS to be criminally investigating "numerous" immigrants for overstaying their removal orders. The purported purpose of the MOU is to assist criminal investigations of overstays of removal orders by ICE. The MOU authorizes the IRS to turn over immigrant taxpayers' addresses to ICE without the need for a court order. Once the IRS shares taxpayer information with ICE, there is no feasible way to prevent irreparable harm from ICE's use or misuse of taxpayer addresses to carry out civil immigration enforcement.

In denying Appellants' motion for a preliminary injunction, the district court held that ICE does not need a court order to obtain taxpayers' addresses and that the IRS acted reasonably in entering into an MOU that disrupts decades of IRS practice. This Court should reverse. Importantly, although the district court's decision will result in immediate harm to taxpaying immigrants and their families, its implications extend to all taxpayers—including citizens—who have relied on federal assurances of confidentiality. If the court's reasoning stands, federal law enforcement will have carte blanche to misuse IRS address data that taxpayers are legally compelled to reveal to engage in

mass surveillance of taxpayers' whereabouts—a result inconsistent with the text, structure, and history of the confidentiality protections of the Internal Revenue Code.

## JURISDICTION

The district court has statutory jurisdiction over this action under 28 U.S.C. § 1331. This Court has jurisdiction over the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction under 28 U.S.C. § 1291(a)(1).

## QUESTION PRESENTED

Whether the district court erred in denying Appellants' motion for a preliminary injunction to prevent the IRS from sharing confidential taxpayer information with DHS and ICE in violation of the confidentiality provisions of the Internal Revenue Code.

## STATUTORY PROVISIONS

Pertinent statutory provisions are set forth in an addendum to this brief.

## STATEMENT OF THE CASE

### A. Statutory and regulatory framework

**1.** Individuals who work in the United States are required by law to pay federal income taxes and to file tax returns with the IRS. 26 U.S.C.

§§ 1, 6012. A taxpayer's failure to comply with these obligations can result in monetary penalties. *Id.* § 6651. A willful attempt to "evade or defeat" federal taxes can result in a fine of up to $100,000 and five years in prison. *Id.* § 7201.

Some individuals who work and earn income in the United States are immigrants who are not legally authorized to be present and work in this country. "As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, immigrants not authorized to remain in the country face the risk of being removed from the United States pursuant to civil enforcement actions under federal immigration laws. 8 U.S.C. § 1227.

Immigrants without legal authority to work in the United States are subject to the same duties to file federal tax returns and pay federal taxes that are imposed on citizens and immigrants with work authorization. Under the Internal Revenue Code, individuals who are not U.S. citizens are classified as either residents or nonresidents, and a resident includes any individual who has a "substantial presence" in the United States. 26 U.S.C. § 7701(b). Thus, "[a]lthough the immigration

laws of the United States refer to individuals who are not U.S. citizens as immigrants, nonimmigrants, and undocumented individuals, the tax laws of the United States refer only to residents and nonresidents," and "an undocumented individual who meets the Substantial Presence Test will be treated for tax purposes as a U.S. resident." IRS, Introduction to residency under U.S. tax law (Mar. 12, 2025), https://www.irs.gov/individuals/international-taxpayers/introduction-to-residency-under-us-tax-law.

Under 26 U.S.C. § 6109, all taxpayers must include a taxpayer identification number to identify themselves on their tax returns and other tax filings. For citizens and some lawfully admitted immigrants, the taxpayer identification number is their Social Security number. 26 U.S.C. § 6109(d). Immigrants not authorized to work in the United States, however, are not eligible for a Social Security number. 20 C.F.R. § 422.104. But in 1995 Congress authorized the IRS to issue individual taxpayer identification numbers (ITINs). *See* 26 U.S.C. § 6109(i). And in 1996, the IRS adopted its ITIN program to assign taxpayer identification numbers so that all taxpayers can "maintain compliance with [their

obligations] under the [Internal Revenue Code]." 61 Fed. Reg. 26788, 26788 (May 29, 1996).

The ITIN program generates billions of dollars in tax revenue. In 2022, undocumented workers used the ITIN program to pay $59.4 billion in federal income taxes. That year, undocumented workers also paid $25.7 billion in Social Security taxes and $6.4 billion in Medicare taxes, programs for which they are statutorily ineligible to receive benefits. Tax Payments by Undocumented Immigrants, Inst. on Taxation and Economic Policy (July 30, 2024), https://itep.org/undocumented-immigrants-taxes-2024/.

**2.** The IRS "acquires and maintains a reservoir of sensitive information about taxpayers." *EPIC v. IRS*, 910 F.3d 1232, 1235 (D.C. Cir. 2018). Before the enactment of the Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520, tax returns were considered "public records" and "open to inspection under regulations approved by the President, or under Presidential order." S. Rep. No. 94-938, pt. 1, at 318 (1976). For instance, "[a]mong the Federal agencies, one of the biggest users of tax information on an individual case basis (as against a 'mass' basis for statistical use) is the Department of Justice [DOJ]," which used taxpayer

information in both criminal and civil cases. *Id*. at 317. Under Treasury regulations at the time, "the Justice Department and other Federal agencies, as a practical matter, [were] able to obtain [taxpayer] information for nontax purposes almost at their sole discretion." *Id*. at 328.

Congress enacted the Tax Reform Act after "the Nixon administration compiled a list of political enemies and ordered the IRS to harass them." *EPIC*, 910 F.3d at 1235. Congress recognized that "the IRS probably has more information about more people than any other agency in this country," but "in many cases the Congress [had] not specifically considered whether the agencies which have access to tax information should have that access." S. Rep. No. 94-938, pt. 1, at 316–17. By enacting the Tax Reform Act, Congress addressed concerns that then-existing protections of taxpayer information were insufficient to meet the "reasonable expectation of privacy on the part of the American citizen with respect to such information," which in turn put at risk "the effectiveness of our country's very successful voluntary assessment system which is the mainstay of the Federal tax system." *Id*. at 317.

The Tax Reform Act resolved these concerns by providing that tax information "should generally be treated as confidential and not subject to disclosure except in those limited situations delineated in the newly amended [26 U.S.C. § 6103]." *Id.* at 318; *see* Tax Reform Act, tit. XII, sec. 1202(a), 90 Stat. at 1667 (codified at 26 U.S.C. § 6103(a)). For instance, Congress decided that information that taxpayers are "compelled by our tax laws to disclose to the Internal Revenue Service [should be] entitled to essentially the same degree of privacy as those private papers maintained in [their] home[s]." S. Rep. No. 94-938, pt. 1, at 328. To that end, the Tax Reform Act prohibited DOJ and all other federal agencies from obtaining a "taxpayer's return or return information" from the IRS for use in a nontax criminal case absent "court approval," unless the information at issue was "derived from a source other than the taxpayer." *Id.*

Under 26 U.S.C. § 6103(i)(2)(A), DOJ and other agencies may obtain from the IRS, upon request and without a court order, "return information (other than taxpayer return information) to [be used by] officers and employees of [DOJ or another agency] personally and directly engaged in" investigating or preparing for a nontax criminal matter

"solely for the use of such officers and employees." This exception does not authorize disclosure of returns, *id.* § 6103(b)(1) (defining "return"), or return information that is "filed with, or furnished to, the [IRS] by or on behalf of the taxpayer to whom such return information relates," *id.* § 6103(b)(3) (defining "taxpayer return information"). In other words, section 6103(i)(2) is designed to prevent the IRS from disclosing "return information [that] was supplied by the taxpayer or his representative" absent a court order. S. Rep. No. 94-938, pt. 1, at 329.

**3.** To obtain information under section 6103(i)(2), the requesting agency must provide the IRS "(i) the name and address of the taxpayer with respect to whom the requested return information relates; (ii) the taxable period or periods to which such return information relates; (iii) the statutory authority under which the [criminal] proceeding or investigation … is being conducted; and (iv) the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation." *Id.* § 6103(i)(2)(B).

As originally enacted, section 6103(i)(2)'s distinction between taxpayer return information (which could not be disclosed under that provision) and other types of return information (which could be

disclosed) created confusion about the IRS's ability to disclose a taxpayer's name and address in response to a request that already contained the taxpayer's name and address, because a taxpayer's identity is a type of return information that taxpayers include in their tax returns and other tax forms. *See id.* § 6103(b)(2)(A), (6); S. Rep. No. 95-745, at 61 (1978). Congress recognized that "[i]n order for the IRS to transmit" the information that could be furnished under section 6103(i)(2), "it is necessary, of course, to provide the name and address of the taxpayer." S. Rep. No. 95-745, at 61. Congress accordingly amended section 6103(i)(2) to "permit the IRS to transmit … the name and address of a taxpayer *along with* return information … pertaining to, but not furnished by or on behalf of, the taxpayer." *Id.* at 63 (emphasis added); *see* H.R. Rep. No. 95-700, at 53, 55 (same). In its current form, that amendment provides that, "[f]or purposes of [section 6103(i)(2)], a taxpayer's identity shall not be treated as taxpayer return information." 26 U.S.C. § 6103(i)(2)(C); *see* Revenue Act of 1978, Pub. L. No. 95-600, § 701(bb), 92 Stat. 2763, 2922 (1978).

In 1982, the White House, the Treasury Department, and the IRS considered whether section 6103(i)(2) permitted "disclosure of taxpayer

[address] information to the Selective Service System to aid in the prosecution of non-registrants." Memorandum from Fred F. Fielding, Counsel to the President, for Craig L. Fuller, White House Cabinet Secretary (Aug. 6, 1982), at 1 (JA 80). The IRS had recognized that, because "one prerequisite for a proper request" is providing "the name and address of the taxpayer," the requirement presumes that the purpose of section 6103(i)(2) was to provide "information other than the taxpayer's current address." Memorandum from Joel Gerber, Deputy Chief Counsel, IRS to Roscoe L. Egger, Jr., Commissioner (Apr. 2, 1982), at 2 (JA 84). Moreover, "when Congress intended for other agencies to receive address information, it specifically provided for such disclosure." *Id*. at 2–3 (JA 84–85). Treasury also recognized that permitting prosecutors to use the then-current version of section 6103(i)(2) to obtain location information conflicted with the Reagan administration's support for a bill that would later become 26 U.S.C. § 6103(i)(5), "allow[ing] disclosure of certain tax information" to locate fugitives from justice. Memorandum from John J. Kelleher to Peter J. Wallison, General Counsel, Treasury Dep't (May 11, 1982), at 2 (JA 88) (Kelleher Memo). As Treasury noted, "[i]t would seem that there would be no need for such a change if [DOJ] could, under

current law (section 6103(i)(2)), simply write to IRS and request the current addresses of fugitives from [DOJ]." *Id.*

In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, which added section 6103(i)(5). As urged by the Reagan administration, this section enables DOJ to obtain a court order authorizing access to tax records to locate fugitives from justice. *See id.* § 356(a), 96 Stat. at 644. In doing so, Congress made clear that it did not intend to depart from the general rule that "taxpayer identity information [should] be treated as taxpayer return information [*i.e.*, ineligible for disclosure under section 6103(i)(2)] unless return information (other than taxpayer identity information) is [also] requested and disclosed." H.R. Conf. Rep. No. 97-760, at 674 (1982).

**4.** The IRS has consistently recognized that section 6103(i)(2) may not be used solely to obtain a taxpayer's current address, because the provision expressly—and redundantly—requires the requesting agency to furnish the taxpayer's name and address to obtain the type of return information that can be disclosed to law enforcement without a court order. In 2000, for instance, the IRS's Disclosure Litigation Reference Book stated unambiguously: "Requests under section 6103(i)(2) seeking

only a taxpayer's address do not comply with this section. The section contemplates requests for return information, in addition to a taxpayer's address." Ass't Chief Counsel (Disclosure Litigation), IRS, Disclosure Litigation Reference Book 5-4 (rev. Apr. 2000), available at https://www.google.com/books/edition/Disclosure_Litigation_Reference_Book/uumGnjISUOoC. The IRS's current Disclosure and Privacy Law Reference Guide reiterates that principle. IRS Pub. 4639, at 5-4 (rev. Oct. 2012), https://www.irs.gov/pub/irs-pdf/p4639.pdf.

The IRS's Internal Revenue Manual echoes the same theme. In discussing the IRS's process for handling requests for "Disclosure of Return Information (Other Than Taxpayer Return Information) Pursuant to IRC 6103(i)(2)," the Manual states unequivocally that "[r]equests for addresses only are invalid because [section] 6103(i)(2) requires that the requester provide an address." Internal Rev. Manual § 11.3.28.4(5) (Apr. 17, 2025).

The IRS has been equally clear over the years that the confidentiality protections established by section 6103 apply to taxpayers regardless of their immigration status. When the IRS first adopted the ITIN program in 1996, it assured immigrant taxpayers that, generally,

14

"tax returns and tax return information are confidential, as required by 26 U.S.C. 6103." 61 Fed. Reg. at 26788; *see also* 60 Fed. Reg. 30211, 30213 (June 8, 1995) (proposed rule stating, "Section 6103 strictly prohibits the disclosure of [ITIN] information to other government agencies, private entities, or citizens."). The IRS made clear that ITINs were "intended for tax use only" and "[h]aving the IRS as the sole issuer of ITINs" would "create[] no inference regarding the immigration status of an alien individual or the right of that individual to be legally employed in the United States." 61 Fed. Reg. at 26789. The IRS understood that the ITIN program would be used by immigrant residents who "cannot qualify for a social security number." *Id*. at 26788.

The IRS and Treasury have consistently taken the position that section 6103 does not authorize them to share taxpayer information with immigration authorities to enforce the immigration laws. *See*, *e.g.*, Memorandum from Pamela J. Gardiner, Dep. Inspector Gen. for Audit, to Commissioner Rossotti 5 (Sept. 28, 1999), https://cdn.cnsnews.com/ attachments/itin_report-tigta-september_1999.pdf ("The IRS requires that [Internal Revenue Code] Section 6103 be changed before providing information to the [Immigration and Naturalization Service].");

Memorandum from Gordon C. Milbourn III, Acting Dep. Inspector Gen. for Audit, for Deputy Commissioner for Servs. & Enforcement 3 (Jan. 8, 2004), https://famguardian.org/PublishedAuthors/Govt/TIGTA/2004-30-023.pdf ("[T]he tax law generally prohibits the IRS from sharing [ITIN] tax return information with other Federal Government agencies."). The IRS has also recognized that "any sharing of confidential taxpayer information, directly or indirectly, with immigration authorities would have a chilling effect on efforts to bring ITIN holders, and potential ITIN holders, into the U.S. tax system," thereby "depriv[ing] the Federal Government of tax revenue." *Social Security Number and Individual Taxpayer Identification Number Mismatches and Misuse: Hearing Before the Subcomm. on Oversight and Subcomm. on Social Sec. of the H. Comm. on Ways and Means*, 108th Cong. 12 (2004) (statement of IRS Commissioner Everson); *see The Internal Revenue Service's Response to Committee Recommendations Contained in its August 5, 2015 Report: Hearing before the S. Comm. on Finance*, 104th Cong., 1st Sess. 28 (2015) (testimony of IRS Commissioner Koskinen) ("If we start pursuing employers and undocumented aliens, then nobody is going to file their taxes because that will be another exposure point.").

Consistent with these views, the IRS has reassured immigrant taxpayers that their personal information would not be used for immigration enforcement. In 2004, the IRS assuaged fears of misuse of ITIN information for immigration purposes by confirming that the IRS did not have "a program or project to investigate unauthorized workers in an effort to have them deported," but remained "focused on our tax system." *Treasury Responds to Groups' Concern Over Targeting ITIN Users*, Tax Notes (Mar. 24, 2004), https://www.taxnotes.com/research/federal/other-documents/treasury-tax-correspondence/treasury-responds-to-groups-concern-over-targeting-itin-users/yqkt. Again in 2017, in response to similar concerns during President Trump's first term, the IRS addressed fears of misuse of taxpayer information by immigration enforcement agencies by making clear that: "The IRS has strong processes in place to protect the confidentiality of taxpayer information, and this includes information related to tax returns filed using ITINs.… There is no authorization under this provision to share tax data with ICE."[2]

---

[2] Maria Sacchetti, *Undocumented and paying taxes, they seek a foothold in the American Dream*, Wash. Post (Mar. 11, 2017), https://www.washingtonpost.com/local/social-issues/undocumented-and-paying-taxes-they-seek-a-foothold-in-the-american-

**B.     This lawsuit and the IRS-ICE data-sharing agreement.**

**1.** On his first day of office, President Trump issued several executive orders designed to further his campaign promise of mass deportation. Executive Order 14165 established the policy of his administration of "[r]emoving promptly all aliens who enter or remain in violation of Federal law." § 2(d), 90 Fed. Reg. 8467, 8467 (Jan. 30, 2025). Executive Order 14159 provided for "execut[ing] the immigration laws against all inadmissible and removable aliens." § 2, 90 Fed. Reg. 8443, 8443 (Jan. 29, 2025). Executive Order 14161 directed DHS and other agencies to consider additional actions to protect what the administration considers "foreign threats." § 3(g), 90 Fed. Reg. 8451, 8452 (Jan. 30, 2025).

Although unauthorized presence in the United States alone is not a crime, *Arizona*, 567 U.S. at 407, Press Secretary Karoline Leavitt has characterized individuals with that status as "criminals, as far as this administration goes." Press Briefing by Press Sec'y Karoline Leavitt, 2025 WL 326107 (Jan. 29, 2025). In January 2025, President Trump

---

dream/2017/03/11/bc6a8760-0436-11e7-ad5b-d22680e18d10_story.html (quoting an IRS statement).

imposed quotas on ICE of up to 1,500 arrests per day. Am. Compl. ¶ 25 (JA 23) (citing Nick Miroff & Maria Sacchetti, *Trump officials issue quotas to ICE officers to ramp up arrests*, Wash. Post (Jan. 26, 2025)). That number has since been raised to 3,000 daily arrests. *See* Julia Ainsley, Ryan J. Reilly, Allan Smith, Ken Dilanian, & Sarah Fitzpatrick, *A sweeping new ICE operation shows how Trump's focus on immigration is reshaping federal law enforcement*, NBC News (June 4, 2025), https://www.nbcnews.com/politics/justice-department/ice-operation-trump-focus-immigration-reshape-federal-law-enforcement-rcna193494.

**2.** Appellants Centro de Trabajadores Unidos and Immigrant Solidarity DuPage are organizations that serve immigrant workers in the Chicago area. On March 7, 2025, they filed this action against the IRS, the acting IRS commissioner, and the Secretary of the Treasury after news broke that DHS was seeking access to the IRS's tax records on "700,000 people suspected of being in the country illegally." Jacob Bogage, Jeff Stein, Maria Sacchetti & Lisa Rein, *DHS asks IRS for addresses of people believed to be in U.S. illegally*, Wash. Post (Feb. 28, 2025), https://www.washingtonpost.com/business/2025/02/28/immigration-enforcement-trump-administration-irs/. The two organizations moved for

a temporary restraining order to prevent the irreparable harm that would occur if the IRS disclosed immigrant taxpayer information on a mass scale to DHS or ICE. Dist. Ct. ECF 11. The district court denied the motion because it concluded that, at that time, the possibility of future information sharing in violation of section 6103 was not sufficiently imminent to justify emergency relief. *See* Mar. 20, 2025, Order 2 (JA 14).

On March 26, 2025, the two plaintiff organizations, now joined by Somos Un Pueblo Unido, a New Mexico-based worker center, and Inclusive Action for the City, a Los Angeles-based community development lender, filed an amended complaint, which added DHS, ICE, and their heads as defendants. *See* Dist. Ct. ECF 17 (JA 16). Appellants cited media reports that the IRS and DHS were close to terms on an information sharing deal under which the IRS would provide immigration authorities with taxpayer address information on a mass scale.[3] The amended complaint alleged that the reported deal would

---

[3] *See* Jacob Bogage & Jeff Stein, *IRS nears deal with ICE to share addresses of suspected undocumented immigrants*, Wash. Post (Mar. 22, 2025), Dist. Ct. ECF 28-2; Richard Rubin & Michelle Hackman, *IRS Nears Deal to Share Data for Immigration Enforcement*, Wall St. J. (Mar. 22, 2025), Dist. Ct. ECF 28-3; Andrew Duehren & Eileen Sullivan, *I.R.S. Prepares to Help Find Immigrants Targeted for Deportation*, N.Y. Times (Mar. 22, 2025), Dist. Ct. ECF 28-4.

violate section 6103 and, with respect to the IRS, reflected arbitrary and capricious decisionmaking. Amended Compl. ¶¶ 62–83 (JA 34–37). Following a subsequent report of the upcoming deal,[4] Appellants moved for a preliminary injunction, again to prevent the irreparable harm that would arise if the IRS disclosed massive amounts of information relating to hundreds of thousands of ITIN taxpayers to DHS and ICE. Dist. Ct. ECF 28.

**3.** In their response to the motion for a preliminary injunction, Appellees announced that the IRS and DHS had entered into an information-sharing MOU, which they filed with the district court. Dist. Ct. ECF 68-1 (JA 113).[5] Invoking Executive Order 14161, the MOU reflects the President's direction that DHS and other agencies "take immediate steps to identify, exclude, or remove aliens illegally present in the United States." MOU ¶ 1.a. (JA 114). "The purpose of this MOU is to

---

[4] Bernie Becker & Myah Ward, *IRS upheaval cracks agency resistance to data sharing with immigration officials*, Politico Pro (Mar. 28, 2025), Dist. Ct. ECF 28-5.

[5] The MOU was initially filed with redactions. *See* Dist. Ct. ECF 30-1. In response to a motion to intervene to seek the unsealing of the MOU and the district court's minute order of May 12, 2025, Appellees filed the MOU with most of the redactions removed, which is the version that this brief cites and that is reproduced in the joint appendix.

establish the procedures and requirements for ICE's submission of valid [Internal Revenue Code] § 6103(i)(2) requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statutes." MOU § 3 (JA 115). According to DHS, the MOU is designed to "solve" the problem of "millions of illegal aliens" that have been "lost ... due to incompetence and improper processing," and "is essential to identify who is in our country, including violent criminals, determine what public safety and terror threats may exist so [DHS] can neutralize them, scrub these individuals from voter rolls, as well as identify what public benefits these aliens are using at taxpayer expense." Rebecca Beitsch, *IRS, DHS reach deal on information sharing on migrants*, The Hill (Apr. 8, 2025), https://thehill.com/homenews/administration/5238271-irs-dhs-immigration-enforcement/.

Under the MOU, ICE submits "requests for address information" to the IRS that include "[t]he name and address of the taxpayer." MOU § 6 (JA 116). After receiving those requests, the IRS must "[r]eview each request for completeness and validity"; if the request is valid, "[s]earch for the last known address for each individual in the request"; "[f]or each

individual the IRS is able to identify from the information provided by ICE, provide the IRS [the] last known address for that individual"; and "[f]or each individual the IRS cannot identify from the information provided by ICE, indicate 'no match' in the response." *Id.* § 5 (JA 115). Thus, the only purpose of the MOU is to provide a means by which ICE can obtain address information submitted by taxpayers to confirm or update the addresses that ICE has in its database.

**4.** On May 12, 2025, the district court denied Appellants' motion for a preliminary injunction. The court concluded that three of the organizations had standing to raise their arbitrary-and-capricious claim and that one also had standing to challenge whether the MOU complied with section 6103(i)(2)'s requirements. *See* Op. 5–8 (JA 100–03). The court concluded, however, that Appellants had not shown a likelihood of success on either claim. The court did not discuss the other requirements for a preliminary injunction.

Addressing section 6103(i)(2) first, the court recognized that, under that provision, "the IRS can disclose information it obtains itself (such as through audits), but not information it obtains exclusively from the taxpayer (such as a tax return filed by the taxpayer)." Op. 10 (JA 105).

Nonetheless, because section 6103(i)(2)(C) provides that "a taxpayer's identity shall not be treated as taxpayer return information," the Court concluded that taxpayer addresses must be disclosed in response to a valid request, even if obtained from a taxpayer (*e.g.*, from the taxpayer's tax return), but only to assist in criminal investigations. *Id.* (quoting 26 U.S.C. § 6103(i)(2)(C)).

In so holding, the court disagreed with Appellants that section 6103(i)(2) barred the IRS from disclosing address information when the requesting agency did not seek other return information relevant to a criminal investigation. Op. 11 (JA 106). The court concluded that the IRS's prior statements that had adopted that interpretation were "unclear" and were inconsistent with the "plain meaning" of section 6103(i)(2). *Id.* at 11–12 (JA 106–07). The court also gave no weight to Appellants' argument that section 6103(i)(5) was inconsistent with a reading of section 6103(i)(2) that allowed the IRS to disclose taxpayer address information without a court order. Op. 12–13 (JA 107–08). The court concluded that, because section 6103(i)(5) permits DOJ to access "vastly more information from the IRS—a taxpayer's tax return or taxpayer return information—as opposed to just a taxpayer's name and

address," that provision and section 6103(i)(2) have "different but potentially overlapping purposes." *Id*.

With respect to Appellants' arbitrary-and-capricious claim, the court rejected the argument that the IRS unreasonably failed to account for immigrants' reliance interests in agreeing to share information with ICE. *Id*. at 15 (JA 110). The court first found the IRS's prior statements that it would not share only address information were ambiguous. *Id*. The court concluded, moreover, that even if the IRS had reversed course, the change was not "reviewable" because the agency's prior statements were not "binding rules," but rather "nonbinding policy statements." *Id*. On that basis, the court concluded that Appellants were not likely to succeed on the merits of their claim. *Id*. at 16 (JA 111).

## SUMMARY OF ARGUMENT

The district court erred in denying Appellants' motion for a preliminary injunction to prevent the IRS from sharing confidential taxpayer address information with DHS and IRS pursuant to their MOU. Appellants are likely to succeed on their arguments that the disclosure of taxpayer addresses under the MOU is not authorized by section

6103(i)(2) and that the IRS's decision to change its interpretation of that provision was arbitrary and capricious.

**I.** The statutory text, structure, and legislative history of section 6103(i) confirm that Congress did not intend to permit disclosure of taxpayer addresses as the sole object of a law enforcement request under section 6103(i)(2). Section 6103(i)(2) requires a requesting agency seeking information to support a criminal investigation to furnish the IRS with the taxpayer's name and address to obtain *other* information from tax records about the taxpayer. As the IRS has recognized, the requirement that a section 6103(i)(2) request must include the taxpayer's address signals that such a request cannot seek *only* the taxpayer's address. The statutory history of section 6103(i)(2) confirms this reading. Congress amended section 6103(i)(2) to authorize the IRS to disclose the taxpayer's name and address so that the IRS did not have to exclude that information when responding to a valid request for IRS data from sources other than the taxpayer. A request that fails to seek such additional data is not a valid request under section 6103(i)(2).

The structure of section 6103(i) further supports this interpretation. Section 6103(i) contains several provisions that authorize

the IRS to disclose taxpayer information to law enforcement. Those provisions carefully distinguish between returns and return information furnished by the taxpayer, with the latter requiring a court order. By contrast, return information obtained by the IRS from sources other than the taxpayer can be provided without a court order under specified circumstances. Allowing law enforcement to obtain only taxpayer address information—information typically furnished by the taxpayer—under section 6103(i)(2) would contravene this statutory scheme. Indeed, in section 6103(i)(4), Congress barred taxpayer address information obtained under section 6103(i)(2) from being disclosed in court. And section 6103(i)(5), which requires a court order before law enforcement may obtain location information about a fugitive, a would be a dead letter if law enforcement could obtain taxpayer address information under section 6103(i)(2).

The district court's understanding of section 6103(i)(2) transforms a limited exception to the general rule of taxpayer confidentiality into a mechanism for mass surveillance of large swaths of taxpayers. Section 6103(i)(2) has historically been understood to permit individualized requests for return information (other than taxpayer

return information) to support a criminal investigation, and to foreclose disclosures of tax records on a mass scale. If section 6103(i)(2) may be used to obtain address information only, however, nothing would prevent a law enforcement agency that had any form of access to any number of former addresses of taxpayers from compelling the IRS to turn over current taxpayer addresses, with no judicial oversight. Law enforcement could track taxpayers' locations without any obligation to make individualized showings necessary to obtain court orders under other portions of section 6103(i). In the end, the MOU creates a gaping new exception to section 6103, and the district court was in error when it approved it.

**II.** Plaintiffs are also likely to succeed on their claim that the IRS's decision to share address information with DHS and ICE is arbitrary and capricious under the Administrative Procedure Act (APA). The IRS has long reassured taxpayers, including undocumented immigrants, that their information would not be shared for immigration enforcement purposes and that address-only requests are invalid. By reversing this position without reasoned explanation or acknowledgment of the reliance

interests engendered by its prior assurances, the IRS failed to provide the reasoned decision-making required by the APA.

**III.** The remaining factors for preliminary injunctive relief—irreparable harm, balance of equities, and public interest—strongly favor Appellants. Disclosure of confidential taxpayer address information would cause irreparable harm to taxpayers, including Appellants' members, who have relied on the IRS's assurances of confidentiality, undermining the voluntary compliance that is foundational to the federal tax system. And once disclosed on a mass scale, it will be nigh impossible to restore the status quo ante. The balance of equities and the public interest support an injunction to preserve the integrity of the tax system and protect the status quo and the statutory rights of all taxpayers.

## STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721 (D.C. Cir. 2022) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). This Court reviews "the

district court's denial of a preliminary injunction for an abuse of discretion, its legal conclusions *de novo*, and its factual findings for clear error." *Trump v. Thompson*, 20 F.4th 10, 23 (D.C. Cir. 2021).

## ARGUMENT

### I. Section 6103(i)(2) may not be used solely to obtain taxpayer address information from the IRS.

When Congress enacted section 6103(i)(2) in 1976, it carefully distinguished between taxpayer return information, which law enforcement could obtain only through a court order, and return information obtained by the IRS from sources other than the taxpayer, which the IRS must disclose upon receiving a valid request from law enforcement agencies actively pursuing criminal matters. In 1978, Congress enacted a narrow exception that permitted the IRS to disclose a taxpayer's name and address in response to a valid section 6103(i)(2) request. The 1978 amendment did not reduce taxpayers' privacy rights because section 6103(i)(2) requires the requesting agency to already have—and to provide the IRS with—a taxpayer's name and address to submit a valid request in the first place. If a law enforcement agency seeks taxpayer-furnished information that it does *not* have—such as a taxpayer's current location as reflected in his or her tax filings—section

6103(i)(1) protects taxpayer confidentiality by requiring a court order before the IRS may disclose that information.

The district court's decision upends the statutory privacy framework. Under the district court's reading of section 6103(i)(2), federal law enforcement agencies may access IRS data without a court order to engage in mass surveillance of the locations of any class of taxpayers so long as they assert that taxpayer address information for each individual is tangentially relevant to a criminal matter and so long as they furnish any taxpayer address, even if it is not current. Congress did not intend that outcome when it amended section 6103(i)(2) in 1978, and, contrary to the district court's view, the plain language of section 6103 does not require it either. That provision is limited to retail requests for information other than a taxpayer's address rather than the mass provision of taxpayer addresses permitted by the MOU and the ruling below.

**A.** A court "has a 'duty to construe statutes, not isolated provisions.'" *Türkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023) (quoting *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010)). Congress's words

must be read "in their context and with a view to their place in the overall statutory scheme." *Id.* (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)). "When resolving a dispute about a statute's meaning, [courts] sometimes look for guidance not just in its immediate terms but in related provisions as well." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 221 (2024).

Applying those principles here, the most sound reading of section 6103(i)(2) is the reading that the IRS had consistently articulated: "Requests for addresses only are *invalid* because [Internal Revenue Code] 6103(i)(2) requires that the requester provide an address." Internal Rev. Manual § 11.3.28.4(5) (emphasis added); *see* IRS Pub. 4639, at 5-4 ("Requests under section 6103(i)(2) seeking only a taxpayer's address do not comply with this section."). Before a law enforcement agency can obtain *any* information under section 6103(i)(2), it must furnish "the name and address of the taxpayer with respect to whom the requested return information relates." 26 U.S.C. § 6103(i)(2)(B)(i) (emphasis added). The statute does not say "the name and *an* address." The definite article applies to both "name" and "address." And "[i]t 'is a rule of law well established that the definite article "the" particularizes the subject

which it precedes.'" *Sandpiper Residents Ass'n v. HUD*, 106 F.4th 1134, 1144 (D.C. Cir. 2024) (quoting *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000)). Thus, only the taxpayer's current address can trigger the IRS's duties under section 6103(i)(2)—not any address available to the agency—or even a taxpayer's former address.

This reading does not leave the 1978 amendment that enacted section 6103(i)(2)(C) without work to do. Section 6103(i)(2)(C) ensures that, when the IRS receives a valid request for return information obtained from sources other than the taxpayer, its response may include the taxpayer's identity information even though such information is taxpayer return information. As the legislative history of the 1978 amendment confirms, section 6103(i)(2)(C) ensures that the IRS is able "to transmit … the name and address of a taxpayer *along with* return information." S. Rep. No. 95-745, at 63; *see* H.R. Rep. No. 95-700, at 55 (same). Congress did not envision that its amendment would open the door to disclosing taxpayer address information to law enforcement when no other relevant return information is sought.

**B.** "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure

33

of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). Here, interpreting section 6103(i)(2) to authorize address-only requests would also violate the basic structure of section 6103(i).

**1.** In the Tax Reform Act, Congress sought to provide taxpayers with "essentially the same degree of privacy as those private papers maintained in [their] home[s]." S. Rep. No. 94-938, pt. 1, at 328. To that end, section 6103(i) established different degrees of protections for taxpayer-furnished information (i.e., returns and taxpayer return information) and information "derived from a source other than the taxpayer." *Id.* For instance, like section 6103(i)(2), section 6103(i)(1) authorizes disclosure of taxpayer information to support criminal investigations and proceedings. But unlike section 6103(i)(2), section 6103(i)(1) enables access to "any return or return information" because it requires DOJ prosecutors to obtain a court order. 26 U.S.C. § 6103(i)(1); *see* Tax Reform Act, tit. XII, sec. 1202(a), 90 Stat. at 1675 (codified at 26 U.S.C. § 6103(i)(1)); *see also* Internal Rev. Manual § 11.3.28.1.1(1) (Apr. 17, 2025) ("[S]ection 6103(i) … establishes the general rule that a federal agency enforcing a non-tax criminal law must obtain court approval to

obtain a return or return information submitted by the taxpayer or their representative.").

Congress retained that basic dividing line in the 1982 amendments to section 6103(i). Those amendments authorize DOJ to access a taxpayer's return or return information "exclusively for use in locating" a criminal fugitive, but only pursuant to a court order. 26 U.S.C. § 6103(i)(5); *see* Tax Equity and Fiscal Responsibility Act, § 356(a), 96 Stat. at 644 (codified at 26 U.S.C. § 6103(i)(5)).

That same dividing line extends to the national security realm. In the wake of 9/11, Congress enacted 26 U.S.C. § 6103(i)(7). *See* Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, § 201(b), 115 Stat. 2427, 2440. Sections 6103(i)(7)(A) and (B) authorize disclosure of return information for terrorism investigations and counterintelligence without a court order, but do not permit disclosure of taxpayer return information other than allowing a taxpayer's identity to be furnished along with other return information. By contrast, section 6103(i)(7)(C) is broader—it permits disclosure of "any return or return information"—but requires a court order authorizing such access.

Section 6103(i)(4) addresses the disclosure of returns and return information in criminal proceedings (and civil forfeiture proceedings). 26 U.S.C. § 6103(i)(4). Here, as well, Congress drew a distinction between taxpayer return information and return information that is not provided by a taxpayer. Under section 6103(i)(4)(A), prosecutors may disclose taxpayer return information obtained through a court order under section 6103(i)(1) or (7)(C) in criminal proceedings if a court makes certain findings. This provision does not authorize disclosures of information obtained under section 6103(i)(2) in criminal proceedings.

Section 6103(i)(4)(B), by contrast, allows prosecutors to disclose return information obtained under section 6103(i)(2) in criminal proceedings without the need for prior findings by a court. But prosecutors cannot use this provision to disclose "taxpayer return information." As a result, address information, which is one type of taxpayer return information, cannot be introduced as evidence in a criminal trial if prosecutors obtained it under section 6103(i)(2). That restriction does not create a problem when prosecutors use 6103(i)(2) to make individualized requests for return information provided by third parties, because to make such a request, the prosecutor will need to have

obtained the taxpayer's address from another source. But if the district court's reading of section 6103(i)(2) were correct, then section 6103(i)(2) would permit requests seeking only address information, even though that information could not be used at trial. There is no sensible reason why Congress would have created such as scheme. The better reading of section 6103(i)(2) is that Congress did not intend for it to be used as a mechanism for obtaining a taxpayer's address, in circumvention of the process for obtaining a court order under section 6103(i)(1) or (7)(C).

**2.** Congress's decision to allow the IRS to provide taxpayer identity information to facilitate disclosures of return information that may be obtained without a court order does not disturb section 6103(i)'s basic structure. The object of a proper request under section 6103(i)(2) remains information other than the taxpayer's name and address—information not furnished by or on behalf of the taxpayer. Under the district court's interpretation, by contrast, taxpayer return information—specifically a taxpayer's address—can be the sole object of a 6103(i)(2) request, thereby circumventing the restrictions that allow access to such information only pursuant to a court order.

This end run is most apparent in the context of section 6103(i)(5). The Reagan administration had considered using section 6103(i)(2) to obtain address information to prosecute individuals who failed to register with the Selective Service. *See supra* pp. 11–13. The IRS and the Treasury Department, however, recognized that such an effort would be legally questionable, as well as inconsistent with the administration's support for new legislation to allow access to taxpayer information to locate fugitives from justice because "there would be no need for such a change" if DOJ "could, under current law (section 6103(i)(2)), simply write to IRS and request the current addresses of fugitives from [DOJ]." Kelleher Memo (JA 88). Congress agreed. When it enacted section 6103(i)(5) to authorize DOJ to obtain tax information to locate fugitives, it noted that "taxpayer identity information [should] be treated as taxpayer return information unless return information (other than taxpayer identity information) is requested and disclosed." H.R. Conf. Rep. No. 97-760, at 674. In other words, Congress concluded that section 6103(i)(2) could not be used solely to obtain even a fugitive's address.

The district court did not consider section 6103(i)(5) relevant because that provision authorizes a court to grant access to return

information in addition to the taxpayer's name and address. *See* Op. 12–13 (JA 107–08). But, as explained above, section 6103(i)(5) is consistent with the statutory requirements requiring a court order whenever law enforcement seeks taxpayer return information. It would make little sense for law enforcement to undertake the section 6105(i)(5) process if the most salient location information—the taxpayer's address—were available under section 6103(i)(2) without the need for a valid request for other return information. By allowing address information to be the sole object of a section 6103(i)(2) request, the district court rendered 6103(i)(5) largely a dead letter, and more generally failed to take sufficient account of the overall statutory scheme.

**C.** When Congress enacted the Tax Reform Act, it understood that DOJ prosecutors had been one of the "biggest users of tax information" and that they had sought to access tax records "on an individual case basis (as against a 'mass' basis for statistical use)." S. Rep. No. 94-938, pt. 1, at 317. Federal prosecutors—not federal agencies like DHS and

ICE—have been the sole users of the section 6103(i)(2) mechanism in recent years.[6]

Under the district court's interpretation, however, section 6103(i)(2) could be used as a tool for mass surveillance of large swaths of taxpayers. Residents of the United States are legally compelled to pay federal taxes and to furnish their address information to the IRS when they do so. As the district court recognized, the IRS is "statutorily required to release requested information" to any federal agency with

---

[6] IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2023, JCX-14-24, at 3 (Apr. 25, 2024), https://www.jct.gov/publications/2024/jcx-14-24/; IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2022, JCX-6-23, at 3 (Apr. 18, 2023), https://www.jct.gov/publications/2023/jcx-6-23/; IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2021, JCX-8-22, at 3 (May 17, 2022), https://www.jct.gov/publications/2022/jcx-8-22/; IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2020, JCX-1721, at 3 (Apr. 13, 2021), https://www.jct.gov/publications/2021/jcx-17-21/; IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2019, JCX-13-20, at 3 (Apr. 24, 2020), https://www.jct.gov/publications/2020/jcx-13-20/; IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2018, JCX-21-19, at 3 (May 14, 2019), https://www.jct.gov/publications/2019/jcx21-19/; IRS, Disclosure Report for Public Inspection Pursuant to Internal Rev. Code Sect. 6103(p)(3)(C) for Calendar Year 2017, JCX-29-18, at 3 (Apr. 18, 2018), https://www.jct.gov/publications/2018/jcx-29-18/.

criminal investigative responsibility that meets "the requirements of section 6103(i)(2)." Op. 14 (JA 109); *see* 26 U.S.C. § 6103(i)(2)(A) (providing that the IRS "shall disclose" return information requested by "the head of any Federal agency" if the request satisfies the criteria in section 6103(i)(2)(B)). Because the current address of any individual under criminal investigation "is, or may be relevant" to a criminal investigation or proceeding, 26 U.S.C. § 6103(i)(2)(B)(iv), nothing in section 6103(i)(2) would prevent a federal agency that had thousands of former addresses of taxpayers from compelling the IRS to turn over all of those taxpayers' current addresses if the district court's reading of that provision were correct.

For instance, during the Reagan administration, the targeted group consisted of individuals who failed to register for the Selective Service. *See supra* p. 12. And in this case, the MOU states that, by providing the IRS with the "name and address of the taxpayer," MOU § 6.C.1 (JA 116), ICE can compel the IRS to "[s]earch for the last known address for each individual in each request" and provide that information to ICE, *id.* § 5.C–E (JA 115). This process would apply to "numerous aliens … who are under final orders of removal" and who DHS asserts, without any

basis, are "under criminal investigation," MOU § 1.b & c (JA 114)—a group that reportedly could include up to 700,000 individuals. *See supra* p. 19.

Finally, because section 6103(i)(2) does not require that a prosecution is in process, criminal investigators, like DHS here, can use section 6103(i)(2) as a speculative way to update their databases without having to bear the burden (and the check on abuse) of bringing a criminal case. *See* Op. 14 (JA 109) (stating that DHS could use address information to "send a notice letter to ensure that the immigrants are aware" of a final removal order issued in absentia). Indeed, prosecutions are exceedingly unlikely, because prosecutions would keep undocumented immigrants in the country, rather than advancing the administration's goal of removing them. And DHS has reportedly sought the addresses of hundreds of thousands, if not millions, of individuals. Bogage, *DHS asks IRS for addresses*, *supra* (reporting DHS's request for 700,000 names); *see* Marshall Cohen & Rene Marsh, *IRS reaches data-sharing deal with DHS to help find undocumented immigrants for deportation*, CNN (Apr. 8, 2025), https://www.cnn.com/2025/04/08/politics/irs-dhs-sign-data-deal-undocumented-immigrants ("In a recent

video call, DHS officials told IRS officials they needed access to their data to help them locate up to 7 million suspected undocumented immigrants."). By contrast, in fiscal year 2024, ICE's Enforcement and Removal Operations handled slightly more than 3,000 criminal cases for a range of immigration crimes. ICE, Annual Report 19 (Dec. 19, 2024), https://www.ice.gov/doclib/eoy/iceAnnualReportFY2024.pdf. If the IRS is permitted to share address information with ICE on a mass scale, federal prosecutors are highly unlikely to bring criminal proceedings against the taxpayers whose information is shared. Instead, the agency will use them to fulfill the ambitions of the President's Executive Order and other directives to remove all undocumented immigrants from this country. In the end, the MOU creates a gaping new exception to section 6103, and the district court erred by approving it.

## II. Appellants are likely to succeed on their claim that the IRS acted arbitrarily in agreeing to share taxpayer information with ICE.

The APA authorizes reviewing courts to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). "An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'" *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (quoting

*FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). To satisfy that obligation, an agency must act "within a zone of reasonableness and, in particular, [must have] reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 592 U.S. at 423.

"[A]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Investments*, 145 S. Ct. 898, 917 (2025) (cleaned up). An agency must "display awareness that it *is* changing position" and "that there are good reasons for the new policy." *FCC v. Fox Tele. Stations, Inc.*, 556 U.S. 502, 515 (2009). An agency must provide "a more detailed justification than what would suffice for a new policy created on a blank slate" when "its prior policy has engendered serious reliance interests that must be taken into account." *Id*.

In entering into the MOU, the IRS abandoned its view that a section 6103(i)(2) request must seek more than taxpayer addresses. Even today, IRS publications state that "[r]equests for addresses only are invalid," Internal Rev. Manual § 11.3.28.4(5), and that "[r]equests under

section 6103(i)(2) seeking only a taxpayer's address do not comply with this section," IRS Pub. 4639, at 5-4. Under the MOU, however, "ICE will ... [s]end requests for address information for specifically identified individuals" to the IRS so that the IRS can provide ICE the "last known address for that individual." MOU §§ 5.D, 6.A. The IRS has never attempted to explain how the MOU is consistent with its prior statements. "An 'unexplained inconsistency' with an earlier position renders a changed policy arbitrary and capricious." *Children's Hosp. Ass'n of Texas v. Azar*, 933 F.3d 764, 773 (D.C. Cir. 2019) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016)).

The IRS's policy change with regard to section 6103(i)(2) undermines immigrant taxpayer reliance interests in particular. Immigrants have long feared that sensitive information they provide to the IRS to comply with their tax obligations could be misused for immigration enforcement purposes. Recognizing that public trust was vital to the operation of the nation's tax system, which was designed with immigrant taxpayers in mind, the IRS has repeatedly reassured immigrants that their tax information would not be shared for immigration enforcement purposes. *See supra* pp. 13–17; *see also* 89 Fed.

45

Reg. 93172, 93175 (Nov. 26, 2024) ("There is no provision in the United States Code that authorizes the disclosure or redisclosure of returns or return information for enforcement of immigration laws."). By entering into the MOU, the IRS acted contrary to immigrants' reasonable reliance on the agency's previous assurances.

The district court suggested that the IRS's statements could be read to apply only to requests that fail to include the taxpayer's address as required by section 6103(i)(2)(B)(i). *See* Op. 11–12, 15 (JA 106–07, 110). Respectfully, the IRS's statements cannot reasonably be read that way. Failure to include an address in a section 6103(i)(2) request would preclude the IRS from furnishing *any* information. The Internal Revenue Manual and Publication 4639, however, focus on requests seeking only address information. Moreover, Publication 4639 explains that requests for only an address are invalid precisely because section 6103(i)(2) "contemplates requests for return information *in addition to* a taxpayer's address." IRS Pub. 4639, at 5-4 (emphasis added). This guidance is consistent with Congress's longstanding understanding of how section 6103(i)(2) operates. *See* S. Rep. No. 95-745, at 63, H.R. Rep. No. 95-700,

at 55; H.R. Conf. Rep. No. 97-760, at 674. That understanding is irreconcilable with the text of the MOU.

The district court also concluded the IRS's change of position was not "actionable under the APA because the cited IRS manuals do not create binding rules," but "are instead nonbinding policy statements that set out a procedure for information requests." Op. 15 (JA 110) (citing 5 U.S.C. § 553(b)(A) and *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93 (D.C. Cir. 1997)). However, 5 U.S.C. § 553(b)(A) and *Syncor* concern exceptions to the APA's notice-and-comment requirements. Appellants are not raising a notice-and-comment claim, but an arbitrary-and-capricious claim. This Court has recognized that nonbinding guidance that does not trigger notice-and-comment requirements can be challenged as arbitrary and capricious. *See POET Biorefining, LLC v. EPA*, 970 F.3d 392, 409–10 (D.C. Cir. 2020). Here, Appellants do not seek review of the IRS's prior (and accurate) statements that section 6103(i)(2) does not apply to requests seeking only taxpayer addresses, but of the IRS's departure from that principle, which destabilizes settled interests of taxpayers based on the agency's prior positions.

Moreover, Appellants do not contend that the IRS's guidance statements bind the agency because they carry the force of law. Rather, Appellants contend that those statements reflect the IRS's prior view on section 6103(i)(2) requests from which the agency has departed without explanation when it entered in the MOU. An agency's failure to adhere to its policies (including nonbinding policies) when taking a new action is arbitrary unless the agency reasonably explains its decision. *See Consol. Edison Co. of New York v. FERC*, 315 F.3d 316, 324 (D.C. Cir. 2003) (holding that, although "FERC's new policy statement did not purport to carry the 'force of law,'" the agency "had a duty to explain why it chose to apply the old, and not the new, pricing policy" in rate proceedings).

Here, the IRS has made no effort to explain its about face; it claims that it made no change at all. Because the change in position is clear and lacks explanation, the district court erred in holding that Appellants' arbitrary-and-capricious claim was not likely to succeed.

## III. The remaining factors support a grant of a preliminary injunction.

Because the district court concluded that the IRS could lawfully share taxpayer address information with DHS and ICE under the MOU, it did not address the remaining preliminary injunction factors of

irreparable harm, the equities, and the public interest. *See Changji Esquel Textile Co.*, 40 F.4th at 721. Each of these factors supports reversal and preliminary relief.

For nearly 50 years, section 6103 has reassured taxpayers that the Nixon-era abuse of federal tax records would not be repeated. The IRS has specifically reassured taxpayers—including immigrant taxpayers not authorized to work in the United States—that their information would be protected. *See supra* pp. 13–17. Reliance on these assurances has become widespread and deeply ingrained in tax-paying immigrant communities because of the IRS's longstanding position on the importance of maintaining the confidentiality of taxpayer data.[7] Consistent, faithful adherence to section 6103's confidentiality

---

[7] *See, e.g.*, Nat'l Immigration Law Center, *FAQ: Individual Taxpayer Identification Number (ITIN): A Powerful Tool for Immigrant Taxpayers*, https://www.nilc.org/resources/itinfaq/ ("Is it safe to use an ITIN? Generally, yes. The IRS has strong privacy protections in place to ensure that immigrants who report their income and file their taxes are not at risk of having their information shared."); American Immigration Council, *The Facts About the Individual Taxpayer Identification Number (ITIN)*, https://www.americanimmigrationcouncil.org/wp-content/uploads/2025/01/the_facts_about_the_individual_tax_identification_number_0.pdf ("The ITIN is not an immigration-enforcement tool.").

protections has thus engendered significant reliance interests in the affected communities.

The information-sharing agreement between the IRS and DHS disrupts and jeopardizes those settled expectations—and irreparably so. The IRS has explained that "[t]o foster a tax system based on voluntary compliance, the public must maintain a high degree of confidence that the personal and financial information furnished to the [IRS] is protected against unauthorized use, inspection, or disclosure."[8] Permitting the IRS to share taxpayer address information in bulk, divorced from a valid request for return information furnished by persons other than the taxpayer, would irreparably betray the confidence that taxpaying immigrant workers, including Appellants' members, have placed in the IRS's prior assurances that their personal information would be protected. *See* Jane Doe Decl. ¶ 6 (JA 56); John Doe Decl. ¶ 6 (JA 61); James Doe Decl. ¶¶ 6–7 (JA 67–68); Diaz Decl. ¶¶ 5–6 (JA 50). Such taxpayers "are threatened with the loss of a right which section 6103 was designed to protect." *Tierney v. Schweiker*, 718 F.2d 449, 454 (D.C. Cir.

---

[8] IRS, Tax Info. Sec. Guidelines for Fed., State, and Local Agencies, Pub. 1075, at 23 (rev. Nov. 2021), https://www.irs.gov/pub/irs-pdf/p1075 .pdf.

1983). As the Second Circuit has noted when assessing the privacy of President Trump's tax returns, a threated disclosure of tax information "would cause irreparable harm because plaintiffs have an interest in keeping their records private from everyone." *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019), *vacated and remanded on other grounds sub nom., Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020); *see Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010) ("This Court has recognized that the disclosure of confidential information can constitute an irreparable harm because such information, once disclosed, loses its confidential nature."); *see also Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993) ("Obviously, once ... highly personal information is disclosed ... the revelation cannot be undone.").

The confidentiality risks are especially salient here. The MOU facilitates the disclosure of thousands, if not millions, of taxpayer addresses in bulk because, as explained above, it does not require the type of individualized showing and processing that would typically be needed to process requests for return information furnished by persons other than the taxpayer. And once that information is shared and used

by ICE in service of immigration enforcement operations, it would be nigh impossible to undo the harm. Below, Appellees did not argue otherwise. *See* Defs. Opp. to Pls. Mot. for Prelim. Inj. 19, Dist. Ct. ECF 30.

The balance of the equities and the public interest also support granting a preliminary injunction. *See Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022) ("The balance of the equities and the public interest merge when, as here, the Government is the opposing party" (internal quotation marks omitted)). The consistent protection of taxpayer information has cemented reliance interests that go beyond Appellants' members or other taxpayers' immediate concerns about providing the IRS with sensitive personal information. As the Treasury Inspector General for Tax Administration has recognized, "an ITIN has become widely accepted by third parties outside of the IRS for use as a valid identification number for many nontax purposes," such as obtaining loans and credit cards, opening businesses and bank accounts, getting driver's licenses, and establishing a credit history. Treasury Inspector Gen. for Tax Admin., Admin. of the Individual Taxpayer Identification Number Program, Rep. No. 2024-400-012, at 1 (Dec. 19, 2023), https://www.tigta.gov/sites/default/files/reports/2024-11/2024400012fr.pdf. For

instance, New Mexico relies on ITINs to issue driver's licenses to immigrants, allow them to pay state taxes and receive tax credits, and provide them with higher education benefits. Diaz Decl. ¶¶ 10–12 (JA 51–52). In Los Angeles, immigrant entrepreneurs use ITINs to obtain business permits, open bank accounts, and obtain mortgages and loans. Espinoza Decl. ¶¶ 4–5 (JA 73–74). The widespread use of ITINs to enable immigrants to engage with state and local governments and financial institutions—and to participate in society and the economy generally flows from Congress's decision to create the ITIN program for individuals not eligible for social security numbers and to afford ITIN taxpayers the same privacy protections that all other taxpayers receive. If the IRS is permitted to disclose taxpayer information to immigration authorities in violation of section 6103, the impact of that violation of confidentiality would affect interests far beyond the parties in this case.

Plaintiffs' "extremely high likelihood of success on the merits is a strong indicator that [injunctive relief] would serve the public interest." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) ("[T]he government may not 'act unlawfully even in pursuit of

desirable ends.'" (quoting *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734 (D.C. Cir. 2022)). Here, a preliminary injunction would only preclude the IRS from disclosing information to DHS and ICE that it may not lawfully disclose under section 6103. Moreover, a preliminary injunction would not preclude individualized requests under section 6103(i)(2) for return information (other than taxpayer return information) relevant to a bona fide criminal investigation, where the request seeks information other than the taxpayer's address. In these circumstances, the "weighing exercise is one-sided" in favor of granting preliminary relief. *Huisha-Huisha*, 27 F.4th at 734.

## CONCLUSION

The district court's denial of Appellants' motion for a preliminary injunction should be reversed.

June 27, 2025                          Respectfully submitted,

                                       /s/ Nandan M. Joshi
Kevin L. Herrera                       Nandan M. Joshi
Mark H. Birhanu                        Michael T. Kirkpatrick
Raise the Floor Alliance               Public Citizen Litigation Group
1 N. LaSalle Street, Suite 1275        1600 20th Street, NW
Chicago, Illinois 60602                Washington, DC 20009
(312) 795-9115                         (202) 588-7733
                                       njoshi@citizen.org

                                       Alan B. Morrison
                                       George Washington University
                                       Law School
                                       2000 H Street, NW
                                       Washington, DC 20052
                                       (202) 994-7120

            *Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by the Federal Rules of Appellate Procedure and this Court's rules, this document contains 10,418 words, as calculated by my word processing software.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word 365.

/s/ Nandan M. Joshi
Nandan M. Joshi

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 27, 2025, the foregoing document was

served through the Court's ECF system on counsel for all parties.

<u>/s/ Nandan M. Joshi</u>
Nandan M. Joshi

# STATUTORY ADDENDUM

**26 U.S.C.:**                                                           **Addendum Page**

§ 6103(a) ........................................................................ 1

§ 6103(b)(1) .................................................................... 1

§ 6103(b)(2) .................................................................... 1

§ 6103(b)(3) .................................................................... 2

§ 6103(b)(6) .................................................................... 3

§ 6103(i) ........................................................................ 4

§ 6103(i)(1) .................................................................... 5

§ 6103(i)(2) .................................................................... 6

§ 6103(i)(4) .................................................................... 7

§ 6103(i)(5) .................................................................... 8

§ 6103(i)(7) .................................................................... 8

(c) Inapplicability to computation of amount

The provisions of subsections (a) and (b) shall not be applicable to items which must be taken into account in making the computations necessary to determine the amount required to be shown on a form, but shall be applicable only to such final amount.

(Aug. 16, 1954, ch. 736, 68A Stat. 753; Pub. L. 94–455, title XIX, §1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834.)

### EDITORIAL NOTES

#### AMENDMENTS

**1976**—Subsecs. (a), (b). Pub. L. 94–455 struck out "or his delegate" after "Secretary".

## §6103. Confidentiality and disclosure of returns and return information

### (a) General rule

Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States,

(2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(1)(C) or (7)(A), any tribal or local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (c), subsection (e)(1)(D)(iii), paragraph (10), (13), (14), or (15) of subsection (k), paragraph (6), (8), (10), (12), (13) (other than subparagraphs (D)(v) and (D)(vi) thereof), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

### (b) Definitions

For purposes of this section—

#### (1) Return

The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

#### (2) Return information

The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public

inspection under section 6110,

   (C) any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and

   (D) any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

**(3) Taxpayer return information**

   The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

**(4) Tax administration**

   The term "tax administration"—

   (A) means—

      (i) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

      (ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

   (B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

**(5) State**

   **(A) In general**

   The term "State" means—

      (i) any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands,

      (ii) for purposes of subsections (a)(2), (b)(4), (d)(1), (h)(4), and (p), any municipality—

         (I) with a population in excess of 250,000 (as determined under the most recent decennial United States census data available),

         (II) which imposes a tax on income or wages, and

         (III)  with which the Secretary (in his sole discretion) has entered into an agreement regarding disclosure, and

      (iii) for purposes of subsections (a)(2), (b)(4), (d)(1), (h)(4), and (p), any governmental entity—

         (I) which is formed and operated by a qualified group of municipalities, and

         (II)  with which the Secretary (in his sole discretion) has entered into an agreement regarding disclosure.

   **(B) Regional income tax agencies**

   For purposes of subparagraph (A)(iii)—

   **(i) Qualified group of municipalities**

      The term "qualified group of municipalities" means, with respect to any governmental

entity, 2 or more municipalities—

(I) each of which imposes a tax on income or wages,

(II) each of which, under the authority of a State statute, administers the laws relating the imposition of such taxes through such entity, and

(III) which collectively have a population in excess of 250,000 (as determined under the most recent decennial United States census data available).

**(ii) References to State law, etc.**

For purposes of applying subparagraph (A)(iii) to the subsections referred to in such subparagraph, any reference in such subsections to State law, proceedings, or tax returns shall be treated as references to the law, proceedings, or tax returns, as the case may be, of the municipalities which form and operate the governmental entity referred to in such subparagraph.

**(iii) Disclosure to contractors and other agents**

Notwithstanding any other provision of this section, no return or return information shall be disclosed to any contractor or other agent of a governmental entity referred to in subparagraph (A)(iii) unless such entity, to the satisfaction of the Secretary—

(I) has requirements in effect which require each such contractor or other agent which would have access to returns or return information to provide safeguards (within the meaning of subsection (p)(4)) to protect the confidentiality of such returns or return information,

(II) agrees to conduct an on-site review every 3 years (or a mid-point review in the case of contracts or agreements of less than 3 years in duration) of each contractor or other agent to determine compliance with such requirements,

(III) submits the findings of the most recent review conducted under subclause (II) to the Secretary as part of the report required by subsection (p)(4)(E), and

(IV) certifies to the Secretary for the most recent annual period that such contractor or other agent is in compliance with all such requirements.

The certification required by subclause (IV) shall include the name and address of each contractor and other agent, a description of the contract or agreement with such contractor or other agent, and the duration of such contract or agreement. The requirements of this clause shall not apply to disclosures pursuant to subsection (n) for purposes of Federal tax administration and a rule similar to the rule of subsection (p)(8)(B) shall apply for purposes of this clause.

**(6) Taxpayer identity**

The term "taxpayer identity" means the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof.

**(7) Inspection**

The terms "inspected" and "inspection" mean any examination of a return or return information.

**(8) Disclosure**

The term "disclosure" means the making known to any person in any manner whatever a return or return information.

**(9) Federal agency**

The term "Federal agency" means an agency within the meaning of section 551(1) of title 5, United States Code.

**(10) Chief executive officer**

The term "chief executive officer" means, with respect to any municipality, any elected official and the chief official (even if not elected) of such municipality.

**(4) Disclosure in judicial and administrative tax proceedings**

A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

(A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;

(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or

(D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

**(5) Withholding of tax from social security benefits**

Upon written request of the payor agency, the Secretary may disclose available return information from the master files of the Internal Revenue Service with respect to the address and status of an individual as a nonresident alien or as a citizen or resident of the United States to the Social Security Administration or the Railroad Retirement Board (whichever is appropriate) for purposes of carrying out its responsibilities for withholding tax under section 1441 from social security benefits (as defined in section 86(d)).

**(6) Internal Revenue Service Oversight Board**

**(A) In general**

Notwithstanding paragraph (1), and except as provided in subparagraph (B), no return or return information may be disclosed to any member of the Oversight Board described in subparagraph (A) or (D) of section 7802(b)(1) or to any employee or detailee of such Board by reason of their service with the Board. Any request for information not permitted to be disclosed under the preceding sentence, and any contact relating to a specific taxpayer, made by any such individual to an officer or employee of the Internal Revenue Service shall be reported by such officer or employee to the Secretary, the Treasury Inspector General for Tax Administration, and the Joint Committee on Taxation.

**(B) Exception for reports to the Board**

If—

(i) the Commissioner or the Treasury Inspector General for Tax Administration prepares any report or other matter for the Oversight Board in order to assist the Board in carrying out its duties; and

(ii) the Commissioner or such Inspector General determines it is necessary to include any return or return information in such report or other matter to enable the Board to carry out such duties,

such return or return information (other than information regarding taxpayer identity) may be disclosed to members, employees, or detailees of the Board solely for the purpose of carrying out such duties.

**(i) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration**

**(1) Disclosure of returns and return information for use in criminal investigations**

**(A) In general**

Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate judge under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency who are personally and directly engaged in—

(i) preparation for any judicial or administrative proceeding pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party, or pertaining to the case of a missing or exploited child,

(ii) any investigation which may result in such a proceeding, or

(iii) any Federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party, or to such a case of a missing or exploited child,

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B) Application for order**

The Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, may authorize an application to a Federal district court judge or magistrate judge for the order referred to in subparagraph (A). Upon such application, such judge or magistrate judge may grant such order if he determines on the basis of the facts submitted by the applicant that—

(i) there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed,

(ii) there is reasonable cause to believe that the return or return information is or may be relevant to a matter relating to the commission of such act, and

(iii) the return or return information is sought exclusively for use in a Federal criminal investigation or proceeding concerning such act (or any criminal investigation or proceeding, in the case of a matter relating to a missing or exploited child), and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.

**(C) Disclosure to state and local law enforcement agencies in the case of matters pertaining to a missing or exploited child**

**(i) In general**

In the case of an investigation pertaining to a missing or exploited child, the head of any Federal agency, or his designee, may disclose any return or return information obtained under subparagraph (A) to officers and employees of any State or local law enforcement agency, but only if—

(I) such State or local law enforcement agency is part of a team with the Federal agency in such investigation, and

(II) such information is disclosed only to such officers and employees who are personally and directly engaged in such investigation.

**(ii) Limitation on use of information**

Information disclosed under this subparagraph shall be solely for the use of such officers and employees in locating the missing child, in a grand jury proceeding, or in any preparation for, or investigation which may result in, a judicial or administrative proceeding.

**(iii) Missing child**

For purposes of this subparagraph, the term "missing child" shall have the meaning given such term by section 403 of the Missing Children's Assistance Act (42 U.S.C. 5772).[1]

**(iv) Exploited child**

For purposes of this subparagraph, the term "exploited child" means a minor with respect to whom there is reason to believe that a specified offense against a minor (as defined by section 111(7) of the Sex Offender Registration and Notification Act (42 U.S.C. 16911(7))) [1] has or is occurring.

## (2) Disclosure of return information other than taxpayer return information for use in criminal investigations

### (A) In general

Except as provided in paragraph (6), upon receipt by the Secretary of a request which meets the requirements of subparagraph (B) from the head of any Federal agency or the Inspector General thereof, or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, the Secretary shall disclose return information (other than taxpayer return information) to officers and employees of such agency who are personally and directly engaged in—

　　(i) preparation for any judicial or administrative proceeding described in paragraph (1)(A)(i),
　　(ii) any investigation which may result in such a proceeding, or
　　(iii) any grand jury proceeding described in paragraph (1)(A)(iii),

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

### (B) Requirements

A request meets the requirements of this subparagraph if the request is in writing and sets forth—

　　(i) the name and address of the taxpayer with respect to whom the requested return information relates;
　　(ii) the taxable period or periods to which such return information relates;
　　(iii) the statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and
　　(iv) the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation.

### (C) Taxpayer identity

For purposes of this paragraph, a taxpayer's identity shall not be treated as taxpayer return information.

## (3) Disclosure of return information to apprise appropriate officials of criminal or terrorist activities or emergency circumstances

### (A) Possible violations of Federal criminal law

#### (i) In general

Except as provided in paragraph (6), the Secretary may disclose in writing return information (other than taxpayer return information) which may constitute evidence of a violation of any Federal criminal law (not involving tax administration) to the extent necessary to apprise the head of the appropriate Federal agency charged with the responsibility of enforcing such law. The head of such agency may disclose such return

information to officers and employees of such agency to the extent necessary to enforce such law.

### (ii) Taxpayer identity

If there is return information (other than taxpayer return information) which may constitute evidence of a violation by any taxpayer of any Federal criminal law (not involving tax administration), such taxpayer's identity may also be disclosed under clause (i).

## (B) Emergency circumstances

### (i) Danger of death or physical injury

Under circumstances involving an imminent danger of death or physical injury to any individual, the Secretary may disclose return information to the extent necessary to apprise appropriate officers or employees of any Federal or State law enforcement agency of such circumstances.

### (ii) Flight from Federal prosecution

Under circumstances involving the imminent flight of any individual from Federal prosecution, the Secretary may disclose return information to the extent necessary to apprise appropriate officers or employees of any Federal law enforcement agency of such circumstances.

## (C) Terrorist activities, etc.

### (i) In general

Except as provided in paragraph (6), the Secretary may disclose in writing return information (other than taxpayer return information) that may be related to a terrorist incident, threat, or activity to the extent necessary to apprise the head of the appropriate Federal law enforcement agency responsible for investigating or responding to such terrorist incident, threat, or activity. The head of the agency may disclose such return information to officers and employees of such agency to the extent necessary to investigate or respond to such terrorist incident, threat, or activity.

### (ii) Disclosure to the Department of Justice

Returns and taxpayer return information may also be disclosed to the Attorney General under clause (i) to the extent necessary for, and solely for use in preparing, an application under paragraph (7)(D).

### (iii) Taxpayer identity

For purposes of this subparagraph, a taxpayer's identity shall not be treated as taxpayer return information.

## (4) Use of certain disclosed returns and return information in judicial or administrative proceedings

## (A) Returns and taxpayer return information

Except as provided in subparagraph (C), any return or taxpayer return information obtained under paragraph (1) or (7)(C) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party—

(i) if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, or

(ii) to the extent required by order of the court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure.

## (B) Return information (other than taxpayer return information)

Except as provided in subparagraph (C), any return information (other than taxpayer return information) obtained under paragraph (1), (2), (3)(A) or (C), or (7) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party.

### (C) Confidential informant; impairment of investigations

No return or return information shall be admitted into evidence under subparagraph (A)(i) or (B) if the Secretary determines and notifies the Attorney General or his delegate or the head of the Federal agency that such admission would identify a confidential informant or seriously impair a civil or criminal tax investigation.

### (D) Consideration of confidentiality policy

In ruling upon the admissibility of returns or return information, and in the issuance of an order under subparagraph (A)(ii), the court shall give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

### (E) Reversible error

The admission into evidence of any return or return information contrary to the provisions of this paragraph shall not, as such, constitute reversible error upon appeal of a judgment in the proceeding.

## (5) Disclosure to locate fugitives from justice

### (A) In general

Except as provided in paragraph (6), the return of an individual or return information with respect to such individual shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate judge under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency exclusively for use in locating such individual.

### (B) Application for order

Any person described in paragraph (1)(B) may authorize an application to a Federal district court judge or magistrate judge for an order referred to in subparagraph (A). Upon such application, such judge or magistrate judge may grant such order if he determines on the basis of the facts submitted by the applicant that—

(i) a Federal arrest warrant relating to the commission of a Federal felony offense has been issued for an individual who is a fugitive from justice,

(ii) the return of such individual or return information with respect to such individual is sought exclusively for use in locating such individual, and

(iii) there is reasonable cause to believe that such return or return information may be relevant in determining the location of such individual.

## (6) Confidential informants; impairment of investigations

The Secretary shall not disclose any return or return information under paragraph (1), (2), (3)(A) or (C), (5), (7), or (8) if the Secretary determines (and, in the case of a request for disclosure pursuant to a court order described in paragraph (1)(B) or (5)(B), certifies to the court) that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

## (7) Disclosure upon request of information relating to terrorist activities, etc.

### (A) Disclosure to law enforcement agencies

#### (i) In general

Except as provided in paragraph (6), upon receipt by the Secretary of a written request which meets the requirements of clause (iii), the Secretary may disclose return information (other than taxpayer return information) to officers and employees of any Federal law

enforcement agency who are personally and directly engaged in the response to or investigation of any terrorist incident, threat, or activity.

**(ii) Disclosure to State and local law enforcement agencies**

The head of any Federal law enforcement agency may disclose return information obtained under clause (i) to officers and employees of any State or local law enforcement agency but only if such agency is part of a team with the Federal law enforcement agency in such response or investigation and such information is disclosed only to officers and employees who are personally and directly engaged in such response or investigation.

**(iii) Requirements**

A request meets the requirements of this clause if—

(I) the request is made by the head of any Federal law enforcement agency (or his delegate) involved in the response to or investigation of any terrorist incident, threat, or activity, and

(II) the request sets forth the specific reason or reasons why such disclosure may be relevant to a terrorist incident, threat, or activity.

**(iv) Limitation on use of information**

Information disclosed under this subparagraph shall be solely for the use of the officers and employees to whom such information is disclosed in such response or investigation.

**(v) Taxpayer identity**

For purposes of this subparagraph, a taxpayer's identity shall not be treated as taxpayer return information.

**(B) Disclosure to intelligence agencies**

**(i) In general**

Except as provided in paragraph (6), upon receipt by the Secretary of a written request which meets the requirements of clause (ii), the Secretary may disclose return information (other than taxpayer return information) to those officers and employees of the Department of Justice, the Department of the Treasury, and other Federal intelligence agencies who are personally and directly engaged in the collection or analysis of intelligence and counterintelligence information or investigation concerning any terrorist incident, threat, or activity. For purposes of the preceding sentence, the information disclosed under the preceding sentence shall be solely for the use of such officers and employees in such investigation, collection, or analysis.

**(ii) Requirements**

A request meets the requirements of this subparagraph if the request—

(I) is made by an individual described in clause (iii), and

(II) sets forth the specific reason or reasons why such disclosure may be relevant to a terrorist incident, threat, or activity.

**(iii) Requesting individuals**

An individual described in this subparagraph is an individual—

(I) who is an officer or employee of the Department of Justice or the Department of the Treasury who is appointed by the President with the advice and consent of the Senate or who is the Director of the United States Secret Service, and

(II) who is responsible for the collection and analysis of intelligence and counterintelligence information concerning any terrorist incident, threat, or activity.

**(iv) Taxpayer identity**

For purposes of this subparagraph, a taxpayer's identity shall not be treated as taxpayer return information.

**(C) Disclosure under ex parte orders**

**(i) In general**

Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under clause (ii), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal law enforcement agency or Federal intelligence agency who are personally and directly engaged in any investigation, response to, or analysis of intelligence and counterintelligence information concerning any terrorist incident, threat, or activity. Return or return information opened to inspection or disclosure pursuant to the preceding sentence shall be solely for the use of such officers and employees in the investigation, response, or analysis, and in any judicial, administrative, or grand jury proceedings, pertaining to such terrorist incident, threat, or activity.

**(ii) Application for order**

The Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, or any United States attorney may authorize an application to a Federal district court judge or magistrate for the order referred to in clause (i). Upon such application, such judge or magistrate may grant such order if he determines on the basis of the facts submitted by the applicant that—

(I) there is reasonable cause to believe, based upon information believed to be reliable, that the return or return information may be relevant to a matter relating to such terrorist incident, threat, or activity, and

(II) the return or return information is sought exclusively for use in a Federal investigation, analysis, or proceeding concerning any terrorist incident, threat, or activity.

**(D) Special rule for ex parte disclosure by the IRS**

**(i) In general**

Except as provided in paragraph (6), the Secretary may authorize an application to a Federal district court judge or magistrate for the order referred to in subparagraph (C)(i). Upon such application, such judge or magistrate may grant such order if he determines on the basis of the facts submitted by the applicant that the requirements of subparagraph (C)(ii)(I) are met.

**(ii) Limitation on use of information**

Information disclosed under clause (i)—

(I) may be disclosed only to the extent necessary to apprise the head of the appropriate Federal law enforcement agency responsible for investigating or responding to a terrorist incident, threat, or activity, and

(II) shall be solely for use in a Federal investigation, analysis, or proceeding concerning any terrorist incident, threat, or activity.

The head of such Federal agency may disclose such information to officers and employees of such agency to the extent necessary to investigate or respond to such terrorist incident, threat, or activity.

**(8) Comptroller General**

**(A) Returns available for inspection**

Except as provided in subparagraph (C), upon written request by the Comptroller General of the United States, returns and return information shall be open to inspection by, or disclosure to, officers and employees of the Government Accountability Office for the purpose of, and to the extent necessary in, making—

(i) an audit of the Internal Revenue Service, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice, or the Tax and Trade Bureau, Department of the Treasury, which may be required by section 713 of title 31, United States Code, or