[ORAL ARGUMENT NOT YET SCHEDULED]

# No. 25-5181

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTRO DE TRABAJADORES UNIDOS, IMMIGRANT
SOLIDARITY DUPAGE, SOMOS UN PUEBLO UNIDO, and
INCLUSIVE ACTION FOR THE CITY,

Plaintiffs-Appellants

v.

SCOTT BESSENT, in his official capacity as Secretary of the
Treasury, INTERNAL REVENUE SERVICE, BILLY LONG, in his
official capacity as Commissioner of Internal Revenue,
DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, in
her official capacity as Secretary of Homeland Security, U.S.
IMMIGRATION AND CUSTOMS ENFORCEMENT, and TODD
LYONS, in his official capacity as Acting Director of U.S.
Immigration and Customs Enforcement,

Defendants-Appellees

ON APPEAL FROM THE ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

BRIEF FOR THE APPELLEES

MICHAEL J. HAUNGS          (202) 514-4343
JENNIFER M. RUBIN          (202) 307-0524
GEOFFREY J. KLIMAS         (202) 307-6346
  Attorneys
  Tax Division
  Department of Justice
  Post Office Box 502
  Washington, D.C. 20044

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and *Amici*.**  The plaintiffs, appellants in this Court, are Centro de Trabajadores Unidos, Immigrant Solidarity DuPage, Somos Un Pueblo Unido, and Inclusive Action for the City.  The defendants, appellees in this Court, are Scott Bessent in his official capacity as Secretary of the Treasury, the Internal Revenue Service, Billy Long in his official capacity as Commissioner of Internal Revenue,[1] the Department of Homeland Security, Kristi Noem in her official capacity as Secretary of Homeland Security, U.S. Immigration and Customs Enforcement, and Todd Lyons in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement.

In the District Court, Cambridge Economic Opportunity Committee, the Community Economic Development Center of Southeastern Massachusetts, and 105 members of the U.S. House of Representatives appeared as *amici*.  The 105 members of the U.S.

---

[1] In their complaint and amended complaint, plaintiffs named as a defendant Melanie Krause in her official capacity as Acting Commissioner of Internal Revenue.  When Long became Commissioner of Internal Revenue, he was automatically substituted as a defendant pursuant to Fed. R. Civ. P. 25(d).

House of Representatives are listed in the addendum at Exhibit A. Also in the District Court, American Oversight sought (and was denied) leave to intervene for the limited purpose of obtaining unredacted copies of documents that were filed with the court in redacted form.

In this Court, Cambridge Economic Opportunity Committee, the Community Economic Development Center of Southeastern Massachusetts, the Electronic Frontier Foundation, four U.S. Senators, and 89 members of the U.S. House of Representatives have appeared as *amici*. The four U.S. Senators and 89 members of the U.S. House of Representatives are listed in the addendum at Exhibit B.

**B.** **Rulings Under Review**. Appellants seek review of the memorandum opinion and order of the District Court (Judge Dabney L. Friedrich) dated May 12, 2025 (D.D.C. Case No. 25-cv-677) (Doc. 67) (JA96-111), denying their motion for a preliminary injunction. The opinion is not reported but is available at 2025 WL 1380420.

**C.** **Related Cases**. This case was not previously before this Court or any other appellate court. Counsel are not aware of any related cases currently pending in this Court or in any other court, as provided in Cir. R. 28(a)(1)(C).

# TABLE OF CONTENTS

**Page**

Certificate as to parties, rulings, and related cases ................................i
Table of contents................................................................... iii
Table of authorities .............................................................. vi
Glossary ................................................................................ xv
Statement of jurisdiction........................................................ 1
Statement of the issues .......................................................... 2
Statutes and regulations........................................................ 2
Statement of the case ............................................................ 2

    A.   The nature of the case and course of proceedings below............................................................................ 2

    B.   Section 6103(a)'s general prohibition against the unauthorized disclosure of returns and return information and Section 6103(i)(2)'s exception for non-tax criminal investigations and proceedings ........ 3

    C.   The relevant facts ........................................................... 7

    D.   Proceedings in the District Court ................................ 9

Summary of argument ......................................................... 13
Argument ............................................................................. 16

  I.   This suit should be dismissed because plaintiffs lack standing.................................................................... 16

    Standard of review ............................................................ 16

    A.   Introduction.................................................................... 16

    B.   Centro, Immigrant Solidarity, and Somos lack associational standing ................................................ 18

    C.   Inclusive Action lacks organizational standing........... 25

**Page**

II. The District Court acted well within its discretion in denying plaintiffs' motion for a preliminary injunction .......29

Standard of review .................................................................29

A. Introduction.................................................................30

B. Plaintiffs are unlikely to prevail on the merits ...........31

1. Plaintiffs lack standing .......................................31

2. Plaintiffs improperly seek to enjoin the Government from engaging in lawful conduct ...31

a. The Government is complying with the plain language of Section 6103(i)(2), which requires the disclosure of address information in connection with non-tax criminal investigations and proceedings .................................................32

b. The other statutory provisions cited by plaintiffs do not undermine the plain language of Section 6103(i)(2)....................39

c. The legislative history, extratextual considerations, and policy arguments raised by plaintiffs and *amici* do not undermine the plain language of Section 6103(i)(2) .........................................43

3. Neither the IRS's prior guidance nor the Memorandum constitutes reviewable agency action .................................................................49

4. Plaintiffs' exclusive remedy is a suit for damages under Section 7431...............................57

C.    An injunction is not in the public interest ................... 64

D.    Neither plaintiffs nor their members will be
irreparably harmed in the absence of an injunction ... 65

E.    At all events, any injunction should be narrowly
tailored and a bond required ....................................... 67

Conclusion ................................................................................. 69
Certificate of compliance .......................................................... 70
Addendum .................................................................................. 71

# TABLE OF AUTHORITIES

**Cases:**                                                  **Page(s)**

*Alaska Airlines, Inc. v. Johnson*,
8 F.3d 791 (Fed. Cir. 1993)................................... 24, 33

*Am. Chemistry Council v. Dep't of Transp.*,
468 F.3d 810 (D.C. Cir. 2006)................................... 19

*Ardestani v. I.N.S.*,
502 U.S. 129 (1991) ................................................ 63

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ................................................ 59

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ............................ 26, 28-29

*Bates v. United States*,
522 U.S. 23 (1997) ............................................ 35, 37

*Benisek v. Lamone*,
585 U.S. 155 (2018) ................................................ 30

*Bostock v. Clayton Cty., Ga.*,
590 U.S. 644 (2020) ................................................ 43

*Boulez v. Commissioner*,
810 F.2d 209 (D.C. Cir. 1987).................................. 55

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ................................................ 58

*Boynes v. Limetree Bay Ventures LLC*,
110 F.4th 604 (3d Cir. 2024) .................................... 68

*Matter of Carlson*,
126 F.3d 915 (7th Cir. 1997) .................................... 36

*Chamber of Commerce v. E.P.A.*,
642 F.3d 192 (D.C. Cir. 2011)............................ 19, 22-23

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006)............................... 65-66

*Citizens for Responsibility and Ethics in Wash. v. U.S.
Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017) .......... 58

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) ............................... 29-30

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................ 21, 23, 26, 28

**Cases (cont'd):** Page(s)

*Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742 (D.C. Cir. 1991)...................................17, 40

*Consol. Edison Co. of N.Y. v. F.E.R.C.*, 315 F.3d 316 (D.C. Cir. 2003)...................................53-54

*Corley v. United States*, 556 U.S. 303 (2009) ...........................................34

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799 (2024) ...........................................58

*Council of and for the Blind of Delaware Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) (en banc) .......................59

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) ...........................................1

*Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011)...................................17, 20

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999) ...........................................68

*Elec. Privacy Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232 (D.C. Cir. 2018) ...................................36, 51

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95 (D.C. Cir. 2019) ...................................16, 25

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ...........................................44

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015)...................................25, 31

*Fox v. Gov't of D.C.*, 794 F.3d 25 (D.C. Cir. 2015) ...........................................10

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13 (D.C. Cir. 2006) ...........................................49

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ...........................................17

*Gehl Co. v. Commissioner*, 795 F.2d 1324 (7th Cir. 1986) ...........................................51

*Greenwood v. United States*, 350 U.S. 366 (1956) ...........................................45

*Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169 (D.C. Cir. 2012)...........................................29

**Cases (cont'd):** Page(s)

*Haase v. Sessions,*
    835 F.2d 902 (D.C. Cir. 1987)..................................22-23

*Hamdan v. Rumsfeld,*
    548 U.S. 557 (2006) ................................................ 62

*Hearth, Patio & Barbecue Ass'n v. E.P.A.,*
    11 F.4th 791 (D.C. Cir. 2021) ............................... 19

*Hospitality Staffing Solutions, LLC v. Reyes,*
    736 F. Supp. 2d 192 (D.D.C. 2010) ...................... 66

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ............................................... 19

*Indep. Equip. Dealers Ass'n v. E.P.A.,*
    372 F.3d 420 (D.C. Cir. 2004)............................... 50

*Iowaska Church of Healing v. Werfel,*
    105 F.4th 402 (D.C. Cir. 2024)............................. 28

*Kingdomware Techs., Inc. v. United States,*
    579 U.S. 162 (2016) ................................................. 7

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................... 67

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ......................................... 36, 47

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ....................................16-17, 26

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ............................................... 67

*Marks v. Commissioner,*
    947 F.2d 983 (D.C. Cir. 1991)............................... 39

*Marvin v. United States,*
    732 F.2d 669 (8th Cir. 1984) ............................... 61

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea
    Clammers Ass'n,* 453 U.S. 1 (1981)...................... 59

*Miller v. Commissioner,*
    114 T.C. 184 (2000)............................................... 36

*Nat'l Kidney Patients Ass'n v. Sullivan,*
    958 F.2d 1127 (D.C. Cir. 1992) ............................ 68

*Nat'l Mining Ass'n v. McCarthy,*
    758 F.3d 243 (D.C. Cir. 2014)...........................49-52

**Cases (cont'd):**                                                      **Page(s)**

*Nat'l Treasury Employees Union v. Trump*,
  2025 WL 1441563 (D.C. Cir. 2025) (per curiam)..........................68

*Nat'l Treasury Employees Union v. U.S. Dep't of
  Treasury*, 838 F. Supp. 631 (D.D.C. 1993)...................................66

*Northwest Airlines, Inc. v. F.A.A.*,
  795 F.2d 195 (D.C. Cir. 1986).......................................................28

*Nowicki v. Commissioner*,
  262 F.3d 1162 (11th Cir. 2001) ....................................................61

*Pac. Gas & Elec. Co. v. F.E.R.C.*,
  113 F.4th 943 (D.C. Cir. 2024) .....................................................48

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976) .......................................................................29

*Pension Benefit Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990) .......................................................................46

*People for the Ethical Treatment of Animals v. U.S. Dep't
  of Agric.*, 918 F.3d 151 (D.C. Cir. 2019)...............................24, 33

*Polselli v. Internal Revenue Serv.*,
  598 U.S. 432 (2023) ...................................................................40-42

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety
  Admin.*, 489 F.3d 1279 (D.C. Cir. 2007) ...............................17, 27

*Ratzlaf v. United States*,
  510 U.S. 135 (1994) .......................................................................46

*Renne v. Geary*,
  501 U.S. 312 (1991) .......................................................................55

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) .......................................................................43

*Rodriguez v. United States*,
  480 U.S. 522 (1987) .......................................................................65

*S.E.C. v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) ....................................................65

*Schweiker v. Hansen*,
  450 U.S. 785 (1981) .......................................................................55

*Singh v. Berger*,
  56 F.4th 88 (D.C. Cir. 2022) .........................................................30

*South Carolina v. Regan*,
  465 U.S. 367 (1984) .......................................................................44

**Cases (cont'd):** Page(s)

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................ 19

*Swanson Group Mfg. LLC v. Jewell*,
   790 F.3d 235 (D.C. Cir. 2015)............................ 17, 21, 23

*Syncor Int'l Corp. v. Shalala*,
   127 F.3d 90 (D.C. Cir. 1997) .................................. 50, 52

*Tierney v. Schweiker*,
   718 F.2d 449 (D.C. Cir. 1983)................................. 62-63

*Trudeau v. F.T.C.*,
   456 F.3d 178 (D.C. Cir. 2006).......................................50

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ......................................... 64, 67

*Trump v. Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019), *vacated and remanded*,
   591 U.S. 848 (2020) .....................................................66

*United States v. Michaelian*,
   803 F.2d 1042 (9th Cir. 1986) .....................................61

*United States v. Orlando*,
   281 F.3d 586 (6th Cir. 2002) ......................................61

*United States v. Philip Morris USA, Inc.*,
   396 F.3d 1190 (D.C. Cir. 2005) ..................................59

*United States v. Ware*,
   161 F.3d 414 (6th Cir. 1998) ......................................59

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013) ................................ 50, 53

*Winter v. Natural Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) ................................................. 30, 64

*Wis. Gas Co. v. F.E.R.C.*,
   758 F.2d 669 (D.C. Cir. 1985)......................................65

**Statutes:**                                          **Page(s)**

Administrative Procedure Act (5 U.S.C.):

§ 551, *et seq.* ................................................ 9
§ 551(6) ..................................................... 54
§ 551(7) ..................................................... 54
§ 551(13) .................................................... 50
§ 703 .................................................... 58, 63
§ 704 ....................................................... 58

Internal Revenue Code (26 U.S.C.):

§ 6103 ........................... 2-3, 7, 39, 42, 44, 56, 60-61, 66
§ 6103(a) ................................................... 3-4
§ 6103(b)(1) ................................................. 4
§ 6103(b)(2)(A) .............................................. 4
§ 6103(b)(3) ................................................. 6
§ 6103(b)(6) ...................................... 6, 38-39, 42
§ 6103(c) ................................................ 4, 62
§ 6103(d)-(o) ................................................ 4
§ 6103(i)(2) ........................... 2-6, 11, 13, 19, 21, 24, 27,
                                  31-35, 37-48, 52, 54-55, 64, 66
§ 6103(i)(2)(A) ......................................... 5-7, 40
§ 6103(i)(2)(A)(i)-(ii) ..................................... 42
§ 6103(i)(2)(B) ............................................. 34
§ 6103(i)(2)(B)(i) ..................................... 5, 37, 39
§ 6103(i)(2)(B)(ii)-(iv) ..................................... 5
§ 6103(i)(2)(C) .................................... 6, 38-39, 42-43
§ 6103(i)(3)(C)(iii) ........................................ 43
§ 6103(i)(4)(B) ........................................... 41-42
§ 6103(i)(5) .............................................. 39-40
§ 6103(i)(5)(A) ............................................. 40
§ 6103(i)(5)(B)(i)-(iii) .................................... 40
§ 6103(i)(6) ................................................ 7
§ 6103(i)(7)(A)(v) .......................................... 43
§ 6103(i)(7)(B)(iv) ......................................... 43
§ 6103(p)(4) ................................................ 7

**Statutes (cont'd):**                                  **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 6109 ........................................................................ 6
§ 6109(i) .................................................................... 8
§ 6110 ...................................................................... 62
§ 6110(b)(1)(A) ........................................................ 51
§ 6110(f)(3)(A) ......................................................... 62
§ 6110(k)(3) ............................................................. 51
§ 7213 ...................................................................... 60
§ 7213(a)(1) ............................................................. 60
§ 7213(a)(2)-(5) ....................................................... 61
§ 7213A ................................................................... 60
§ 7213A(a)(1) .......................................................... 60
§ 7213A(b) .............................................................. 60
§ 7431 ..................................................... 57, 59, 63
§ 7431(a) .................................................................. 60
§ 7431(c)(1) ............................................................. 60
§ 7431(c)(2)-(3) ....................................................... 60

8 U.S.C.:

§ 1229, *et seq.* ...................................................... 63
§ 1253 ................................................................. 9, 34
§ 1253(a)(1)(A) ......................................................... 8
§ 1326 .................................................................... 8-9

28 U.S.C.:

§1292(a)(1) ............................................................... 1
§1331 ......................................................................... 1

PATH Act of 2015, Pub. L. No. 114-113 ............................ 57

**Miscellaneous:** **Page(s)**

26 C.F.R. §301.6109-1(d)(3) ................................. 8

60 Fed. Reg. 30211-01 (June 8, 1995) ................................. 56

61 Fed. Reg. 26788-01 (May 20, 1996) ................................. 55

Antonin Scalia & Bryan A. Garner, READING LAW: THE
    INTERPRETATION OF LEGAL TEXTS 376 (2012) ................................. 44

*Classifying Tax Guidance According to End Users*,
    73 Tax Law. 245 (2020) ................................. 36

Disclosure & Privacy Law Reference Guide,
    https://www.irs.gov/pub/irs-pdf/p4639.pdf (last visited
    July 28, 2025)................................. 35-37

Federal Rules of Civil Procedure:

    Rule 12(b)(1) ................................. 12, 55
    Rule 12(b)(6) ................................. 12, 55
    Rule 65(c) ................................. 67

Felix Frankfurter, *Some Reflections on the Reading of
    Statutes*, 47 Colum. L. Rev. 527 (1947) ................................. 35

H.R. Conf. Rep. 97-760 (1982) ................................. 45

H.R. Rep. No. 95-700 (1977) ................................. 44

https://cdn.cnsnews.com/attachments/itin_report-tigta-
    september_1999.pdf (last visited July 28, 2025)................................. 56

https://famguardian.org/PublishedAuthors/Govt/TIGTA/2
    004-30-023.pdf (last visited July 28, 2025) ................................. 55

**Miscellaneous (cont'd):**                                    **Page(s)**

https://www.inclusiveaction.org/microloan (last visited
    July 28, 2025)............................................................................... 28

https://www.taxnotes.com/research/federal/other-
    documents/treasury-tax-correspondence/treasury-
    responds-to-groups-concern-over-targeting-itin-
    users/yqkt (last visited July 28, 2025) ........................................ 57

https://www.washingtonpost.com/local/social-issues/undocumented-
    and-paying-taxes-they-seek-a-foothold-in-the-american-
    dream/2017/03/11/bc6a8760-0436-11e7-ad5b-d22680e18d10
    _story.html (last visited July 28, 2025) ...................................... 57

I.R.M. 11.3.28.4(5)......................................................................... 37

S. 2611, 109th Cong. §301 (2006) ..................................................... 47

S. 2611, 109th Cong. §301, *prop'd amend.* 4147 (2006) ................... 47

S. 2611, 109th Cong. §301, *prop'd amend.* 4177 (2006) ................... 47

Sen. Rep. No. 94-938, Part I (1976)................................................... 3

Sen. Rep. No. 95-745 (1978).............................................................. 44

Sen. Rep. No. 97-58 (1981)................................................................ 45

# GLOSSARY

| **Abbreviation** | **Definition** |
| --- | --- |
| APA | Administrative Procedure Act, 5 U.S.C. §551, *et seq.* |
| Br. | Appellants' opening brief on appeal |
| Centro | Centro de Trabajadores Unidos |
| DHS | U.S. Department of Homeland Security |
| Doc. | Documents of record as numbered by the Clerk of the District Court |
| Government | Internal Revenue Service, U.S. Department of Homeland Security, and U.S. Immigration and Customs Enforcement |
| ICE | U.S. Immigration and Customs Enforcement |
| Immigrant Solidarity | Immigrant Solidarity DuPage |
| Inclusive Action | Inclusive Action for the City |
| I.R.C. | Internal Revenue Code |
| IRS | Internal Revenue Service |
| ITIN | Individual Taxpayer Identification Number |
| JA__ | Joint Appendix |
| Memorandum | Memorandum of understanding entered into between the Treasury Department and U.S. Department of Homeland Security on April 7, 2025 (JA113-27) |

| **Abbreviation** | **Definition** |
| --- | --- |
| Plaintiffs | Centro de Trabajadores Unidos, Immigrant Solidarity DuPage, Somos Un Pueblo Unido, and Inclusive Action for the City |
| Somos | Somos Un Pueblo Unido |

# STATEMENT OF JURISDICTION

On March 26, 2025, Centro de Trabajadores Unidos ("Centro"), Immigrant Solidarity DuPage ("Immigrant Solidarity"), Somos Un Pueblo Unido ("Somos"), and Inclusive Action for the City ("Inclusive Action") (collectively, "plaintiffs") filed an amended complaint against the Secretary of the Treasury, Internal Revenue Service ("IRS"), Commissioner of Internal Revenue, Department of Homeland Security ("DHS"), Secretary of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), and Acting Director of ICE.  (JA16-38.)  Plaintiffs invoked the District Court's jurisdiction under 28 U.S.C. §1331.  However, the court lacked jurisdiction because plaintiffs have not established their standing to maintain this suit.  *Infra*, pp. 16-29.

On May 13, 2023, the District Court issued a memorandum opinion and order denying plaintiffs' motion for a preliminary injunction.  (JA96-111.)  That order did not dispose of all claims of all parties but is immediately appealable.  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009).

On May 21, 2025, plaintiffs filed a timely notice of appeal.  (JA128.)  This Court has jurisdiction under 28 U.S.C. §1292(a)(1).

## STATEMENT OF THE ISSUES

In this suit, plaintiffs seek declaratory and injunctive relief preventing the IRS from disclosing return information to ICE pursuant to Internal Revenue Code ("I.R.C.") (26 U.S.C.) §6103(i)(2) ("Section 6103"). The District Court concluded that plaintiffs had failed to establish that they were likely to prevail on the merits and, therefore, denied their motion for a preliminary injunction. The issues presented in this appeal are:

1.    Whether plaintiffs have standing to maintain this suit.

2.    Whether the District Court abused its discretion in denying plaintiffs' motion for a preliminary injunction.

## STATUTES AND REGULATIONS

The relevant statutory provisions are set forth in the addendum, *infra*.

## STATEMENT OF THE CASE

### A.   The nature of the case and course of proceedings below

Following media reporting that DHS had requested information from the IRS for immigration-enforcement purposes, plaintiffs brought suit alleging that any such disclosure would violate Section 6103, which

governs the inspection and disclosure of returns and return information. In particular, plaintiffs alleged that it would be unlawful for the IRS to provide address information to DHS or ICE for the purpose of locating individuals who are in the country illegally. Plaintiffs sought emergency relief preventing the IRS from making such disclosures, first in a motion for a temporary restraining order and then in a motion for a preliminary injunction. The District Court concluded that plaintiffs had failed to establish that they were likely to prevail on the merits and, therefore, denied both motions. Plaintiffs now appeal from the denial of their motion for a preliminary injunction.

> **B. Section 6103(a)'s general prohibition against the unauthorized disclosure of returns and return information and Section 6103(i)(2)'s exception for non-tax criminal investigations and proceedings**

The rules governing the inspection and disclosure of returns and return information are set forth in Section 6103. As discussed below, Section 6103 reflects a statutory balance between protecting (i) taxpayers' interest in keeping their tax information private and (ii) government agencies' legitimate interest in inspecting and disclosing that information. Sen. Rep. No. 94-938, Part I, at 318 (1976).

Section 6103(a) sets forth a general rule that "returns" and "return information" shall be confidential, and shall not be disclosed "except as authorized by this title." I.R.C. §6103(a). The term "return" is defined to include "any tax or information return, declaration of estimated tax, or claim for refund … which is filed with the Secretary [of the Treasury] …" I.R.C. §6103(b)(1). The term "return information" is defined to include, among other things, "a taxpayer's identity, the nature, source, or amount of his income, [and] … whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing." I.R.C. §6103(b)(2)(A).

Section 6103(a)'s general prohibition against disclosure is subject to a series of statutory exceptions. I.R.C. §6103(c)-(o). The relevant exception here is Section 6103(i)(2), titled "Disclosure of return information other than taxpayer return information for use in criminal investigations." Upon receipt of a compliant request, (i)(2) requires the IRS to disclose certain return information—including the taxpayer's name, mailing address, and taxpayer identifying number—to officers and employees of a federal agency who are personally and directly engaged in:

(i)      preparation for any judicial or administrative proceeding pertaining to the enforcement of a non-tax federal criminal statute,

(ii)     any investigation which may result in such a proceeding, or

(iii)    any grand jury proceeding pertaining to enforcement of such a non-tax federal criminal statute.

I.R.C. §6103(i)(2)(A).

The structure of Section 6103(i)(2) is twofold.  First, it delineates the requirements for an agency to request information.  In particular, a request under (i)(2) must generally be made by the head of an agency or the inspector general thereof.  I.R.C. §6103(i)(2)(A).  The request must also be in writing; set forth the name and address of the taxpayer to whom it relates; identify the taxable period or periods to which the requested information relates; identify the statutory authority under which the criminal investigation or proceeding is being conducted; and identify the reason why disclosure of the requested return information is, or may be, relevant to the investigation or proceeding.  I.R.C. §6103(i)(2)(B)(i)-(iv).

Second, Section 6103(i)(2) delineates what information the IRS must disclose in response to an agency request that complies with the foregoing requirements.  As relevant here, (i)(2) requires that the IRS disclose a taxpayer's address upon the receipt of a compliant request.

In general, Section 6103(i)(2) authorizes the IRS to disclose return information "other than taxpayer return information."  I.R.C. §6103(i)(2)(A).  "Taxpayer return information" is a subcategory of "return information," defined as that return information "which is filed with, or furnished to, the Secretary *by or on behalf of the taxpayer* to whom such return information relates" (as opposed to return information that the IRS has obtained from another source).  I.R.C. §6103(b)(3) (emphasis added).  However, for purposes of (i)(2), "a taxpayer's identity shall not be treated as taxpayer return information."  I.R.C. §6103(i)(2)(C).  And "taxpayer identity" is defined as "the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof."  I.R.C. §6103(b)(6).  Thus, when properly requested, the express terms of (i)(2) compel the disclosure of a taxpayer's name, mailing address, and/or taxpayer identifying number,

regardless of the source from which the IRS obtained that information. (JA105.)

In contrast to other provisions of Section 6103 that use the permissive "may"—*e.g.*, (c), (d)(5)(A) and (e)(11)—(i)(2) provides that "upon receipt by the Secretary [of the Treasury] of a request which meets the requirements of subparagraph (B) … the Secretary *shall* disclose" the return information requested.  I.R.C. §6103(i)(2)(A) (emphasis added).  Consequently, once the IRS receives a request that meets the requirements of (i)(2), its compliance is mandatory.[2]  (JA105; *see Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016).

### C.    The relevant facts

Plaintiffs are four non-profit organizations.  Centro is located in Chicago, Illinois, and "strives to build immigrant and worker power" in the area.  Immigrant Solidarity is located in Wheaton, Illinois, and works "to educate, organize, and mobilize DuPage County around the

---

[2] The only exceptions are if the Secretary determines that "such disclosure would identify a confidential informant or seriously impair a civil or criminal investigation" or if the requesting agency does not establish and maintain appropriate safeguards "to protect the confidentiality" of the return information received.  I.R.C. §6103(i)(6), (p)(4).

rights, culture and collective struggles of the Latino community."
Somos is located in Santa Fe, New Mexico, and is "dedicated to
advancing worker and racial justice" throughout the state. Inclusive
Action is located in Los Angeles, California, and works "to serve
underinvested communities" in the area by providing "low-interest
loans" to entrepreneurs. (JA19-21.)

Plaintiffs allege that some of their members (or clients and
possible future clients, in the case of Inclusive Action) file tax returns
using Individual Taxpayer Identification Numbers ("ITINs"). (JA20-21,
32-34.) ITINs are nine-digit numbers used by taxpayers who are
required to file tax returns, but are ineligible for a social security
number, including some who are living in the United States without
legal authorization. I.R.C. §6109(i); 26 C.F.R. §301.6109-1(d)(3). And
some, but not all, of those individuals may be subject to prosecution
under 8 U.S.C. §1253(a)(1)(A), which makes it a crime to willfully
overstay a final removal order by more than 90 days, or 8 U.S.C. §1326,
which makes it a crime to illegally re-enter the country after having
been deported, removed, or denied entry.

Address information may be relevant to an investigation or proceeding under 8 U.S.C. §§1253 or 1326 for multiple reasons, including confirming whether an individual has, in fact, overstayed a removal order; ensuring that an individual is aware of an outstanding removal order; and locating an individual subject to an investigation or proceeding under either statute.  (JA108-09.)

## D.    Proceedings in the District Court

1.    Centro and Immigrant Solidarity filed this suit following media reporting that DHS had asked the IRS for address information of individuals suspected of being in the country illegally.  (Doc. 1.)  They moved for a temporary restraining order preventing any such disclosure, which the District Court denied.  (JA13-15.)

Centro and Immigrant Solidarity then filed an amended complaint that added Somos and Inclusive Action as plaintiffs and asserted three claims against the Government under the Administrative Procedure Act ("APA"), 5 U.S.C. §551, *et seq.*[3]  (JA16-38.)  Two of the three claims were

---

[3] The amended complaint also asserted two claims seeking non-statutory review.  (JA36-37.)  The District Court held that those claims would necessarily fail if their APA claims failed and, therefore, did not separately address them.  (JA104 n.2.)  Because plaintiffs do not

(continued…)

grounded in the allegation that it would be unlawful for the IRS to disclose information to DHS "for the purpose of identifying the locations of individuals for immigration enforcement," as well as for DHS to inspect information so disclosed to it. (JA34-37.) The third claim was grounded in the allegation that the IRS had arbitrarily and capriciously changed its "view that [it] lacks statutory authority to provide return and return information to ICE." (JA35.) Plaintiffs requested a declaratory judgment and injunction providing that the IRS "may not, absent a court order, disclose return or return information" to DHS or anyone else "for the purpose of identifying the locations of individuals for immigration enforcement." (JA37-38.)

2.     Shortly after the filing of plaintiffs' amended complaint, the Treasury Department and DHS entered into a memorandum of understanding ("the Memorandum") governing the sharing of information, including address information, between their respective subcomponents, the IRS and ICE. (JA113-27.) The Memorandum provides that all ICE requests for return information will conform to

challenge this holding in their opening brief, we do not address the non-statutory review claims further. *See Fox v. Gov't of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015) (arguments not raised in opening brief are waived).

the Section 6103(i)(2) requirements, including that each request will

provide the name and address of the taxpayer about whom information

is requested; the taxable period or periods to which the requested

information relates; the specific non-tax federal criminal statute under

which ICE is conducting an investigation or proceeding; and the reason

that the requested information is, or may be, relevant to the

investigation or proceeding.  (JA116.)

The Memorandum further provides that the IRS will review each

ICE request for completeness and validity.  If a request does not

conform to Section 6103(i)(2)'s requirements, the IRS will not process

the request but instead return it to ICE.  If a request does conform to

the statutory requirements, the IRS will disclose return information to

ICE, but only to the extent required by Section 6103(i)(2).  (JA115.)

In addition, the Memorandum provides that ICE will safeguard

any return information that it receives from the IRS.  In particular, ICE

will use the information solely in connection with non-tax federal

criminal investigations and proceedings.  Any re-disclosure of the

information within ICE will be made consistent with this purpose and

on a need-to-know basis.  And ICE will return or destroy the

information in accordance with applicable record retention schedules when it is no longer needed.[4]  (JA116-22.)

3.     Plaintiffs moved for a preliminary injunction, which the District Court denied.[5]  (JA96-111.)  The court first held that Somos had sufficiently shown it had "associational standing" to challenge the lawfulness of the IRS's technical framework for disclosing return information to ICE; that Centro, Immigrant Solidarity, and Somos had sufficiently shown they had associational standing to challenge the IRS's alleged change in views; and that none of the plaintiffs had sufficiently shown it had standing to challenge the IRS's hypothetical disclosure of return information to ICE for the purpose of civil, rather than criminal, immigration enforcement.  (JA99-103.)

However, the District Court held that plaintiffs were unlikely to prevail on the merits and, therefore, were not entitled to a preliminary

---

[4] As contemplated by the Memorandum (JA115, 123), the IRS and ICE also executed an implementation agreement.  The Government provided a copy of the implementation agreement to plaintiffs, but neither party made it part of the record.  (Doc. 60, p. 1 n.1.)

[5] The Government has moved to dismiss plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6), and that motion remains pending.  (Doc. 31.)

injunction. In so holding, the court concluded that the plain language of Section 6103(i)(2) not only authorizes, but requires, the IRS to disclose return information to an agency that requests it in connection with a non-tax federal criminal investigation or proceeding. It further concluded that the terms of the Memorandum reflected the IRS's and ICE's intent to fully comply with (i)(2). In addition, although it was not clear that the IRS had changed its views about whether return information could be provided to ICE, the court concluded that those views constituted, at most, general statements of policy that were not subject to judicial review. (JA104-11.)

## SUMMARY OF ARGUMENT

Plaintiffs seek declaratory and injunctive relief preventing the IRS from disclosing return information to ICE, despite the agencies' compliance with Section 6103(i)(2). As we explain, plaintiffs lack standing to maintain this suit, and at all events, the District Court did not abuse its discretion in denying their motion for a preliminary injunction.

1. As a threshold matter, none of the plaintiffs has standing. Centro, Immigration Solidarity, and Somos rely on an "associational

standing" theory, which means that each is required to specifically identify a member facing an immediate threat of having his return information disclosed to ICE. None has done so, and they should not be permitted to proceed without satisfying their burden.

Inclusive Action relies on an "organizational standing" theory that the District Court declined to reach, but it fares no better. Inclusive Action's alleged injury relies on a chain of possibilities in which fewer aliens apply for ITINs, file tax returns, and/or operate small businesses. It hypothesizes that, if one or more of these events comes to pass, fewer alien-owned business will apply for its loan products and/or make payments on existing loans. But Inclusive Action has offered no evidence establishing a more-than-speculative possibility that these events will occur, much less be traceable to the IRS's technical framework for disclosing limited return information to ICE. Accordingly, this case should be remanded to the District Court with instructions to dismiss it for lack of jurisdiction.

2. Alternatively, the order denying plaintiffs' motion for a preliminary injunction should be affirmed. As the District Court correctly concluded, plaintiffs are unlikely to prevail on the merits.

Indeed, their suit fails four times over. First, plaintiffs lack standing. Second, the relevant statutory provision not only authorizes the IRS to make the disclosures contemplated by the Memorandum, but requires it to do so. Third, the IRS's prior statements that it will protect return information to the fullest extent of the law, and the Memorandum confirming that it will follow the law with respect to requests for return information from ICE, are not in conflict and do not constitute reviewable agency action. Fourth, Congress has enacted a comprehensive scheme governing the disclosure of return information, and the exclusive remedy provided thereunder is an action for damages in the event of an unauthorized disclosure.

Moreover, plaintiffs have not established the other requirements for a preliminary injunction, namely that the award of such relief would serve the public interest and that the absence of such relief would cause irreparable harm. To the contrary, the public has a strong interest in the IRS providing ICE with prompt, lawful access to information pertinent to its criminal investigations. And any injury to plaintiffs' members, clients, or possible future clients would hardly be irreparable,

where they can avail themselves of the comprehensive remedial scheme governing unauthorized disclosures.

## ARGUMENT

## I.

### This suit should be dismissed because plaintiffs lack standing

### Standard of review

A plaintiff's standing to sue presents a question of law, fully reviewable on an appeal from the denial of a preliminary injunction. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce ("EPIC II")*, 928 F.3d 95, 104 (D.C. Cir. 2019).

———————

To establish jurisdiction, plaintiffs must show that they have standing. Because plaintiffs have not made this showing, this case should be remanded to the District Court with instructions to dismiss it for lack of jurisdiction. *See EPIC II*, 928 F.3d at 104-05.

### A.    Introduction

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The "irreducible minimum necessary" to meet

Article III's case-or-controversy requirement is that a plaintiff have standing. *Id.* at 560. To have standing, a plaintiff must have (i) suffered an injury-in-fact that is (ii) fairly traceable to the challenged action of the defendant and (iii) likely to be redressed by a favorable decision. *Id.* at 560-61. The plaintiff has the burden of establishing each of these elements by identifying facts that "affirmatively appear in the record" and cannot rely on inferences, arguments, or even the government's concession of standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231-36 (1990) (citation and internal quotations omitted).

A plaintiff seeking declaratory and injunctive relief bears "a significantly more rigorous burden to establish standing." *Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (citation and internal quotations omitted). In particular, the plaintiff cannot rely on past injuries but rather must establish "an ongoing injury" or "an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *see also Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007) (injury must be "certainly impending and immediate"); *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991)

("Injunctions … will not issue to prevent injuries neither extant nor presently threatened, but only merely feared.") (citations and internal quotations omitted).

Plaintiffs do not allege that their own return information is at risk of being disclosed to ICE, but instead rely on the potential disclosure of their members', clients', or possible future clients' return information. (JA33-37.)  Centro, Immigrant Solidarity, and Somos assert that potential disclosure of their members' return information provides them with the right to sue under an "associational standing" theory, and Inclusive Action asserts that potential disclosure of its clients' or possible future clients' return information provides it with the right to sue under an "organizational standing" theory.  (JA100; Doc. 32, pp. 4-9.)  Because plaintiffs have not established their standing to sue under either theory, their suit should be dismissed.

## B.  Centro, Immigrant Solidarity, and Somos lack associational standing

1.  An organization may bring suit on behalf of its members pursuant to "associational standing" only if (i) at least one of its members would have standing to sue in his own right, (ii) the interests that the organization seeks to protect are germane to its purpose, and

(iii) neither the claim asserted nor the relief requested requires an individual member to participate. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

As to the first element, "'it is not enough to aver that unidentified members have been injured.'" *Hearth, Patio & Barbecue Ass'n v. E.P.A.*, 11 F.4th 791, 803 (D.C. Cir. 2021) (quoting *Chamber of Commerce v. E.P.A.*, 642 F.3d 192, 199 (D.C. Cir. 2011)). Rather, the plaintiff "must specifically identify members who have suffered the requisite harm." *Chamber of Commerce*, 642 F.3d at 199-200 (citation and internal quotations omitted); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm"); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815, 820 (D.C. Cir. 2006). The only exception is if an organization demonstrates that *all* its members have suffered an injury-in-fact. *Summers*, 555 U.S. at 498.

2. As explained at pp. 4-5, *supra*, Section 6103(i)(2) only authorizes the IRS to disclose return information in connection with non-tax federal criminal proceedings and investigations which may

result in such proceedings. And as the District Court recognized (JA97-98, 101-02, 105-06), the Memorandum tracks the terms of (i)(2) and likewise only authorizes the IRS to disclose return information to ICE in connection with non-tax federal criminal proceedings and investigations which may result in such proceedings. *Supra*, pp. 10-11. Thus, only a member of Centro, Immigrant Solidarity, or Somos who is currently subject to a non-tax federal criminal investigation or proceeding—or likely to be subject to such an investigation or proceeding in the immediate future—plausibly faces "an immediate threat" of his return information being disclosed to ICE. *See Dearth*, 641 F.3d at 501. Nonetheless, as explained below, none of these plaintiffs has specifically identified a member that fits these criteria or demonstrated that all its members meet these criteria; therefore, none satisfies the requirements for associational standing.

<u>Centro and Immigrant Solidarity</u>: The Executive Directors of Centro and Immigrant Solidarity submitted declarations attesting that some, but not all, of their members are aliens who file tax returns using ITINs. (JA40-41; JA45-46.) Centro and Immigrant Solidarity also pseudonymously identified one of their members—Jane Doe and James

Doe, respectively—who attested that they do not have social security numbers and instead file tax returns using ITINs. (JA55, 67.) Immigrant Solidarity further pseudonymously identified a member, John Doe, who attested that he previously filed tax returns using an ITIN. (JA61.)

However, none of the members identified by Centro and Immigrant Solidarity attested that he is the subject of a non-tax federal criminal investigation or proceeding. Nor did any of those members attest to facts suggesting that he is likely to be subject to such an investigation or proceeding in the future (*e.g.*, by attesting that he has overstayed a final order of removal). As such, Centro and Immigrant Solidarity have not established that there is a likelihood—much less an immediate threat—that the IRS will disclose any of these members' return information to ICE pursuant to Section 6103(i)(2), the Memorandum, or otherwise. Accordingly, any injury to these members is "conjectural or hypothetical," not "actual or imminent," and insufficient to support standing. *Swanson Group*, 790 F.3d at 240 (citation and internal quotations omitted); *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013) (plaintiff must demonstrate not

only that a threat exists but that he will likely be subjected to it); *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987). The District Court was, therefore, manifestly correct in holding that Centro and Immigrant Solidarity failed to establish they have associational standing to challenge the lawfulness of the disclosures contemplated by the Memorandum. (JA101 at n.1.)

Somos: The Executive Director of Somos submitted a declaration attesting that some of its members are aliens who file tax returns using ITINs. (JA49-50.) He further attested that "some [of its members] have outstanding orders of deportation." (JA51.) He therefore opined that "at least some portion of Somos's membership" faces an immediate risk of having its return information disclosed to ICE. (*Id.*) However, Somos did not submit a declaration from any of its members, pseudonymously or otherwise, attesting that he was subject to an outstanding deportation order—much less that he filed tax returns using an ITIN *and* was subject to such an order. Nor did Somos otherwise "specifically identify" any member who met these criteria. *Chamber of Commerce*, 642 F.3d at 199-200 (citation and internal quotations omitted). Accordingly, because Somos "has not identified a

single member who was or would be injured … it lacks standing to raise this challenge" on its members' behalf. *Id.* at 200. In reaching a contrary holding (JA100-01), the District Court erred.

3. This analysis applies with even greater force to plaintiffs' claim that the IRS arbitrarily and capriciously changed its views about the lawfulness of sharing information with ICE. Because Centro and Immigrant Solidarity have not established a more-than-speculative possibility that the IRS will disclose their members' return information to ICE, they have necessarily also failed to establish that any such disclosure would be the result of the IRS's alleged change in views. *See Clapper*, 568 U.S. at 411-12; *Swanson Group*, 790 F.3d at 240; *Haase*, 835 F.2d at 911. And because Somos has not specifically identified a member who is at risk of having his return information disclosed to ICE, it has necessarily also failed to establish that any such specifically identified member's return information would be disclosed as a result of the IRS's alleged change in views. *See Chamber of Commerce*, 642 F.3d at 199-200. Once again, the court should have concluded that Centro, Immigrant Solidarity, and Somos have not established associational standing.

4.     Finally, although it is not entirely clear that their amended complaint raises such a claim, the District Court concluded that plaintiffs would not have standing to challenge the lawfulness of any disclosure of return information to ICE for the purpose of civil immigration enforcement.  (JA101-02.)  As the court recognized, the problem with such a claim is that Section 6103(i)(2) is, by its terms, limited to criminal investigations and proceedings.  (*Id.*)  And as plaintiffs conceded at the preliminary injunction hearing, the Memorandum tracks the terms of (i)(2) and provides likewise.  (*Id.*)  Thus, the "presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations" is reinforced by evidence that they are in fact doing so.  *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 795 (Fed. Cir. 1993) (citations and internal quotations omitted); *accord People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019).  As such, the court's conclusion that plaintiffs would lack standing for such a claim is patently correct, and indeed, plaintiffs do not challenge it.

## C. Inclusive Action lacks organizational standing

Inclusive Action relies on an "organizational standing" theory. (Doc. 32, pp. 7-9.) Although the District Court did not address it, that theory also fails.

To establish "organizational standing," an organization must, "like an individual plaintiff, … show [an] actual or threatened injury in fact [to its activities] that is fairly traceable to the alleged illegal action." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation and internal quotations omitted). To do so, the organization must establish "a concrete and demonstrable injury" to its activities, not merely a "setback to the organization's abstract social interests." *EPIC II*, 928 F.3d at 100-101 (citation and internal quotations omitted).

Inclusive Action's organizational standing theory is as follows: Inclusive Action provides loans to small businesses, some of which are owned by aliens. (JA75.) "[I]n Inclusive Action's experience, a significant number of those small business owners" file tax returns using ITINs. (*Id.*) If the IRS were to disclose return information to ICE, Inclusive Action hypothesizes that some "small business owners will be less likely to apply for and continue to use ITINs," some aliens

"will be discouraged from operating small businesses," and/or some existing small businesses owned by aliens will close. (*Id.*) Inclusive Action further opines that, if one or more of these events come to pass, it will be harmed by (i) reduced demand for its lending services, (ii) higher default rates from borrowers who use ITINs, and (iii) increased difficulty in analyzing possible future borrowers' financial situation. (JA75-76.)

Inclusive Action's theory of standing plainly relies on "speculation about the decisions of independent actors" not before the court. *Clapper*, 568 U.S. at 414. Thus, standing is "substantially more difficult to establish," and Inclusive Action must "adduce facts showing that those [independent actors'] choices have been or will be made in such manner as to produce causation." *Lujan*, 504 U.S. at 562 (citation and internal quotations omitted); *accord Arpaio v. Obama*, 797 F.3d 11, 25 (D.C. Cir. 2015) (court "must rigorously review" allegations of standing "based on the projected response of independent third parties"). In this vein, a "'marginally increased possibility'" of harm is insufficient. *Arpaio*, 797 F.3d at 22 (citation and internal quotations omitted). Rather, Inclusive Action must show "*both* (i) a *substantially*

increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Public Citizen*, 489 F.3d at 1295.  It has not done so.

At the outset, we reiterate that the only individuals who face a plausible threat of their return information being disclosed to ICE are those who have filed tax returns using ITINS *and* are subject to a non-tax federal criminal investigation or proceeding, or likely to be subject to such an investigation or proceeding in the immediate future.  *Supra*, pp. 19-20.  Inclusive Action has offered no evidence that it has any such clients (or anticipates having such clients in the immediate future).

Furthermore, Inclusive Action has not provided any evidence to support the conclusion that other individuals with ITINs, whose return information is not at risk of being disclosed to ICE, are likely to stop using ITINs.  Nor has it provided any evidence to support the conclusion that, if those individuals were to make such a decision, it would be based on the Memorandum, rather than other factors.

Moreover, Inclusive Action has provided no evidence to support the conclusion that aliens' decision whether to operate a small business will turn on whether they choose to use ITINs, rather than other

factors.  It also has provided no evidence to support the conclusion that

any defaults on small business loans will be traceable to the owners'

choice whether to use ITINs, rather than other factors.  And it has

likewise provided no evidence to support the conclusion that alien

business owners who opt out of using ITINS will also opt out of applying

for its business loan products, much less that their decision not to apply

for such products will be attributable to the Memorandum, rather than

other factors.  Indeed, Inclusive Action advertises that there is "[n]o

ITIN requirement" to obtain any of its business loan products.

https://www.inclusiveaction.org/microloan (last visited July 28, 2025).

Thus, any harm to Inclusive Action from a reduced demand for its

lending services, or higher default rates, is predicated on "a highly

attenuated chain of possibilities" and "does not satisfy the requirement

that [the] threatened injury must be certainly impending."  *Clapper*,

568 U.S. at 410; *see also Iowaska Church of Healing v. Werfel*, 105 F.4th

402, 413 (D.C. Cir. 2024); *Arpaio*, 797 F.3d at 22; *Northwest Airlines,

Inc. v. F.A.A.*, 795 F.2d 195, 201-02 (D.C. Cir. 1986).

Inclusive Action's allegation that it will be more difficult to

analyze the financial situation of possible future clients is even farther

afield.  Like its other alleged injuries, any such difficulty requires
speculation that the IRS's disclosure of return information to ICE will
result in a more than "'marginally increased possibility'" of Inclusive
Action's possible future clients deciding not to use ITINs.  *Arpaio*,
797 F.3d at 22 (citation and internal quotations omitted).  And even
putting aside the fact that Inclusive Action does not require that its
possible future clients use ITINs, it never explains why it could not
simply ask them to provide the same information they would have
otherwise submitted to the IRS.  Thus, any difficulty in Inclusive Action
obtaining its possible future clients' financial information is not only
speculative, but (if it comes to pass) "inflicted by its own hand."
*Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *accord Grocery
Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 178 (D.C. Cir. 2012).

## II.

### The District Court acted well within its discretion in denying plaintiffs' motion for a preliminary injunction

### Standard of review

This Court reviews for abuse of discretion the District Court's
denial of a preliminary injunction.  *CityFed Fin. Corp. v. Office of Thrift
Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).  To the extent that the

decision involved a question of law, the underlying legal determination is reviewed *de novo*. *Id.*

## A. Introduction

Preliminary injunctions represent "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (citation and internal quotations omitted). Such relief generally serves as "a stopgap measure meant only to preserve the relative positions of the parties until trial." *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) (citation and internal quotations omitted). To establish its entitlement to a preliminary injunction, the movant must "make a clear showing" that (1) it is likely to prevail on the merits, (2) the balance of equities favor preliminary relief, (3) an injunction is in the public interest, and (4) the movant will likely suffer irreparable harm in the absence of an injunction. *Id.*; *accord Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Where a preliminary injunction is sought against the government, the second and third requirements merge. *Singh*, 56 F.4th at 107.

As discussed below, the District Court correctly concluded, and certainly did not abuse its discretion in concluding, that plaintiffs are

unlikely to prevail on the merits.  (JA104-11.)  Indeed, plaintiffs failed
to establish *any* of the requirements for a preliminary injunction.
Accordingly, the court's order denying plaintiffs' motion for a
preliminary injunction should be affirmed.

### B.    Plaintiffs are unlikely to prevail on the merits

#### 1.    Plaintiffs lack standing

At the outset, a party seeking a preliminary injunction "must
show a substantial likelihood of standing." *Food & Water Watch*,
808 F.3d at 913 (citation and internal quotations omitted).  A party that
fails to make such a showing "is not entitled to a preliminary
injunction." *Id.*  As we explained at pp. 16-29, *supra*, plaintiffs failed to
show that they have standing.

#### 2.    Plaintiffs improperly seek to enjoin the Government from engaging in lawful conduct

As the District Court recognized, the central issue in this case is
whether it would be unlawful for the IRS to disclose return information,
and address information in particular, to ICE in accordance with the
Memorandum.  (JA111; *see also* Br. 25.)  Resolution of this issue turns
on Section 6103(i)(2), the plain text of which requires the IRS to disclose
such information to other agencies in connection with non-tax federal

criminal investigations and proceedings. *Supra*, pp. 5-7. Plaintiffs would have this Court engraft a limitation onto (i)(2) that appears nowhere in the statutory text, namely that it only authorizes the disclosure of address information to an agency that also requests other, non-address information. (Br. 32.) But because (i)(2) contains no such limitation, and the Government is steadfastly complying with the provision as written, the District Court correctly concluded that plaintiffs are unlikely to prevail on the merits. (JA104-11.)

> **a.** **The Government is complying with the plain language of Section 6103(i)(2), which requires disclosure of address information in connection with non-tax criminal investigations and proceedings**

(i)    We start with the requirements of Section 6103(i)(2) and the Government's compliance with those requirements. As discussed, Section 6103(i)(2) has two prongs: requirements for agencies to request information and limitations on the information the IRS may disclose. *Supra*, pp. 5-6. In particular, (i)(2) provides that agencies can request certain return information, including address information, about taxpayers in connection with non-tax federal criminal proceedings and investigations which may result in such proceedings. *Supra*, p. 5. The

Memorandum tracks the terms of (i)(2) and provides that any ICE request for return information must comply with (i)(2)'s requirements; that the IRS will not process any request for return information that does not comply with (i)(2); and that the IRS will only disclose return information to ICE as authorized by (i)(2). *Supra*, pp. 5-6, 10-11. Thus, the presumption that the Government will operate in good faith is reinforced by evidence of actual good faith. *See Alaska Airlines*, 8 F.3d at 795; *accord People for the Ethical Treatment of Animals*, 918 F.3d at 157.

(ii)     Plaintiffs address neither the presumption of good faith nor evidence of good faith. Instead, they posit that the Memorandum's framework for sharing information is unlawful based on the following premise: because Section 6103(i)(2) requires an agency to provide an address in its request to the IRS, (i)(2) cannot be used to obtain address information from the IRS. (Br. 32.) This argument is misplaced.

The question of what must be included in an agency's request for return information is distinct from the question of what can be disclosed by the IRS. *Supra*, pp. 5-6. Indeed, the express terms of Section 6103(i)(2) authorize the IRS to disclose a taxpayer's name and address

to a requesting agency, notwithstanding that the agency must provide the taxpayer's name and address in its request. *Supra*, pp. 6-7. Thus, nothing prohibits a requesting agency from providing a name and address to the IRS and asking what address information the IRS has on file, so long as the requesting agency has explained why the requested address information "is, or may be, relevant to" its investigation or proceeding. I.R.C. §6103(i)(2)(B); (JA106; *see also* JA108-09 (discussing reasons that address information may be relevant to an investigation or proceeding under 8 U.S.C. §§1253 or 1326).) To hold otherwise would improperly render (i)(2)(C)'s reference to a "taxpayer's identity"— defined in (b)(6) to include a taxpayer's mailing address—a nullity. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (courts should construe statutes "so that no part will be inoperative or superfluous, void or insignificant") (citation and internal quotations omitted).

To get around this problem, plaintiffs argue that, even though Section 6103(i)(2) authorizes the IRS to disclose a taxpayer's address, the IRS cannot honor a request that seeks *only* a taxpayer's address. (Br. 32.) But nothing in the text or structure of (i)(2) imposes a minimum quantum of return information that must be requested

thereunder, and the District Court correctly declined to create one out of whole cloth.  (JA106); *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[We] ordinarily resist reading words or elements into a statute that do not appear on its face."); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947) ("One more caution is relevant when one is admonished to listen attentively to what a statute says.  One must also listen attentively to what it does not say.").

Plaintiffs' reading of Section 6103(i)(2) also creates a perverse incentive for agencies to request more information than they need. Under their reading of (i)(2), the IRS cannot honor an agency request seeking *only* a taxpayer's address.  However, the IRS must honor a request that seeks, for example, *both* the taxpayer's address *and* whether the taxpayer is under IRS investigation.  And this would be the case even where, as here, it is the taxpayer's address that is relevant to establishing whether a crime has occurred.  (JA109.)  That plaintiffs' reading of (i)(2) spawns this unwarranted anomaly confirms its fallacy.

(iii)   This result is not changed by plaintiffs' citation to the Internal Revenue Manual and the Disclosure & Privacy Law Reference

Guide. (Br. 32.) As the Supreme Court has recently reaffirmed, "it is emphatically the province and duty of the judicial department to say what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citation, internal quotations, and alterations omitted). Moreover, it has long been understood that IRS publications do not bind the IRS and cannot be relied on in the face of a contrary statute. Stephanie Hunter McMahon, *Classifying Tax Guidance According to End Users*, 73 Tax Law. 245, 264 (2020); *Miller v. Commissioner*, 114 T.C. 184, 195 (2000) (collecting cases).

These admonitions carry special force with respect to the Internal Revenue Manual and Reference Guide. The Manual is a compilation of "[p]rocedures … intended to aid in the internal administration of the IRS." *Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997). "It is well-settled … that the provisions of the Manual are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law." *Elec. Privacy Info. Ctr. v. Internal Revenue Serv. ("EPIC I")*, 910 F.3d 1232, 1244-45 (D.C. Cir. 2018) (citation, internal quotations, and alterations omitted). And the Reference Guide cautions that it "was prepared for reference purposes only; it may not be

used or cited as authority for setting or sustaining a legal position."
https://www.irs.gov/pub/irs-pdf/p4639.pdf at *iii (last visited July 28,
2025).

In any event, the statements in the Internal Revenue Manual and
Reference Guide do not bear the weight that plaintiffs place on them.
The Manual states that "Requests for addresses only are invalid
because IRC 6103(i)(2) requires that the requester provide an address,"
I.R.M. 11.3.28.4(5), and the Reference Guide states that "Requests
under section 6103(i)(2) seeking only taxpayers' addresses do not
comply with the section," https://www.irs.gov/pub/irs-pdf/p4639.pdf at
*5-4. As the District Court noted, it is possible to read the Manual and
Reference Guide as simply reinforcing the requirement that a request
for return information under (i)(2) must include the taxpayer's address.
(JA106-07, 110.) But even if the Manual and Reference Guide are read
as supporting the limitation proffered by plaintiffs, the court correctly
concluded that they must yield to the statutory text, which imposes no
such limitation. (JA106-07); *Bates*, 522 U.S. at 29.

(iv) Finally, plaintiffs latch onto Section 6103(i)(2)(B)(i)'s
requirement that an agency requesting information about a taxpayer

provide "the name and address of the taxpayer."  In plaintiffs' view, "the
… address of the taxpayer" means "the taxpayer's current address."
Thus, plaintiffs argue that the IRS can only honor an agency's request
for a taxpayer's "mailing address," *see* I.R.C. §6103(b)(6) & (i)(2)(C), if it
first verifies that the address provided by the requesting agency is
"current."  (Br. 32-33.)  This argument lacks merit.

The clear import of Section 6103(i)(2) is that the requesting
agency shall provide, in good faith, the last-known address reflected in
its files.  There is no basis to impose the additional requirement,
suggested by plaintiffs, that the IRS undertake measures to verify
whether an agency-provided address is more or less "current" than the
address reflected in its files.  Tellingly, plaintiffs never explain what
steps would be required to satisfy their newly minted verification
requirement.  Nor do they explain why a higher standard should apply
here than in other contexts affecting individual rights, where agencies
are generally entitled to rely on the last known address in their files.[6]

---

[6] *Amici* take plaintiffs' position one step further and posit that the
address provided by the requesting agency must match the address
disclosed by the IRS.  (Members of Cong. 16.)  This condition appears
nowhere in the statutory text, which, in fact, uses different language to
(continued…)

*See Marks v. Commissioner*, 947 F.2d 983, 984-86 (D.C. Cir. 1991)

(collecting cases).

> **b.** **The other statutory provisions cited by plaintiffs do not undermine the plain language of Section 6103(i)(2)**

Unable to ground their interpretation of Section 6103(i)(2) in the

plain language of that provision, plaintiffs attempt to hang their

interpretation on other provisions of Section 6103.  However, none

undercuts the plain language of (i)(2).

(i)     Initially, plaintiffs contend that Section 6103(i)(5), titled

"Disclosure to locate fugitives from justice," supports their position that

agencies cannot use Section 6103(i)(2) to obtain address information for

the purpose of locating individuals subject to criminal prosecution.

(Br. 38-39.)  This argument is misplaced.

Section 6103(i)(5) authorizes designated officers and employees of

the Justice Department to submit an application to a federal district

court or magistrate judge, seeking an *ex parte* order for access to

returns or return information for use in locating an individual subject to

---

describe what the requesting agency provides (*i.e.*, "the … address of
the taxpayer") and what the IRS discloses (*i.e.*, the taxpayer's "mailing
address").  I.R.C. §6103(b)(6), (i)(2)(B)(i), (i)(2)(C).

an outstanding felony arrest warrant. I.R.C. §6103(i)(5). Unlike a request under (i)(2), an application under (i)(5) can only be made by the Justice Department; must be submitted to a judge; and is only available if a judge has already issued an arrest warrant. I.R.C. §6103(i)(5)(A), (B)(i)-(iii). Also, unlike a request under (i)(2), an application under (i)(5) is not limited to return information "other than [certain categories of] taxpayer return information"; rather, it can seek both returns and return information, including all categories of taxpayer return information. *Compare* I.R.C. §6103(i)(2)(A) *with* (i)(5)(A).

According to plaintiffs, if agencies could rely on Section 6103(i)(2) to locate an individual under criminal investigation, then (i)(5) would be rendered "largely a dead letter." (Br. 39.) But as the District Court recognized, the Justice Department can obtain significantly more information under (i)(5) than is available to agencies proceeding under (i)(2). (JA107-08.) This difference alone means that (i)(5) "still has work to do [and] is not superfluous." *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 443 (2023) (citation and internal quotations omitted). And, of course, this is far from the only difference between the two provisions.

Plaintiffs downplay these differences, claiming that "the most salient information" to locate a fugitive is his mailing address, which can be requested more readily under Section 6103(i)(2) than (i)(5). (Br. 39.) But regardless of whether plaintiffs view the additional information available under (i)(5) as significant, "a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." *Polselli*, 598 U.S. at 443 (citation and internal quotations omitted). Moreover, there is a plethora of "salient" information to locate a fugitive that is potentially available under (i)(5) but not (i)(2), including the fugitive's business address (reported on Schedule C), place of employment (reported on Form W-2), rental properties (reported on Schedule E), bank accounts (reported on income tax returns and Form 1099-INT), and more.

(ii)     Next, plaintiffs point to Section 6103(i)(4)(B), which provides that "return information (other than taxpayer return information)" obtained under (i)(1), (i)(2), (i)(3)(A), (i)(3)(C), and (i)(7) can be disclosed in a criminal proceeding. According to plaintiffs, this means that, if an agency obtains a taxpayer's address from the IRS under (i)(2), then that address—which is likely "taxpayer return information"—cannot be

introduced in such a proceeding. From this premise, plaintiffs argue "[t]here is no sensible reason why Congress" would have permitted agencies to obtain address information under (i)(2) if it cannot be so used. (Br. 36-37.)

This argument fails. First, address information obtained under (i)(2) *can* be introduced in a criminal proceeding. While (i)(4)(B) only authorizes the disclosure of return information "other than taxpayer return information," for purposes of (i)(2) a "taxpayer's identity"— including "his mailing address"—"shall not be treated as taxpayer return information." I.R.C. §6103(b)(6), (i)(2)(C), (i)(4)(B). And even if address information obtained under Section 6103(i)(2) could not be introduced in a criminal proceeding, an agency could still use it in an "investigation which may result in such a proceeding" and in "preparation for" such a proceeding. I.R.C. §6103(i)(2)(A)(i)-(ii). Here again, "a job is a job," regardless of what plaintiffs think of that job. *Polselli*, 598 U.S. at 443 (citation and internal quotations omitted).

(iii) Finally, plaintiffs point to various other provisions of Section 6103 that distinguish between "return information" and "taxpayer return information" and argue that only the former can be disclosed for

law enforcement purposes absent a court order.  (Br. 34-35.)  But plaintiffs ignore that, for purposes of *this* provision, Congress provided that certain "taxpayer return information"—including the taxpayer's address—"shall not be treated as taxpayer return information."  I.R.C. §6103(i)(2)(C); *see also id.* §6103(i)(3)(C)(iii), (i)(7)(A)(v), (i)(7)(B)(iv).  The District Court properly applied the provision as written, and this Court should do likewise.

> **c.** **The legislative history, extratextual considerations, and policy arguments raised by plaintiffs and *amici* do not undermine the plain language of Section 6103(i)(2)**

As discussed above, Section 6103(i)(2) has a "plain and unambiguous meaning" and "the statutory scheme is coherent and consistent."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citation and internal quotations omitted).  This is dispositive of the provision's interpretation, and this Court should proceed no further.  *See id.*; *accord Bostock v. Clayton Cty., Ga.*, 590 U.S. 644, 653 (2020).  Nonetheless, we briefly address the various extratextual considerations on which plaintiffs and *amici* rely.

(i)  Plaintiffs first point to committee reports that accompanied the 1978 amendment to Section 6103(i)(2).  (Br. 33, 46.)  But committee

reports are "drafted by committee staff and are not voted on (and rarely even read) by the committee members, much less the full house." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 376 (2012). "[T]here is little reason to believe" that such reports "hold views representative of the full chamber." *Id.*; *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568-69 (2005) (criticizing use of committee reports).

Nor do the committee reports provide significant support for plaintiffs' position. They merely state that the 1978 amendment to Section 6103(i)(2) was intended to "permit the IRS to transmit to the Justice Department and other Federal agencies the name and address of a taxpayer along with" other return information that is so disclosable. Sen. Rep. No. 95-745, at 61, 63 (1978); H.R. Rep. No. 95-700, at 53, 55 (1977) (same).

(ii)     Plaintiffs next turn to a committee report that accompanied the 1982 amendment to Section 6103. (Br. 38, 47.) Of course, "the views of a subsequent Congress … at best, form a hazardous basis for inferring the intent of an earlier one." *South Carolina v. Regan*, 465 U.S. 367, 378 n.17 (1984) (citation and internal quotations omitted).

Plaintiffs' reliance on the views of a 1982 House committee to divine the intent of the full 1978 Congress is, therefore, misguided from the start.

Indeed, members of later Congresses did not uniformly endorse plaintiffs' interpretation of Section 6103(i)(2). On one hand, the House committee report cited by plaintiffs supports their interpretation. H.R. Conf. Rep. 97-760, at 674 (1982) ("It is intended that taxpayer identity information be treated as taxpayer return information unless return information (other than taxpayer identity information) is requested and disclosed pursuant to such written request."). On the other hand, a Senate committee report evinces a contrary interpretation. Sen. Rep. No. 97-58, at 150 (1981) ("The acquisition of current addresses from IRS files [to locate individuals in violation of the Military Selective Service Act] is currently authorized by … 6103(i)(2) …"). Plaintiffs' reliance on legislative history is a particularly clear example of "entering a crowded cocktail party and looking over the heads of the guests for one's friends." READING LAW 377; *see Greenwood v. United States*, 350 U.S. 366, 374 (1956) ("this is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute").

Critically, the limitation suggested in the House committee report is wholly absent from the text of Section 6103(i)(2), both before and after the 1982 amendment.  Because Congress could have provided such a limitation in the statutory text, but chose not to, this Court should decline plaintiffs' invitation to "resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994).

(iii)   *Amici* direct the Court to proposed legislation that was never enacted, which would have permitted disclosure of return information for immigration-enforcement purposes.  (Members of Cong. 24-26.)  But such congressional inaction "lacks persuasive significance" and represents "a particularly dangerous ground on which to rest an interpretation of a prior statute." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (citation and internal quotations omitted).  After all, "several equally tenable inferences may be drawn from such inaction, including the inference that existing legislation already incorporated the offered change." *Id.* (citation and internal quotations omitted).  Notably, the proposed legislation cited by *amici* went well beyond disclosure in connection with criminal investigations

and proceedings and, as such, could just as easily have been rejected for that reason. *See* S. 2611, 109th Cong. §301 (2006) (proposing disclosure for immigration enforcement at the employer level); *see also id.*, *prop'd amend.* 4177 (2006) (proposing disclosure for civil immigration enforcement); *id.*, *prop'd amend.* 4147 (2006) (same).

(iv) Plaintiffs rely heavily on four government memoranda from the early 1980s, which recommended that the IRS not disclose to the Justice Department, for use in potential criminal prosecutions, the addresses of men who had failed to register with the Selective Service System. (Br. 11-13, 38.) But regardless of how the White House, Treasury Department, and IRS may have interpreted Section 6103(i)(2) in that context, this Court's job is to determine the "best reading" of the provision "[as] if no agency were involved." *Loper Bright*, 603 U.S. at 400.

Moreover, the memoranda do not lend meaningful support to plaintiffs' interpretation of Section 6103(i)(2). Each memorandum acknowledged that "the relevant Code section [6103(i)(2)] can be read literally to permit disclosure of current address information" in connection with a criminal investigation. (JA80 (alterations in

original); *see also* JA84, 87, 93.) None unequivocally concluded that disclosure of address information under these circumstances was prohibited. (JA80 (recommending "further study"), 83 (recommending against disclosure even though "support can be found to justify such disclosures"), 88 ("there is no easy, clear-cut answer to the question of whether such disclosures are permissible"), 93 (discussing "considerations … which I believe tilt the balance toward nondisclosure").) And three of the four memoranda noted that their recommendation was in tension with other IRS guidance, views expressed in the congressional record, or both. (JA84, 87, 89-90, 94.)

(v)     As a last resort, *amici* assert that it would be unwise for the IRS to disclose return information to ICE. (Cambridge Econ. Opp. 14-16; Members of Cong. 19-23.) But Section 6103(i)(2) makes disclosure mandatory upon receipt of a compliant request, and "policy concerns cannot override the text of a statutory provision." *Pac. Gas & Elec. Co. v. F.E.R.C.*, 113 F.4th 943, 950 (D.C. Cir. 2024). At bottom, plaintiffs' objection to the disclosures contemplated by the Memorandum is rooted in their disagreement with the balance struck by Congress, and their recourse is resort to the democratic process—not this lawsuit.

### 3. Neither the IRS's prior guidance nor the Memorandum constitutes reviewable agency action

As the District Court correctly held, plaintiffs are also unlikely to prevail on the merits for a third reason, namely that the IRS actions at issue constitute, at most, general statements of policy not subject to judicial review.  (JA109-11.)  This reinforces the conclusion that the court acted well within its discretion in denying preliminary relief.

(a)    The APA divides agency action into three basic categories: legislative rules, interpretive rules, and general statements of policy. *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014).  In appropriate circumstances, "legislative rules and sometimes even interpretive rules may be subject to pre-enforcement judicial review." *Id.*  General statements of policy, by contrast, may not.  *Id.*

Relatedly, courts have recognized that the APA is designed to provide judicial review of "circumscribed, discrete agency actions," not plans for how to implement congressional directives.  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20-22 (D.C. Cir. 2006) (citation and internal quotations omitted).  In other words, judicial review under the APA focuses on "an agency's *determination* of rights

and obligations." *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing 5 U.S.C. §551(13)); *accord Trudeau v. F.T.C.*, 456 F.3d 178, 189 (D.C. Cir. 2006). Courts "lack[ ] authority to review claims where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party." *Indep. Equip. Dealers Ass'n v. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (citation and internal quotations omitted).

In determining which category an agency action falls into—and thus whether it is reviewable under the APA—the most important factor is "the actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Nat'l Mining*, 758 F.3d at 252; *accord Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). Generally speaking, "[a]n agency action that purports to impose legally binding obligations or prohibitions on regulated parties … is a legislative rule." *Nat'l Mining*, 758 F.3d at 251. "[A]n agency action that merely interprets a prior statute or regulation, and does not itself purport to impose new obligations or prohibitions or requirements on regulated parties, is an interpretive rule." *Id.* at 252. And "[a]n agency

action that merely explains how the agency will enforce a statute or regulation … is a general statement of policy." *Id.*

(b)   Plaintiffs' challenge here is based on statements contained in prior informal IRS guidance (on which their members, clients, and possible future clients allegedly relied) and the Memorandum.   The District Court correctly concluded that neither category of statements represents a legislative or interpretive rule that can be reviewed on a pre-enforcement basis, and plaintiffs were, therefore, unlikely to succeed on their challenge thereto.  (JA110-11.)

As to the prior guidance, it did not, in form or content, purport to create a binding rule or obligation.  To begin with, the guidance was contained in informal publications, agency memoranda, and the like— rather than duly promulgated regulations—and thus presumptively non-binding.  *See*, *e.g.*, *EPIC I*, 910 F.3d at 1244-45 (Internal Revenue Manual not binding); *Gehl Co. v. Commissioner*, 795 F.2d 1324, 1333 (7th Cir. 1986) ("a taxpayer who relies on [informal agency guidance] does so at his own peril"); I.R.C. §6110(b)(1)(A), (k)(3) (IRS Chief Counsel advice "may not be used or cited as precedent").  Nor have plaintiffs identified anything in the language or context of the guidance

suggesting that the IRS intended to deviate from that presumption and "impose legally binding obligations or prohibitions." *Nat'l Mining*, 758 F.3d at 251. Rather, the guidance constituted "[general] policy statements that set out a procedure for information requests." (JA110.) Thus, the guidance bound neither the public nor the IRS, and the IRS always "retain[ed] the discretion and the authority to change its position—even abruptly." *See Syncor*, 127 F.3d at 94.

Similarly, the Memorandum solely consists of a technical framework for sharing information. As we explained at pp. 10-11, *supra*, the Memorandum tracks the terms of Section 6103(i)(2) and provides that any ICE request for return information must comply with the terms of (i)(2); that the IRS will not process any request for return information that does not comply with (i)(2); and that the IRS will only disclose return information as authorized by (i)(2). As such, the Memorandum simply parrots the obligations spelled out in (i)(2), as opposed to "impos[ing] or elaborat[ing] or interpret[ing] a legal norm." *Syncor*, 127 F.3d at 94. Nothing about the form or content of the Memorandum purports to serve as a "*determination* of rights and obligations" vis-à-vis plaintiffs or their members, clients, and possible

future clients.  *Vill. of Bald Head*, 714 F.3d at 193.  Thus, like the prior guidance, the Memorandum constitutes, at most, a general statement of policy that is not subject to pre-enforcement review under the APA.

(c)     Plaintiffs do not challenge the District Court's conclusion that neither the prior IRS guidance nor the Memorandum constitutes a legislative or interpretive rule.  (JA110-11.)  Nonetheless, they contend that they can challenge one general statement of policy (*i.e.*, the Memorandum) as an unexplained departure from another (*i.e.*, the IRS's prior guidance).  (Br. 43-48.)  The District Court correctly rejected this contention, and this Court should do likewise.  (JA110-11.)

As we just explained, general statements of policy are not reviewable on a pre-enforcement basis.  Plaintiffs resist this conclusion based on *Consol. Edison Co. of N.Y. v. F.E.R.C.*, 315 F.3d 316 (D.C. Cir. 2003) (Br. 48), but that case is inapposite.  There, the Federal Energy Regulatory Commission issued a policy statement concerning how it would evaluate whether rates charged by gas companies were "just and reasonable."  *Id.* at 319-20.  While an administrative hearing was pending, the Commission issued a new policy statement.  *Id.* at 322.  However, it continued to apply its old policy statement in the hearing.

*Id.* Under longstanding administrative law principles, the Commission was therefore required to explain "why the pending [hearing] should be decided on the basis of the old versus the new policy." *Id.* at 323. But the principle that an agency must normally "adhere to its precedents in adjudicating cases before it," *id.*, has no application here, where there is not even arguably an adjudication. *See* 5 U.S.C. §551(7) (defining "adjudication" as "agency process for the formulation of an order"); *id.* at §551(6) (defining "order" as "the whole or part of a final disposition … of an agency in a matter other than rule making"). And even in the context of agency adjudications, a party has no right to *pre-enforcement* review of a general statement of policy, as plaintiffs seek in this case.

More fundamentally, the District Court correctly recognized that even if the Memorandum were rescinded tomorrow, the IRS would still be required, by statute, to provide address information to ICE upon receipt of a valid request under Section 6103(i)(2). (JA110.) This remains true regardless of what the prior guidance said, as an agency cannot override a statute. And an agency certainly cannot do so by issuing a general statement of policy or similar internal guidance that

does "not confer any rights upon" the public. *Boulez v. Commissioner*, 810 F.2d 209, 215 n.48 (D.C. Cir. 1987) (citation and internal quotations omitted); *accord Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981).

This underscores the fatal flaw in plaintiffs' arbitrary-and-capricious claim. Viewed through the lens of Fed. R. Civ. P. 12(b)(1), plaintiffs lack standing because the disclosures they seek to prevent are compelled by Section 6103(i)(2), separate and apart from the Memorandum. *See Renne v. Geary*, 501 U.S. 312, 319 (1991). Viewed through the lens of Fed. R. Civ. P. 12(b)(6), plaintiffs' claim fails as a matter of law because the IRS is following the best reading of (i)(2) and thus, by definition, not acting arbitrarily and capriciously. *Supra*, pp. 31-48.

(d)     Moreover, as the District Court observed, the throughline between the prior guidance and the Memorandum is the IRS's commitment to protect return information to the greatest extent permitted by law.[7]  (JA110.)  Nothing in the prior guidance suggested

_____

[7] https://famguardian.org/PublishedAuthors/Govt/TIGTA/2004-30-023.pdf (last visited July 28, 2025) ("the tax law generally prohibits the IRS from sharing this tax return information with other Federal Government agencies"); 61 Fed. Reg. 26788-01, 26788 (May 20, 1996)
(continued…)

that the IRS would refuse to comply with lawful requests for return

information, much less defy a congressional directive mandating

disclosure. Accordingly, assuming *arguendo* that the Memorandum

constituted reviewable agency action, the court correctly concluded that

plaintiffs had not even established that it reflected the IRS having

"reversed course"—much less that it had done so in an arbitrary and

capricious manner:

> Any substantive change under the challenged Memorandum …
> stems not from the IRS's change in position but the
> Administration's decision to use certain statutorily authorized
> tools to further criminal investigations.

(JA110.)

To be sure, the IRS has consistently stated that it will not disclose

return information for the purpose of civil immigration enforcement,

---

("Generally, tax returns and tax return information are confidential, as
required by 26 U.S.C. 6103"); 60 Fed. Reg. 30211-01, 30213 (June 8,
1995) ("Disclosure in violation of the restrictions under section 6103
may lead to civil or criminal penalties."); *see also* https://cdn.
cnsnews.com/attachments/itin_report-tigta-september_1999.pdf at *6-*7
(last visited July 28, 2025) (IRS "concurs" with Inspector General
recommendation to "conduct separate studies of the scope and use of
provisions regarding taxpayer confidentiality" in connection with
immigration laws).

and it continues to adhere to that position today.[8]  But as discussed at

p. 24, *supra*, there is no reason to conclude that return information will

be disclosed for that purpose.  Under the circumstances, plaintiffs'

speculation that the Memorandum may be a pretext for ICE to pursue

civil immigration enforcement (Br. 42-43) must yield to the presumption

of good faith and evidence of actual good faith.

### 4. Plaintiffs' exclusive remedy is a suit for damages under Section 7431

Plaintiffs are also unlikely to prevail for a fourth reason, not

reached by the District Court, which provides further support for the

denial of a preliminary injunction.  In particular, Congress provided

that taxpayers aggrieved by the inspection or disclosure of their return

information can pursue an action for damages under Section 7431.  As

---

[8] https://www.taxnotes.com/research/federal/other-documents/
treasury-tax-correspondence/treasury-responds-to-groups-concern-over-
targeting-itin-users/yqkt (last visited July 28, 2025) (IRS does not have
"a program or project to investigate unauthorized workers in an effort
to have them deported"); https://www.washingtonpost.com/local/social-
issues/undocumented-and-paying-taxes-they-seek-a-foothold-in-the-
american-dream/2017/03/11/bc6a8760-0436-11e7-ad5b-d22680e18d10
_story.html (last visited July 28, 2025) ("There is no authorization
under this provision [of the PATH Act of 2015, Pub. L. No. 114-113] to
share tax data with ICE."); (Doc. 58, pp. 9-10) (providing context for the
Washington Post article).

discussed below, the existence of this alternative, adequate remedy foreclosures the equitable relief plaintiffs seek here.

The APA provides a cause of action for parties injured by agency action and seeking non-monetary relief. *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 808 (2024). However, one of the bedrock principles of the APA is that it does not displace other congressionally enacted procedures for judicial review. Rather, where a "special statutory review proceeding" exists and is adequate, that proceeding governs. 5 U.S.C. §703; *see also* 5 U.S.C. §704 (judicial review is limited to "final agency action for which there is no adequate remedy in a court"). Viewed through this prism, the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (quotation omitted); *see also Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (APA review is generally unavailable where Congress has established "an independent cause of action or an alternative review procedure") (citation and internal

quotations omitted); *Council of and for the Blind of Delaware Valley, Inc. v. Regan*, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (en banc).

The foregoing principle is consistent with the general rule that, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) (citation and internal quotations omitted); *accord Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015). Put another way, "when Congress has designated a specific remedy for violation of one of its acts, courts should presume that Congress has engaged in the necessary balancing of interests to determine the appropriate penalty." *United States v. Ware*, 161 F.3d 414, 424 (6th Cir. 1998). This presumption applies with special force in cases where Congress has enacted a remedial scheme that is "elaborate," "comprehensive," and "reticulated." *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1199-1200 (D.C. Cir. 2005).

Congress has enacted just such a remedial scheme addressing the unauthorized inspection and disclosure of return information. For starters, Section 7431 provides that a taxpayer can bring a civil action

for damages if his return information is inspected or disclosed in violation of Section 6103 and the violation is the result of knowing or negligent conduct.  I.R.C. §7431(a).  The amount that a taxpayer can recover depends on whether the violation was the result of simple negligence, gross negligence, or willfulness.  I.R.C. §7431(c)(1).  A taxpayer that prevails in such an action may be eligible for an award of attorney's fees and costs.  I.R.C. §7431(c)(2)-(3).

Furthermore, Section 7213A provides that an officer or employee of the United States who willfully inspects return information in violation of Section 6103 is subject to dismissal from office or discharge from employment, a fine of up to $1,000, and imprisonment of up to one year.  I.R.C. §7213A(a)(1), (b).  Similarly, Section 7213 provides that an officer or employee of the United States who willfully discloses return information in violation of Section 6103 is subject to dismissal from office or discharge from employment, a fine of up to $5,000, and imprisonment of up to five years.  I.R.C. §7213(a)(1).  And Section 7213 also provides criminal penalties for individuals who receive return information lawfully, but later willfully redisclose it in an unlawful manner; receive return information unlawfully, and later willfully print

or publish it "in any manner not provided by law"; or willfully solicit return information in exchange for an item of material value. I.R.C. §7213(a)(2)-(5).

In light of this highly reticulated scheme, courts have held that the civil and criminal remedies discussed above represent the exclusive recourse for taxpayers aggrieved by the unlawful inspection or disclosure of their return information. *United States v. Orlando*, 281 F.3d 586, 596 (6th Cir. 2002) ("Congress has provided civil and criminal remedies for violations of § 6103, but no statutory provision requires the exclusion of evidence so obtained."); *Nowicki v. Commissioner*, 262 F.3d 1162, 1164 (11th Cir. 2001) ("Congress saw fit to provide only certain remedies for violations of § 6103 …"); *Marvin v. United States*, 732 F.2d 669, 673 (8th Cir. 1984); *see also United States v. Michaelian*, 803 F.2d 1042, 1049-50 (9th Cir. 1986). Additional equitable relief is unavailable, at least in the absence of a constitutional violation. *Orlando*, 281 F.3d at 595-96; *Nowicki*, 262 F.3d at 1163-64; *Marvin*, 732 F.2d at 673. Plaintiffs' suit, which seeks just such relief, thus fails to state a claim upon which relief can be granted.

Indeed, when Congress wanted to afford taxpayers the ability to bring a preemptive suit to prevent the disclosure of their tax information, it did so expressly. Section 6110 provides that a taxpayer who has obtained a written determination concerning his tax situation may petition the Tax Court to prevent the IRS from disclosing information contained therein. I.R.C. §6110(f)(3)(A). Congress's provision of such a remedy in this limited context confirms that its omission in other contexts should be respected. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).

This conclusion is reinforced by *Tierney v. Schweiker*, 718 F.2d 449 (D.C. Cir. 1983). There, the Social Security Administration sought to verify recipients' eligibility for benefits by comparing information in SSA files against information in IRS files. *Id.* at 451-52. In anticipation of requesting return information from the IRS, SSA procured consent forms from recipients so that it could avail itself of Section 6103(c), which authorizes disclosure of taxpayers' return information to a third party if they "consent to such disclosure." *Id.* at 452 (quoting I.R.C. §6103(c)). However, this Court determined that the consent forms were invalid. *Id.* at 456. The Court nonetheless declined

to enjoin the IRS from disclosing return information to SSA, where the recipients could bring a civil action for damages under Section 7431 if the IRS were to make unlawful disclosures in the future. *Id.* at 457. The same result follows here.

Of course, plaintiffs express concern that, in addition to the threat of their return information being disclosed, some of their members, clients, and possible future clients may ultimately face removal from the country. (Br. 42-43.) But the members', clients', and possible future clients' interest in not facing removal is separate and distinct from their interest in the confidentiality of their return information. And there are special proceedings that the members, clients, and possible future clients can avail themselves of if they face removal. 8 U.S.C. §1229, *et seq.* Accordingly, plaintiffs must use those "special statutory review proceeding[s]" and cannot pursue relief under the APA or general equitable principles. 5 U.S.C. §703; *see Ardestani v. I.N.S.*, 502 U.S. 129, 133-34 (1991) ("Congress intended the provisions of the Immigration and Nationality Act of 1952 … to supplant the APA in immigration proceedings").

**C.    An injunction is not in the public interest**

Even if a plaintiff has shown that it is likely to prevail on the merits, courts must still "pay particular regard for the public consequences in employing the extraordinary remedy of an injunction." *Winter*, 555 U.S. at 24 (citation and internal quotations omitted).  Here, plaintiffs seek an injunction preventing the IRS from disclosing return information to ICE about any individual, wherever located, and without regard to whether he or she has any affiliation with plaintiffs.  (Doc. 51, pp. 9-10.)  The Supreme Court recently held that such universal injunctions "likely exceed the authority conferred by the Judiciary Act" and are, correspondingly, likely to irreparably harm the Government. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025).  And the breadth of plaintiffs' requested relief is all the more inappropriate given the limited geographic area that they serve:  two areas in Illinois, the state of New Mexico, and an area in California.  (JA19-21.)

Furthermore, the plain terms of Section 6103(i)(2) not only authorize, but require, the IRS to disclose address information requested in connection with non-tax federal criminal investigations and proceedings.  *Supra*, pp. 6-7 & n.2.  Thus, Congress has determined

that, under the circumstances contemplated in (i)(2), disclosure is appropriate. Where Congress has made such a determination, the public interest is served by honoring it. *See Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (laws embody Congress's determination about "what competing values will or will not be sacrificed to the achievement of a particular objective"). Indeed, the public interest in prompt execution of the laws is particularly acute here, because the purpose of (i)(2) is to aid in the efficient conduct of law enforcement investigations and proceedings. *See S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1383 (D.C. Cir. 1980).

### D. Neither plaintiffs nor their members will be irreparably harmed in the absence of an injunction

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citation and internal quotations omitted). A movant must therefore establish irreparable harm to obtain a preliminary injunction, even if all the other factors have been established. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

The Government continues to maintain that the disclosures contemplated by the Memorandum are lawful. However, if any such disclosures are later determined to have been made in violation of Section 6103, plaintiffs' members, clients, and possible future clients can avail themselves of the comprehensive remedial scheme discussed at pp. 59-60, *supra*.[9] And if any of plaintiffs' members, clients, and possible future clients were to face removal, they could avail themselves of the comprehensive remedial scheme discussed at p. 63, *supra*. The availability of these remedies "weighs heavily against a claim of irreparable harm."[10] *Chaplaincy*, 454 F.3d at 297-98 (citations and internal quotations omitted).

---

[9] Plaintiffs cite (Br. 51) three cases for the proposition that the disclosure of confidential information may constitute irreparable harm. *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019), *vacated and remanded*, 591 U.S. 848 (2020); *Hospitality Staffing Solutions, LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010); *Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993). However, none involved litigants that, like plaintiffs' members, clients, and possible future clients, could recover damages under a remedial scheme enacted by Congress.

[10] *Amici* worry that the IRS may disclose information about the wrong individuals due to "record linkage errors." (Elec. Frontier Found. 22-26; *see* Cambridge Econ. Opp. 21-25.) However, they have not proposed any safeguards to prevent such errors, much less tied those safeguards to the requirements of Section 6103(i)(2). At all events, the Government is using safeguards to minimize this risk.

### E. At all events, any injunction should be narrowly tailored and a bond required

For the reasons discussed above, the order denying plaintiffs' motion for a preliminary injunction should be affirmed. However, if this Court were to reverse, it should direct the District Court to narrowly tailor any injunction and determine an appropriate bond.

The "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation and internal quotations omitted). Broader relief improperly "presume[s] and remediate[s] harm that has not been established." *Lewis v. Casey*, 518 U.S. 343, 360 n.7 (1996). And, when such relief takes the form of a universal injunction, it also "likely exceed[s] the equitable authority that Congress has granted to federal courts." *CASA,* 145 S. Ct. at 2548. Accordingly, any injunction should be limited to plaintiffs and the members and clients identified on their rolls.

Furthermore, Fed. R. Civ. P. 65(c) provides that a "court may issue a preliminary injunction … *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained." (Emphasis added). Under the plain language of this rule, "injunction bonds are generally required." *Nat'l Treasury Employees Union v. Trump*, 2025 WL 1441563, at *3 n.4 (D.C. Cir. 2025) (per curiam); *accord Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 611 (3d Cir. 2024). A court has broad discretion to determine the appropriate amount of an injunction bond. *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) ($5,000 bond); *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1129 (D.C. Cir. 1992) ($750,000 bond). Accordingly, if the order denying a preliminary injunction is reversed, this Court should direct the District Court to determine an "appropriate bond" on remand. *Nat'l Kidney Patients*, 958 F.2d at 1129.

## CONCLUSION

This case should be remanded to the District Court with instructions to dismiss it for lack of jurisdiction. In the alternative, the order denying plaintiffs' motion for a preliminary injunction should be affirmed.

Respectfully submitted,

/s/ Geoffrey J. Klimas

| | |
|---|---|
| MICHAEL J. HAUNGS | (202) 514-4343 |
| JENNIFER M. RUBIN | (202) 307-0524 |
| GEOFFREY J. KLIMAS | (202) 307-6346 |

*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

AUGUST 4, 2025

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this document contains 12,996 words, **or**

[ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   _/s/ Geoffrey J. Klimas_

Attorney for _Appellees_

Dated: _____August 4, 2025_

# ADDENDUM

26 U.S.C. §6103(a), (b)(1)-(b)(3),
(b)(6), (i)(2), (i)(4), (i)(5).......................................................71

Exhibit A:  Members of Congress
who participated as *amici* below.......................................79

Exhibit B:  Members of Congress
participating as *amici* in this Court ................................82

## 26 U.S.C. § 6103—Confidentiality and disclosure of returns and return information

**(a) General rule.**—Returns and return information shall be confidential, and except as authorized by this title—

**(1)** no officer or employee of the United States,

**(2)** no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(1)(C) or (7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

**(3)** no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (c), subsection (e)(1)(D)(iii), paragraph (10), (13), (14), or (15) of subsection (k), paragraph (6), (10), (12), (13) (other than subparagraphs (D)(v) and (D)(vi) thereof), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

**(b) Definitions.**—For purposes of this section—

**(1) Return.--**The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

**(2) Return information.--**The term "return information" means--

> **(A)** a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessment, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition or offense,
>
> **(B)** any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,
>
> **(C)** any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and
>
> **(D)** any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

**(3) Taxpayer return information.--**The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

...

**(6) Taxpayer identity.--**The term "taxpayer identity" means the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof.

...

**(i) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.--**

...

**(2) Disclosure of return information other than taxpayer return information for use in criminal investigations.--**

**(A) In general.--**Except as provided in paragraph (6), upon receipt by the Secretary of a request which meets the requirements of subparagraph (B) from the head of any Federal agency or the Inspector General thereof, or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, the Secretary shall disclose return information (other than taxpayer return information) to

officers and employees of such agency who are personally and directly engaged in—

**(i)** preparation for any judicial or administrative proceeding described in paragraph (1)(A)(i),

**(ii)** any investigation which may result in such a proceeding, or

**(iii)** any grand jury proceeding described in paragraph (1)(A)(iii),

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B) Requirements.--**A request meets the requirements of this subparagraph if the request is in writing and sets forth—

**(i)** the name and address of the taxpayer with respect to whom the requested return information relates;

**(ii)** the taxable period or periods to which such return information relates;

**(iii)** the statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and

**(iv)** the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation.

**(C) Taxpayer identity.--**For purposes of this paragraph, a taxpayer's identity shall not be treated as taxpayer return information.

...

**(4) Use of certain disclosed returns and return information in judicial or administrative proceedings.—**

**(A) Returns and taxpayer return information.**--Except as provided in subparagraph (C), any return or taxpayer return information obtained under paragraph (1) or (7)(C) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party—

**(i)** if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, or

**(ii)** to the extent required by order of the court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure.

**(B) Return information (other than taxpayer return information).**--Except as provided in subparagraph (C), any return information (other than taxpayer return information) obtained under paragraph (1), (2), (3)(A) or (C), or (7) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party.

**(C) Confidential informant; impairment of investigations.**--No return or return information shall be admitted into evidence under subparagraph (A)(i) or (B) if the Secretary determines and notifies the Attorney General or his delegate or the head of the Federal agency that such

admission would identify a confidential informant or seriously impair a civil or criminal tax investigation.

**(D)  Consideration of confidentiality policy.**--In ruling upon the admissibility of returns or return information, and in the issuance of an order under subparagraph (A)(ii), the court shall give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

**(E)  Reversible error.**--The admission into evidence of any return or return information contrary to the provisions of this paragraph shall not, as such, constitute reversible error upon appeal of a judgment in the proceeding.

**(5)  Disclosure to locate fugitives from justice.—**

**(A)  In general.**--Except as provided in paragraph (6), the return of an individual or return information with respect to such individual shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate judge under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency exclusively for use in locating such individual.

**(B)  Application for order.**--Any person described in paragraph (1)(B) may authorize an application to a Federal district court judge or magistrate judge for an order referred to in subparagraph (A). Upon such application, such judge or magistrate judge may grant such order if he determines on the basis of the facts submitted by the applicant that—

**(i)**  a Federal arrest warrant relating to the commission of a Federal felony offense has been issued for an individual who is a fugitive from justice,

**(ii)** the return of such individual or return information with respect to such individual is sought exclusively for use in locating such individual, and

**(iii)** there is reasonable cause to believe that such return or return information may be relevant in determining the location of such individual.

**Exhibit A: Members of Congress
who participated as *amici* below**

<u>Members of the U.S. House of Representatives:</u>
Gabe Amo
Yassamin Ansari
Becca Balint
Nanette Barragán
Joyce Beatty
Ami Bera
Suzanne Bonamici
Julia Brownley
Salud O. Carbajal
Troy Carter
Greg Casar
Kathy Castor
Joaquin Castro
Sheila Cherfilus-McCormick
Judy Chu
Gilbert R. Cisneros, Jr.
Yvette Clarke
Emanuel Cleaver, II
J. Luis Correa
Jim Costa
Joe Courtney
Jasmine Crockett
Danny K. Davis
Madeleine Dean
Maxine Dexter
Lloyd Doggett
Sarah Elfreth
Veronica Escobar
Adriano Espaillat
Cleo Fields
Lizzie Fletcher
Bill Foster
Laura Friedman
Maxwell Alejandro Frost

John Garamendi
Jesús G. "Chuy" García
Robert Garcia
Sylvia Garcia
Jimmy Gomez
Maggie Goodlander
Al Green
Pablo Jose Hernandez
Steven Horsford
Jared Huffman
Glenn F. Ivey
Sara Jacobs
Pramila Jayapal
Henry C. Johnson, Jr.
Sydney Kamlager-Dove
Robin L. Kelly
Ro Khanna
Teresa Leger Fernandez
Mike Levin
Sam Liccardo
Ted W. Lieu
Lucy McBath
Jennifer L. McClellan
Betty McCollum
James P. McGovern
LaMonica McIver
Gregory W. Meeks
Robert Menendez
Dave Min
Kevin Mullin
Jerrold Nadler
Eleanor Holmes Norton
Alexandria Ocasio-Cortez
Ilhan Omar
Scott H. Peters
Chellie Pingree
Nellie Pou
Mike Quigley

Delia C. Ramirez
Emily Randall
Jamie Raskin
Luz M. Rivas
Deborah K. Ross
Raul Ruiz
Andrea Salinas
Linda T. Sánchez
Mary Gay Scanlon
Jan Schakowsky
Lateefah Simon
Adam Smith
Darren Soto
Melanie A. Stansbury
Greg Stanton
Mark Takano
Shri Thanedar
Bennie G. Thompson
Dina Titus
Rashida Tlaib
Jill Tokuda
Rep. Paul Tonko
Norma J. Torres
Ritchie Torres
Lori Trahan
Derek T. Tran
Juan Vargas
Gabe Vasquez
Nydia M. Velázquez
Debbie Wasserman Schultz
Maxine Waters
Bonnie Watson Coleman
Frederica S. Wilson

**Exhibit B: Members of Congress
participating as *amici* in this Court**

U.S. Senators:
Catherine Cortez Masto
Alejandro Padilla
Elizabeth Warren
Sheldon Whitehouse

Members of the U.S. House of Representatives:
Gabe Amo
Yassamin Ansari, Becca Balint
Nanette Barragán
Joyce Beatty
Suzanne Bonamici
Shontel M. Brown
Julia Brownley
Salud O. Carbajal
Andre Carson
Troy Carter
Greg Casar
Sean Casten
Kathy Castor
Joaquin Castro
Emanuel Cleaver, II
J. Luis Correa
Jim Costa
Joe David Courtney
Jasmine F. Crockett
Danny K. Davis
Madeleine Dean
Diana DeGette
Maxine Dexter
Lloyd Doggett
Sarah Elfreth
Veronica Escobar
Adriano Espaillat
Cleo Fields

Lizzie Fletcher
Bill Foster
Laura S. Friedman
Maxwell Alejandro Frost
John Garamendi
Sylvia R. Garcia
Jesus G. "Chuy" Garcia
Jimmy Gomez
Maggie Goodlander
Pablo Jose Hernandez
Steven A. Horsford
Jared Huffman
Glenn F. Ivey
Sara Jacobs
Pramila Jayapal
Henry C. ("Hank") Johnson, Jr.
Sydney Kamlager-Dove
Ro Khanna
John B. Larson
Teresa Leger Fernandez
Mike Levin
Sam Liccardo
Stephen F. Lynch
Betty Louise McCollum
James P. McGovern
LaMonica McIver
Robert J. Menendez
Kweisi Mfume
Dave Min
Seth Moulton
Eleanor Holmes Norton
Alexandria Ocasio-Cortez
Ilhan Omar
Frank Pallone
Nancy Pelosi
Brittany Pettersen
Chellie Pingree
Nellie Pou

Mike Quigley
Delia C. Ramirez
Jamie Raskin
Luz M. Rivas
Andrea Salinas
Linda T. Sánchez
Jan Schakowsky
Brad Sherman
Lateefah Simon
Melanie A. Stansbury
Shri Thanedar
Bennie G. Thompson
Rashida Tlaib
Norma J. Torres
Ritchie Torres
Juan Vargas
Nydia M. Velázquez
Debbie Wasserman Schultz
Maxine Waters
Bonnie Watson Coleman
Nikema Williams
Frederica S. Wilson