**No. 25-5181**

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

CENTRO DE TRABAJADORES UNIDOS, et al.,

Plaintiffs-Appellants,

v.

SCOTT BESSENT, et al.,

Defendants-Appellees.

---

On Appeal from the United States
District Court for the District of Columbia
No. 1:25-cv-00677-DLF
Hon. Dabney L. Friedrich

---

**APPELLANTS' REPLY BRIEF**

---

Kevin L. Herrera
Mark H. Birhanu
Raise the Floor Alliance
1 N. LaSalle Street
Suite 1275
Chicago, Illinois 60602
(312) 795-9115

Nandan M. Joshi
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-7733
njoshi@citizen.org

Alan B. Morrison
George Washington University
  Law School
2000 H Street NW
Washington, DC 20052
(202) 994-7120

August 22, 2025

# TABLE OF CONTENTS

Table of Authorities ..........................................................................ii

Glossary...........................................................................................viii

Introduction and Summary of Argument .................................... 1

Argument ........................................................................................ 3

I.     Appellants are likely to succeed on the merits. .............. 3

       A.     The government's attempts to avoid the merits
              fail. ............................................................................. 3

              1.     Appellants have demonstrated a likelihood
                     of standing. ...................................................... 3

              2.     The IRS's decision to share taxpayer
                     addresses with ICE is reviewable. ............... 11

              3.     Section 7431 does not bar Appellants' APA
                     claims.............................................................. 17

       B.     Section 6103(i)(2) does not authorize the IRS to
              disclose taxpayer addresses when no other
              information is requested. ...................................... 21

II.    The remaining factors also support reversal of the
       district court's order denying a preliminary injunction. .............. 29

III.   In light of new developments, the scope of the
       injunction should be addressed by the district court on
       remand. ............................................................................ 30

IV.    The Court should reject Appellees' request to address
       the government's demand for a bond. ............................ 32

Conclusion .................................................................................... 32

Certificate of Compliance ........................................................ 34

Certificate of Service.................................................................. 35

# TABLE OF AUTHORITIES*

**Cases**                                                                    **Pages**

*Air New Zealand Ltd. v. Civil Aeronautics Board,*
   726 F.2d 832 (D.C. Cir. 1984) ............................................................ 17

*Americans for Safe Access v. DEA,*
   706 F.3d 438 (D.C. Cir. 2013) ............................................................ 10

*Armstrong v. Exceptional Child Center, Inc.,*
   575 U.S. 320 (2015) ............................................................................ 20

*Bartenwerfer v. Buckley,*
   598 U.S. 69 (2023) .............................................................................. 25

*Bennett v. Spear,*
   520 U.S. 154 (1997) .............................................................................. 4

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ............................................................................ 19

*Center for Biological Diversity v. EPA,*
   56 F.4th 55 (D.C. Cir. 2022) ................................................................ 5

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ............................................................ 29

*Citizens for Responsibility & Ethics in Washington
v. U.S. Department of Justice,*
   846 F.3d 1235 (D.C. Cir. 2017) .......................................................... 18

*Cohen v. United States,*
   650 F.3d 717 (D.C. Cir. 2011) ............................................................ 19

*Council of & for the Blind of Delaware Valley, Inc. v. Regan,*
   709 F.2d 1521 (D.C. Cir. 1983) .......................................................... 20

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Czyzewski v. Jevic Holding Corp.*,
    580 U.S. 451 (2017) .................................................... 10

*Delaware v. Pennsylvania*,
    598 U.S. 115 (2023) .................................................... 28

\* *Diamond Alternative Energy, LLC v. EPA*,
    145 S. Ct. 2121 (2025) .................................... 3, 4, 11

*Electronic Privacy Information Center
    v. U.S. Department of Commerce*,
    928 F.3d 95 (D.C. Cir. 2019) ....................... 4, 7, 11

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) .................................................... 16

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ................................ 11

*Fuld v. Palestine Liberation Organization*,
    606 U.S. 1 (2025) ........................................................ 28

*Fund for Animals, Inc. v. U.S. Bureau of Land Management*,
    460 F.3d 13 (D.C. Cir. 2006) .................................. 14

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ................................ 18

*Graham County Soil & Water Conservation District
    v. United States ex rel. Wilson*,
    559 U.S. 280 (2010) .................................................... 24

*Independent Equipment Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) ......................... 12, 13

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) .................................. 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................... 3

*Marks v. Commissioner,*
 947 F.2d 983 (D.C. Cir. 1991) ........................................... 25

*Marvin v. United States,*
 732 F.2d 669 (8th Cir. 1984) ............................................ 20

*Middlesex County Sewerage Authority v. National Sea*
 *Clammers Ass'n,*
 453 U.S. 1 (1981) ............................................................ 20

*Milner v. Department of Navy,*
 562 U.S. 562 (2011) ........................................................ 28

*National Environmental Development Ass'ns*
 *Clean Air Project v. EPA,*
 752 F.3d 999 (D.C. Cir. 2014) ...................................... 13, 14

*National Mining Ass'n v. McCarthy,*
 758 F.3d 243 (D.C. Cir. 2014) ........................................... 13

*National Park Hospitality Ass'n v. Department of Interior,*
 538 U.S. 803 (2003) ..................................................... 12, 13

*NLRB v. Wyman-Gordon Co.,*
 394 U.S. 759 (1969) ..................................................... 15, 16

*Norton v. Southern Utah Wilderness Alliance,*
 542 U.S. 55 (2004) ................................................... 14, 15, 17

*Nowicki v. Commissioner,*
 262 F.3d 1162 (11th Cir. 2001) ......................................... 20

*Ohio Forestry Ass'n v. Sierra Club,*
 523 U.S. 726 (1998) ..................................................... 12, 13

*Sackett v. EPA,*
 598 U.S. 651 (2023) ........................................................ 23

*Tanner-Brown v. Haaland,*
 105 F.4th 437 (D.C. Cir. 2024) ...................................... 4, 32

*Tierney v. Schweiker,*
  718 F.2d 449 (D.C. Cir. 1983) ..................................... 19, 20

*Tozzi v. HHS,*
  271 F.3d 301 (D.C. Cir. 2001) ........................................ 10

*Trump v. CASA, Inc.,*
  145 S. Ct. 2540 (2025) ............................................ 30, 31

\* *Türkiye Halk Bankasi A.S. v. United States,*
  598 U.S. 264 (2023) ...............................................23, 24

*United States v. Michaelian,*
  803 F.2d 1042 (9th Cir. 1986) ........................................ 20

*United States v. Orlando,*
  281 F.3d 586 (6th Cir. 2002) ......................................... 20

*United States v. Philip Morris USA, Inc.,*
  396 F.3d 1190 (D.C. Cir. 2005) ....................................... 20

*United States v. Ware,*
  161 F.3d 414 (6th Cir. 1998) ......................................... 20

*Whitman v. American Trucking Ass'ns,*
  531 U.S. 457 (2001) .................................................. 12

**Statutes**

5 U.S.C. § 553 ............................................................ 12

5 U.S.C. § 703 ....................................................... 17, 18

5 U.S.C. § 704 ............................................................ 18

8 U.S.C. § 1229 ........................................................... 18

8 U.S.C. § 1253(a)(1)(A) ............................................... 6, 7

8 U.S.C. § 1306 ............................................................ 8

8 U.S.C. § 1326 ............................................................ 7

18 U.S.C. § 201(c)(2) ............................................. 20

26 U.S.C. § 6103(a) ............................................. 13

26 U.S.C. § 6103(b)(6) ............................................. 23

26 U.S.C. § 6103(c) ............................................. 13

26 U.S.C. § 6103(i) ............................................. 21

26 U.S.C. § 6103(i)(1) ............................................. 30

\* 26 U.S.C. § 6103(i)(2) .......... 2, 12, 13, 15, 16, 21, 22, 24, 25, 26, 27, 29, 30

26 U.S.C. § 6103(i)(2)(B)(4) ............................................. 26

26 U.S.C. § 6103(i)(2)(C) ............................................. 23, 27

26 U.S.C. § 6103(i)(4) ............................................. 27

26 U.S.C. § 6103(i)(5) ............................................. 26, 27

26 U.S.C. § 6110(f)(3)(A) ............................................. 21

26 U.S.C. § 6212(b)(1) ............................................. 25

26 U.S.C. § 7431 ............................................. 17, 18, 19

26 U.S.C. § 7431(a) ............................................. 17, 18

26 U.S.C. § 7431(b) ............................................. 18

26 U.S.C. § 7431(b)(1) ............................................. 17, 19

28 U.S.C. § 1604 ............................................. 24

Tax Reform Act of 1976,
    Pub. L. No. 94-455, tit. XII, sec. 1202(a),
    90 Stat. 1520. ............................................. 22

Pub. L. No. 97-86,
    § 916, 95 Stat. 1099 (1981) ............................................. 29

**Other Authorities**

Jacob Bogage & Kadia Goba, IRS, *White House clashed over immigrants' data before tax chief was ousted*, Washington Post (Aug. 9, 2025), https://www.washingtonpost.com/business/2025/08/09/trump-administrationirs-data-dispute .................................................... 14

Executive Order 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025).................... 31

H.R. Rep. No. 95-700 (1977)........................................................ 22

IRS, Disclosure and Privacy Law Reference Guide, Pub. 4639 (Oct. 2012), https://www.irs.gov/pub/irspdf/p4639.pdf ..................... 24

Internal Revenue Manual § 11.3.28.4(5) (Apr. 17, 2025) ................ 13, 24

S. Rep. No. 95-745 (1978) ................................................... 22, 23

S. Rep. No. 97-58 (1981) .......................................................... 28

William Turton, Christopher Bing & Avi Asher-Schapiro, *The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE*, ProPublica (July 15, 2025), https://www.propublica.org/article/trump-irs-share-tax-records-ice-dhs-deportations............................................................... 7

vii

# GLOSSARY

APA               Administrative Procedure Act

FSIA           Foreign Sovereign Immunities Act

ICE              U.S. Immigration and Customs Enforcement

IRS              Internal Revenue Service

ITIN            Individual taxpayer identification number

MOU           Memorandum of Understanding

## INTRODUCTION AND SUMMARY OF ARGUMENT

Under the Internal Revenue Code, all workers in the United States, regardless of their immigration status, are required to pay federal taxes on their income. Congress and the Internal Revenue Service (IRS) have long reassured taxpayers that the personal information they furnish to the IRS will be kept confidential. Like all taxpayers, immigrants have relied on those assurances in filing their federal income taxes.

For nearly half a century, that assurance of confidentiality has included taxpayers' addresses. Absent a court order, a federal agency investigating a crime could obtain addresses from the IRS only as part of a broader request for information obtained from sources *other than* the taxpayer. And the IRS has never, until now, permitted that exception to be used when the law enforcement agency requests only taxpayer addresses.

The IRS now seeks to reverse course by sharing taxpayer addresses on a mass scale with the Department of Homeland Security and U.S. Immigration and Customs Enforcement (ICE). Although the government's plans relate to immigrants, the arguments that it advances open the door for the IRS to become the address book for law enforcement

agencies conducting mass surveillance of taxpayers' whereabouts. The government does not suggest otherwise. Instead, it urges the Court not to address the merits of this appeal and to turn a blind eye to ICE's mass acquisition of taxpayer addresses.

No jurisdictional barrier prevents this Court from reaching the merits and declaring the unprecedented information-sharing deal between the IRS and ICE to be unlawful. Sharing of taxpayer addresses has already started, and the likely scale of the data transfer removes any doubt that the harm to immigrant taxpayers—those under a bona fide criminal investigation and those subject to civil removal—is sufficiently concrete to support standing. The Administrative Procedure Act (APA) provides a remedy to halt this sort of unlawful and harmful agency action, and the Internal Revenue Code presents no impediment to Appellants' claim.

On the merits, the government has no effective rebuttal to Appellants' argument that the full text, structure, and history of 26 U.S.C. § 6103(i)(2) foreclose the idea that taxpayer addresses may be the sole object of a criminal law enforcement inquiry. And although the government complains that it has an interest in investigating criminal

acts, a preliminary injunction here would not prevent ICE from seeking a court order for taxpayer addresses needed to pursue individual criminal investigations, which is the method that Congress intended law enforcement to use in these circumstances.

The Court should reverse the district court's conclusion that the IRS's information-sharing deal with ICE is lawful and remand to allow the district court to consider Appellants' request for preliminary relief in light of this Court's decision and developments since the district court issued the order under review.

## ARGUMENT

### I. Appellants are likely to succeed on the merits.

#### A. The government's attempts to avoid the merits fail.

##### 1. Appellants have demonstrated a likelihood of standing.

Standing contains three elements: injury in fact, causation, and redressability. *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2133 (2025); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must demonstrate standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the

litigation." *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) (internal quotation marks omitted). Accordingly, when a plaintiff seeks a preliminary injunction, the plaintiff must demonstrate "a substantial likelihood of standing—[*i.e.,* that it is] likely to be able to demonstrate standing at the summary judgment stage." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019). A court "must consider standing separately from the merits by assuming that the plaintiff will ultimately prevail on her legal theory." *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024).

Here, the government contests only the element of injury. That argument fails because Appellants have adequately answered the question "What's it to [them]?" *Diamond Alternative Energy*, 145 S. Ct. at 2133 (internal quotation marks omitted).

**a.** Appellants Somos Un Pueblo Unido, Centro de Trabajadores Unidos, and Immigrant Solidarity DuPage are associations pursuing claims on behalf of their members. An association has standing where "(1) at least one member of the association has standing to sue in her own right (based on a showing of harm, causation, and redressability), (2) the interests the association seeks to protect by suing on its members' behalf

are germane to its purpose, and (3) neither the asserted claim nor the relief requested requires individual members to participate in the litigation." *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 66 (D.C. Cir. 2022). Each of these three Appellants has shown a likelihood that its members will suffer injury because of the IRS's decision to share taxpayer addresses with ICE.

These Appellants each have members who are not authorized to work in the United States but who have earned income, obtained individual taxpayer identification numbers (ITINs) from the IRS, filed tax returns, and paid income taxes. Guajardo Decl. ¶¶ 2, 4, 6 (JA 40–41); Cavazos Decl. ¶¶ 2, 4 (JA 45–46); Diaz Decl. ¶¶ 2, 6, 9 (JA 49–51); Jane Doe Decl. ¶¶ 3–5 (JA 54–55); John Doe Decl. ¶¶ 3–5 (JA 61); James Doe Decl. ¶¶ 3–5 (JA 67). These workers submitted their addresses to the IRS under assurances of confidentiality, but they no longer have the benefit of that protection because of the unlawful IRS-ICE information-sharing memorandum of understanding (MOU).

That loss of protection engenders additional harms. Appellants' members now face a Hobson's choice: comply with their tax obligations or avoid the tax system to prevent ICE from using their data in

enforcement actions. Guajardo Decl. ¶ 6 (JA 41); Cavazos Decl. ¶ 6 (JA 46); Diaz Decl. ¶¶ 6–7 (JA 50–51); John Doe Decl. ¶ 7 (JA 62); James Doe Decl. ¶¶ 6–9 (JA 67–68). Avoiding the tax system has its own harmful consequences, beyond the risk of civil or criminal penalties. In New Mexico, for instance, ITINs are used to obtain driver's licenses, to engage in financial transactions, to pay state taxes, and to obtain educational benefits. Diaz Decl. ¶¶ 10–14 (JA 51–53). And the IRS itself has consistently noted the connection between confidentiality of tax data and the effective operation of the nation's tax system. *See* Appellants' Br. 15–17, 50, 52 (citing prior IRS and Treasury Department statements).

The government argues that only members who are "currently subject to a non-tax federal criminal investigation or proceeding" or likely to be in the "immediate future" can assert an Article III injury, and that Appellants have not adequately identified such a member. Appellees' Br. 20. Somos's executive director Marcela Diaz, however, attested that she is aware of Somos members who file federal tax returns and "have outstanding orders of deportation." Diaz Decl. ¶ 9 (JA 51); *see* 8 U.S.C. § 1253(a)(1)(A) (criminalizing willful failure to depart after final order of removal). Although the government asserts that Somos was required to

provide more information about those members at the preliminary injunction stage, Appellees' Br. 19, 22, a plaintiff need only show that it is "*likely* to be able to demonstrate standing at the summary judgment stage." *Elec. Privacy Info. Ctr.*, 928 F.3d at 104 (emphasis added). Ms. Diaz's declaration satisfies that standard.

In any event, the government takes too narrow a view of the scope of members who are injured. Immigrants without outstanding orders of removal are also harmed by the IRS-ICE information-sharing deal. ICE reportedly intends to use its data-sharing deal with the IRS to obtain the addresses of as many as seven million immigrants, *see* Appellants' Br. 22, 42; Dist. Ct. ECF 28-2, apparently necessitating the development of an automated system to process the volume of requests. *See* William Turton, Christopher Bing & Avi Asher-Schapiro, *The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE*, ProPublica (July 15, 2025), https://www.propublica.org/article/trump-irs-share-tax-records-ice-dhs-deportations. Moreover, the data-sharing agreement places no restrictions on the type of crimes that ICE may assert that it is investigating. Although the government focuses on 8 U.S.C. §§ 1253(a)(1)(A) and 1326 (illegal re-entry after prior removal), the MOU

applies to ICE's enforcement of any "nontax Federal criminal statute." MOU § 2 (JA 114–15). ICE could obtain the address of nearly every immigrant by asserting that it is investigating the individual's compliance with 8 U.S.C. § 1306, which criminalizes the willful failure to register or provide notification of a change of address. As a practical matter, under the MOU, ICE's ability to gather current addresses of every taxpaying immigrant from IRS records is limitless, even though it is implausible that all of that data can feasibly be used for criminal prosecutions.

Moreover, although the government asserts that the IRS will not share information with ICE for civil immigration purposes, Appellees' Br. 24, 33, 56–57, the government acknowledged below that nothing prevents ICE from converting a criminal investigation into a civil removal proceeding *after* immigrants have been located and arrested. *See* Prelim. Inj. Hr'g Tr. 66:8–68:10 (Apr. 16, 2025). Indeed, the MOU states as one of its objectives taking "immediate steps to identify, exclude, or remove aliens illegally present in the United States." MOU § 1.a. (JA 114). The government fails to explain how this statement of purpose comports with its position that the IRS "will not disclose return information for the

purpose of civil immigration enforcement." Appellees' Br. 56. And the government's suggestion that immigrants whose addresses were unlawfully disclosed have an alternative remedy under the *civil* immigration laws, *see id.* at 63, 66, confirms Appellants' members' reasonable fears that their compliance with their tax obligations threatens their continued ability to maintain the home and the life they have built in the United States. *See* Jane Doe Decl. ¶ 6 (JA 56); John Doe Decl. ¶ 6 (JA 61–62); James Doe Decl. ¶ 7 (JA 68).

**b.** Appellant Inclusive Action for the City will also be harmed by the IRS's failure to protect the confidentiality of taxpayer addresses. Inclusive Action is a certified Community Development Financial Institution that serves underinvested communities in the Los Angeles area. Espinoza Decl. ¶¶ 1–2 (JA 73). Its prospective clients include immigrants who rely on ITINs to pay federal taxes and to engage in other financial transactions, such as applying for business permits, obtaining a mortgage or other loans, and opening a bank account. *Id.* ¶¶ 3–5 (JA 73–74). In Los Angeles, half of small businesses are immigrant-owned, and these businesses are a major market for Inclusive Action's services. *Id.* ¶ 8 (JA 75). The IRS's decision to share addresses with ICE will

discourage immigrants from participating in the tax system and the ITIN program, which will harm Inclusive Action financially by reducing the demand for its services. *Id.* ¶ 9 (JA 75–76). This loss of "business opportunity satisfies the injury requirement." *Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

The government argues that Inclusive Action's economic injuries are caused by the independent actions of its clients or prospective clients, not by Appellees' unlawful sharing of those clients' tax information. *See* Appellees' Br. 27–29. An injury is traceable to agency action, however, where "the agency action is at least a substantial factor motivating the third parties' actions." *Tozzi v. HHS*, 271 F.3d 301, 308 (D.C. Cir. 2001) (internal quotation marks omitted); *see Americans for Safe Access v. DEA*, 706 F.3d 438, 447–49 (D.C. Cir. 2013). Here, the cause of the shrinking of Inclusive Action's client base is the IRS's decision to renege on its commitment not to share taxpayer information with ICE. Given that the IRS has recognized that taxpayers rely on the assurance of confidentiality when participating in the tax system, *see* Appellants' Br.

15–17, 50, 52, the government cannot reasonably suggest that its failure to adhere to those assurances will not reduce participation in the ITIN program. *Diamond Alternative Energy*, 145 S. Ct. at 2136 ("When third party behavior is predictable, commonsense inferences may be drawn.").

**c.** Appellees have filed a motion to dismiss the complaint in the district court, which remains pending. *See* Dist. Ct. ECF 31. They nonetheless urge this Court to direct the district court to dismiss this lawsuit for lack of standing. Appellees' Br. 16. "[A]n inability to establish a substantial likelihood of standing," however, would warrant "denial of the motion for preliminary injunction, not dismissal of the case." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Although a reviewing court may order dismissal where "a litigant cannot establish standing *as a matter of law*," *Elec. Privacy Info. Ctr.*, 928 F.3d at 104, the government here argues that Appellants have submitted insufficient evidence of injury in seeking a preliminary injunction. Dismissal is unwarranted in these circumstances.

### 2. The IRS's decision to share taxpayer addresses with ICE is reviewable.

Appellants' opening brief explained that the IRS likely engaged in arbitrary and capricious decisionmaking when it abandoned its long-held

11

view that a valid section 6103(i)(2) request must seek more than the taxpayer's address. Appellants' Br. 43–48. In its brief, the government does not suggest that the IRS satisfied its duty to engage in reasoned decisionmaking. Instead, the government argues that it took no reviewable action. Its arguments do not withstand scrutiny.

**a.** "[T]he term 'agency action' undoubtedly has a broad sweep." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004). It "is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 478 (2001). With respect to rules, the APA distinguishes between "legislative rules," for which notice-and-comment rulemaking procedures are required, and "interpretative rules" and "general statements of policy," which may be issued without following such procedures. 5 U.S.C. § 553.

As relevant here, a general statement of policy is "designed to inform the public of [an agency's] views on the proper application of" a statute. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809 (2003). Because a policy statement "does not create 'adverse effects of a strictly legal kind,'" *id.* (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*,

12

523 U.S. 726, 733 (1998)), it is generally not reviewable. *See*, *e.g.*, *id.* at 808 (lack of ripeness); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) (lack of finality).

The "adverse effects" that differentiate reviewable actions from a general statement of policy are plainly present here. The IRS's actions, especially its MOU with ICE, have an "actual legal effect" on Appellants' members and other taxpayers. *Nat'l Mining Ass'n*, 758 F.3d at 252. Prior to the IRS's policy change, the IRS would have denied a section 6103(i)(2) request from ICE seeking only taxpayer addresses. *See* Internal Rev. Manual § 11.3.28.4(5) (Apr. 17, 2025). Therefore, vis-à-vis such a request, taxpayer addresses would remain "confidential," 26 U.S.C. § 6103(a), unless the taxpayer consented to the disclosure, *id.* § 6103(c). Under the new policy, embodied in the MOU, the IRS "will … provide the … last known address" of individuals that the IRS can identify to ICE. MOU § 5.D (JA 115). Unlike in *Independent Equipment Dealers Ass'n*, on which the government relies, Appellees' Br. 50, here, the IRS's actions have a "binding effect … on the agency" and have "wrought a regulatory change" that directly affects taxpayers' privacy rights under section 6103. *Indep. Equip. Dealers Ass'n*, 372 F.3d at 427; *see Nat'l Env't Dev. Ass'ns Clean*

*Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014) (holding that an agency directive that "provide[d] firm guidance to enforcement officials about how to handle permitting decisions" was final and reviewable).

Moreover, the government has notified the district court that the IRS has begun sharing taxpayer address information with ICE, *see* Dist. Ct. ECF 72, with reportedly 40,000 taxpayer addresses turned over already. *See* Jacob Bogage & Kadia Goba, IRS, *White House clashed over immigrants' data before tax chief was ousted*, Wash. Post (Aug. 9, 2025), https://www.washingtonpost.com/business/2025/08/09/trump-administration-irs-data-dispute/. There is thus no basis for concluding that Appellants' claims are unripe or lack finality—and, indeed, the government does not suggest otherwise.

Contrary to the government's suggestion, Appellants do not seek review of the IRS's "programmatic" decisions. Appellees' Br. 49 (citing *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006) (internal quotation marks omitted)). A judgment in Appellants' favor would not risk "pervasive oversight by federal courts over the manner and pace of agency compliance" with programmatic operations. *Id.* at 21 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S.

55, 67 (2004)). It would simply require the IRS to comply with section 6103(i)(2).

**b.** The government also suggests that the IRS's actions are not reviewable because they are compelled by section 6103(i)(2). *See* Appellees' Br. 52 (stating that "the [MOU] simply parrots the obligations spelled out in (i)(2)"); *id.* at 54 (stating that "even if the [MOU] were rescinded tomorrow, the IRS would still be required, by statute, to provide address information to ICE … regardless of what the prior guidance said"). That argument puts the cart before the horse.

The question of what section 6103(i)(2) requires the IRS to do is a merits question. For instance, if this Court concludes that section 6103(i)(2) bars the IRS from honoring requests seeking only the taxpayer's address, then the IRS's decision to disclose taxpayer addresses to ICE pursuant to the MOU would be unlawful, regardless of the IRS's reasoning. By contrast, if the Court agrees with the government that the IRS has no choice but to hand over taxpayer addresses en masse when a federal agency asserts the addresses are relevant to criminal investigations, then remand to the IRS for a reasoned explanation would be a "useless formality." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766

n.6 (1969) (plurality op.). In either case, the IRS took reviewable agency action when it made the decision to disclose taxpayer address information to ICE. The government's argument that its decision is not reviewable because the MOU implements section 6103(i)(2) is a non sequitur.

Further, the government's assertion that the prior guidance documents articulating the IRS's position on section 6103(i)(2) are not "binding," Appellees' Br. 51–52, misunderstands the question before the Court. Appellants' arbitrary-and-capricious claim does not rest on the notion that the IRS may not depart from its prior guidance. Rather, the claim rests on the fact that the IRS made the decision to do so without providing a reasoned explanation for the change that accounted for immigrants' reliance interests on the IRS's prior assurances of confidentiality. *See* Appellants' Br. 48; *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (invalidating regulation that "was issued without the reasoned explanation that was required in light of the Department's change in position and the significant reliance interests involved").

### 3. Section 7431 does not bar Appellants' APA claims.

In 26 U.S.C. § 7431, Congress authorized a suit for damages against the United States if "any officer or employee of the United States" knowingly or negligently violates section 6103, unless the violation "results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(a), (b)(1). The government argues that section 7431 implicitly forecloses Appellants' APA claims. The government is wrong.

The APA authorizes actions for declaratory and injunctive relief unless a "special statutory review proceeding relevant to the subject matter" exists and is adequate. 5 U.S.C. § 703. Statutory review proceedings are a modern analogue to common-law prerogative writs. *See Air N.Z. Ltd. v. Civil Aeronautics Bd.*, 726 F.2d 832, 837 (D.C. Cir. 1984); *cf. S. Utah Wilderness All.*, 542 U.S. at 63 (noting, in discussing lawsuits to compel agency action, that "the APA carried forward the traditional practice … when judicial review was achieved through use of the so-called prerogative writs"). The focus of section 7431, by contrast, is not review of agency action, but a remedy for employee misconduct. That is why

section 7431 limits liability to knowing or negligent actions and incorporates a "good faith" defense. 26 U.S.C. § 7431(a), (b).[1]

In addition, the APA authorizes judicial review of "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704; *see also id.* § 703 (authorizing declaratory and injunctive relief if other review proceedings are "inadequate"). To determine "whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). Such an intent is unlikely to be found where there is a significant "gap between the relief [the alternative] provides and the relief … [sought] under the APA." *Id.* at 1246. For example, the availability of "a naked money judgment against the United States" under an alternative statutory scheme is not necessarily "an adequate substitute for

---

[1] The government mischaracterizes removal proceedings under 8 U.S.C. § 1229 as a "special statutory review proceeding[]" that forecloses Appellants' APA claims. Appellees' Br. 63. Section 1229 removal proceedings are not "relevant to the subject matter" of non-disclosure of taxpayer information, as required by section 703.

prospective relief" under the APA where a plaintiff seeks "entry of declaratory or injunctive relief that requires the [government] to modify future practices." *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988); *see also Cohen v. United States*, 650 F.3d 717, 733 (D.C. Cir. 2011) (en banc) (declining to "conflate[] the existence of an alternative remedy with an 'adequate remedy'"). Here, section 7431 is not an adequate remedy because it does not provide for declaratory or injunctive relief, and it cannot compensate for the harms that would arise to immigrants forced to leave their homes. Moreover, the affirmative good faith defense in subsection 7431(b)(1) would surely preclude a claim against the United States where the employee acted pursuant to the MOU approved by the IRS.

None of the cases on which Appellees rely suggests otherwise. Although *Tierney v. Schweiker*, 718 F.2d 449 (D.C. Cir. 1983), concludes that declaratory relief was a sufficient remedy in that case, *Tierney* did not hold that section 7431 precludes injunctive relief. *See id.* at 457. And it squarely holds that the "availability of a $1000 damages remedy [for a violation of section 6103] *after* the information is released fails to protect appellants' right to confidentiality" and, thus, "the availability of such

alternative remedies [did not] preclude[] issuance of a declaratory judgment." *Id.*

In *Council of & for the Blind of Delaware Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983), the alternative statutory proceeding provided for the equivalent of equitable relief. *Id.* at 1532. Several other cases cited by the government were not APA cases, but cases that concerned implied causes of action or resort to a court's inherent equitable authority. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14–15 (1981); *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1199–1200 (D.C. Cir. 2005). The remaining cases reject suppression of unlawfully obtained evidence as a remedy. *United States v. Orlando*, 281 F.3d 586, 595–96 (6th Cir. 2002); *Nowicki v. Commissioner*, 262 F.3d 1162, 1164 (11th Cir. 2001); *United States v. Michaelian*, 803 F.2d 1042, 1049 (9th Cir. 1986); *Marvin v. United States*, 732 F.2d 669, 673 (8th Cir. 1984); *see also United States v. Ware*, 161 F.3d 414, 424–25 (6th Cir. 1998) (concerning alleged violation of 18 U.S.C. § 201(c)(2)).

The government also cites the availability of administrative and criminal penalties against specific employees. Appellees' Br. 60. But

penalties require willful action, and it is unlikely that an IRS or ICE employee who followed agency policy would be fired or convicted for acting as authorized by the MOU. In any event, penalizing employees after the fact would not undo the harm to Appellants' members.

Citing 26 U.S.C. § 6110(f)(3)(A), which allows a person to seek tax court review of the IRS's decision to disclose a written determination, the government argues that Congress's decision not to provide a similar review mechanism for unlawful section 6103 disclosures "should be respected." Appellees' Br. 62. But APA review is foreclosed only if another remedy is adequate; mere silence is not sufficient. Because no such adequate remedy exists, Appellants may pursue their APA claims.

**B.    Section 6103(i)(2) does not authorize the IRS to disclose taxpayer addresses when no other information is requested.**

For nearly 50 years, Congress has carefully guarded law enforcement access to taxpayer information in the hands of the IRS. The extensive and often-amended provisions of section 6103(i) adhere to the principle that law enforcement must obtain a court order before accessing taxpayer information furnished by or on behalf of a taxpayer (*i.e.*, "taxpayer return information") for use in criminal, terrorism, or

counterintelligence investigations or proceedings, or for locating fugitives. In section 6103(i)(2), Congress allowed federal agencies to obtain information directly from the IRS to aid in criminal investigations and proceedings only. Even then, Congress restricted the information that may be sought to information that the IRS obtained from sources other than the taxpayer.

As the opening brief explains, Appellants' Br. 10–11, section 6103(i)(2) has always required the requesting agency to provide the IRS with "the name and address of the taxpayer" whose information was requested, but that section originally did not authorize the IRS to provide the name and address of the taxpayer in its response. *See* Tax Reform Act of 1976, Pub. L. No. 94-455, tit. XII, § 1202(a), 90 Stat. 1520, 1676. Congress therefore amended section 6103(i)(2) to "permit the IRS to transmit ... the name and address of a taxpayer *along with* return information ... pertaining to, but not furnished by or on behalf of, the taxpayer." S. Rep. No. 95-745, at 63 (1978) (emphasis added); *see* H.R. Rep. No. 95-700, at 55 (1977) (same). The legislative record makes clear that Congress determined that the amendment was needed because the omission could "completely negat[e] the purpose and operation" of section

6103(i)(2). S. Rep. No. 95-745, at 61. But Congress did not upend the basic statutory protections by making this change. *See Sackett v. EPA*, 598 U.S. 651, 677 (2023) ("Congress does not hide elephants in mouseholes by altering the fundamental details of a regulatory scheme in vague terms or ancillary provisions." (cleaned up)).

The government's contrary view rests on a myopic reading of section 6103(i)(2)(C), which implements Congress's 1978 fix. Section 6103(i)(2)(C) states that, for purposes of section 6103(i)(2), "a taxpayer's identity," which covers the taxpayer's name, "his mailing address," and his taxpayer identifying number (26 U.S.C. § 6103(b)(6)), "shall not be treated as taxpayer return information." The government argues that this exclusion requires the IRS to disclose taxpayer addresses to requesting agencies even when addresses are the only information requested. *See* Appellees' Br. 6–7, 34. That argument, though, violates the cardinal rule that a court's duty is "to construe statutes, not isolated provisions." *Türkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264,

275 (2023) (*Halkbank*) (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010)).[2]

Starting with the text, the IRS has long recognized that "[r]equests for addresses only are invalid because [section] 6103(i)(2) requires that the requester provide an address." Internal Rev. Manual § 11.3.28.4(5); *see* IRS Pub. 4639, at 5-4 (Oct. 2012) ("Requests under section 6103(i)(2) seeking only a taxpayer's address do not comply with this section"). By requiring the requesting agency to provide "the name and address of the taxpayer," section 6103(i)(2) is not satisfied by a request that includes "the name and *any* address of the taxpayer." *See* Appellants' Br. 10–11, 32–33. Appellees have no answer to this, other than to jettison their purported reliance on the "plain language" of section 6103(i)(2) and argue that the "clear import of Section 6103(i)(2) is that the requesting agency shall provide, in good faith, the last-known address reflected in its files." Appellees' Br. 32, 38. Section 6103(i)(2), however, does not speak in terms

---

[2] In *Halkbank*, for instance, the bank argued that the Foreign Sovereign Immunities Act (FSIA) granted immunity to foreign-affiliated banks in both criminal and civil proceedings. Although the Court acknowledged that, "[i]n complete isolation, [28 U.S.C.] § 1604 might be amenable to [Halkbank's] reading," the Court "consider[ed] § 1604 alongside its neighboring FSIA provisions" and concluded that FSIA immunity did not apply in criminal proceedings. 598 U.S. at 275.

of "good faith" or "last-known address" in a requesting agency's files, but requires "the … address of the taxpayer." And while the government is correct that section 6103(i)(2) does not specify "a minimum quantum of return information that must be requested," Appellees' Br. 34, it does require that the requesting agency already have the taxpayer's address.

Although the government relies on *Marks v. Commissioner*, 947 F.2d 983 (D.C. Cir. 1991), Appellees' Br. 39, that case confirms that Congress knows how to adopt language that would accomplish what the IRS and ICE now want to do. *Marks* addressed 26 U.S.C. § 6212(b)(1), which permits the IRS to send a notice of deficiency to a taxpayer's "last known address." "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, [courts] generally take the choice to be deliberate." *Bartenwerfer v. Buckley*, 598 U.S. 69, 78 (2023) (cleaned up). The government's current reading of section 6103(i)(2) undermines Congress's deliberate choice, as well as the agency's prior interpretation, not to allow law enforcement agencies to rely on taxpayer's last known address to obtain current address information directly from the IRS.

The government suggests that a section 6103(i)(2) request seeking only addresses is permissible because a taxpayer's address "is, or may be, relevant to" an immigration crime. Appellees' Br. 9, 34–35 (quoting 26 U.S.C. § 6103(i)(2)(B)(4)). Section 6103(i)(2)(B)(4), though, cuts against the government's proposed reading. As the opening brief explains, Appellants' Br. 41, the current address of an individual under criminal investigation will always be "relevant" to the investigation. Section 6103(i)(2)(B)(4), however, contemplates that a requesting agency will provide the IRS with a "specific reason or reasons" why the information sought is relevant. 26 U.S.C. § 6103(i)(2)(B)(4). The requirement for specificity makes sense when the information requested consists of return information obtained from sources other than the taxpayer, which will typically be unique to each taxpayer. It does no real work when the requesting agency seeks only taxpayer addresses.[3]

The government also falters in defending its reading of section 6103(i)(2) against the broader structure of section 6103(i). As Appellants' opening brief explains, section 6103(i)(5) requires federal prosecutors to

---

[3] The specificity requirement eliminates any "perverse incentive for agencies to request more information than they need." Appellees' Br. 35.

obtain a court order to access IRS tax records to locate fugitives from justice—a provision both the Reagan administration and Congress recognized as necessary because section 6103(i)(2) did not authorize the sharing of taxpayer address information. *See* Appellants' Br. 38–39. The government responds that its reading of section 6103(i)(2) does not render 6103(i)(5) wholly "superfluous." Appellees' Br. 40–41. But the government never attempts to explain why Congress would require law enforcement to undertake the process of seeking court approval to access a fugitive's "business address," "place of employment," or "rental properties," *see id*. at 41, while granting law enforcement the right to obtain the fugitive's address from the IRS directly under section 6103(i)(2).

The government also fails in its attempt to deal with incongruity between its view of section 6103(i)(2) and section 6103(i)(4). *See* Appellees' Br. 42. First, the government has no basis for asserting that "address information obtained under (i)(2) *can* be introduced in a criminal proceeding." *Id.* Section 6103(i)(2)(C) applies "[f]or purposes of this paragraph [(i)(2)]," not for other paragraphs in subsection (i) like (i)(4). Second, even if the government is correct that section 6103(i)(4)

would not be wholly superfluous under its reading of section 6103(i)(2), it fails to rebut Appellants' point that "[t]here is no sensible reason why Congress would have created such a scheme." Appellants' Br. 37.

Finally, in response to Appellants' showing that the statutory, regulatory, and legislative history refute the notion that Congress authorized disclosure of addresses only under section 6103(i)(2), *see id.* at 10–17, the government first argues that this material should be ignored. *See* Appellees' Br. 43, 46, 47. But legislative history can provide "background context" for a statute. *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025); *see id.* at 19–20. And legislative history may be useful because "clear evidence of congressional intent may illuminate ambiguous text." *Delaware v. Pennsylvania*, 598 U.S. 115, 138–39 (2023) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011)). Here, history, along with text and structure discussed above, confirms that the government is wrong to assert that the text plainly supports its reading of section 6103(i)(2).

Second, the government unearthed a congressional report that echoes its understanding of section 6103(i)(2). *See* Appellees' Br. 45 (quoting S. Rep. No. 97-58, at 150 (1981)). But that view was expressed

by the Senate Armed Services Committee, not a committee with jurisdiction over the Internal Revenue Code. And the statute to which that committee report relates did not address section 6103. *See* Pub. L. No. 97-86, § 916, 95 Stat. 1099, 1129 (1981). As noted in the opening brief, the following year, the Reagan administration, as well as Congress, rejected use of section 6103(i)(2) as a means for locating persons subject to criminal investigation. *See* Appellants' Br. 11–13. The lone committee report that the government cites does not overcome the weight of history to the contrary.

## II. The remaining factors also support reversal of the district court's order denying a preliminary injunction.

The government does not seriously dispute Appellees' argument that the challenged actions are causing irreparable harm. *See* Appellants' Br. 48–52; Appellees' Br. 66. Although the government relies on *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006), that case is inapposite. There, the Court found no irreparable harm because individuals who were denied promotions could be made whole in terms of both rank and monetary relief. *Id.* at 298. By contrast, the disclosure of taxpayer addresses of individuals subject to immigration enforcement is not a bell that can be unrung. And for the reasons set forth

above, *see supra* I.A.3, the other "remedies" that the government posits would not redress the harm that will be caused by the IRS disclosure of the return information of Appellants' members.

The government's public interest analysis also fails to rebut Appellants' showing. *See* Appellants' Br. 52–54. The government's argument on this prong is only that, on the merits, it believes it is complying with (i)(2) and, on that basis, invokes an interest in "the efficient conduct of law enforcement investigations and proceedings." Appellees' Br. 65. A preliminary injunction, however, would not prevent ICE from using section 6103(i)(2) in the way Congress intended: ICE would continue to be able to use section 6103(i)(2) to obtain return information that the IRS has obtained from sources other than the taxpayer, and ICE could seek a court order under section 6103(i)(1) to the extent it requires access to taxpayer addresses or other taxpayer return information.

## III. In light of new developments, the scope of the injunction should be addressed by the district court on remand.

In the context of addressing the public interest factor, and again in concluding its brief, the government argues about the proper scope of a preliminary injunction. *See* Appellees' Br. 64, 67 (citing *Trump v. CASA,*

*Inc.*, 145 S. Ct. 2540 (2025)). Because the district court concluded that the IRS may lawfully share taxpayer addresses with ICE, it did not address the remaining preliminary injunction factors or the scope of relief. In these circumstances, the district court should address the scope of the injunction in the first instance in light of legal developments, *see generally CASA*, 145 S. Ct. 2540, and factual developments since the district court briefing (and, indeed, the opening appellate briefing). For instance, last week, on August 12, 2025, the government notified the district court that the information sharing process had begun. *See* Dist. Ct. ECF 72. Presumably, by the time this case returns to the district court, much more taxpayer information will have been shared to advance President Trump's objective to "identify, exclude, or remove aliens illegally present in the United States." MOU § 1.a. (JA 114) (citing Executive Order 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025)). These evolving facts will likely affect the scope of the preliminary injunction, which the district court is best positioned to consider in the first instance on remand.

**IV.  The Court should reject Appellees' request to address the government's demand for a bond.**

If the Court reverses the decision below, it should reject Appellees' request for instructions to the district court to "determine an appropriate bond." Appellees' Br. 67. The district court had no occasion to consider a bond, but, if a preliminary injunction is granted, the government then can make a motion seeking a bond, which the district court can then consider in the first instance. *See, e.g.*, *Tanner-Brown*, 105 F.4th at 448 (remanding so that the district court can address issues "in the first instance").

## CONCLUSION

The district court's order denying Appellants' motion for a preliminary injunction should be reversed, and the case should be remanded for the district court to address remaining issues in light of this Court's decision.

August 22, 2025 Respectfully submitted,

/s/ Nandan M. Joshi
Kevin L. Herrera Nandan M. Joshi
Mark H. Birhanu Michael T. Kirkpatrick
Raise the Floor Alliance Public Citizen Litigation Group
1 N. LaSalle Street 1600 20th Street NW
Suite 1275 Washington, DC 20009
Chicago, Illinois 60602 (202) 588-7733
(312) 795-9115 njoshi@citizen.org

Alan B. Morrison
George Washington University
   Law School
2000 H Street NW
Washington, DC 20052
(202) 994-7120

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by the Federal Rules of Appellate Procedure and this Court's rules, this document contains 6350 words, as calculated by my word processing software.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word 365.

<u>/s/ Nandan M. Joshi</u>
Nandan M. Joshi

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 22, 2025, the foregoing document

was served through the Court's ECF system on counsel for all parties.

<u>/s/ Nandan M. Joshi</u>
Nandan M. Joshi