**ORAL ARGUMENT SCHEDULED FOR OCT. 3, 2025**

## PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW • Washington DC 20009
202/588-1000 • www.citizen.org

September 17, 2025

Clifton Cislak, Clerk
United States Court of Appeals
  for the District of Columbia Circuit
333 Constitution Ave. NW
Washington, DC 20001

> Re: *Centro de Trabajadores Unidos et al. v. Bessent et al.*,
>     No. 25-5181

Dear Mr. Cislak,

Appellants submit this letter to bring to the Court's attention a declaration submitted by John J. Walker, Acting Chief Privacy Officer at the Internal Revenue Service (IRS) on August 28, 2025, in *Center for Taxpayer Rights v. IRS*, No. 25-cv-457 (D.D.C.), currently pending before Judge Kollar-Kotelly. The declaration was filed in connection with the defendants' opposition to a motion for preliminary injunction seeking to halt and undo the sharing of taxpayer information between the IRS and the Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE). This Court may take judicial notice of the declaration. *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 365 n.4 (D.C. Cir. 2017).

In his declaration, Mr. Walker states that "[o]n June 27, 2025, the IRS received a letter from ICE Acting Director Todd M. Lyons," which "requested, pursuant to the terms of the [Memorandum of Understanding between the IRS and DHS/ICE], the last known address of approximately 1.28 million individuals identified by ICE." Decl. ¶ 6. Mr. Walker further states that, on August 7, 2025, "the IRS provided to ICE

the last known address for 3.70% of the individuals requested by ICE." *Id.* ¶ 7. That percentage represents 47,360 taxpayers.

Mr. Walker's declaration confirms Appellants' contention that the IRS's decision to process requests seeking taxpayer addresses under section 6103(i)(2) enables federal agencies to obtain taxpayer information on a mass scale, contrary to the best reading of the statute and Congress's intent. Appellants' Br. 32–43. His declaration also confirms ICE's intent to use section 6103(i)(2) to engage in such mass collection of taxpayer addresses.

A copy of the declaration is attached.

Respectfully submitted,

/s/ Nandan M. Joshi

Nandan M. Joshi

cc: All counsel by ECF

Counsel for Appellants

2

ATTACHMENT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, et al., | |
| Plaintiffs, | |
| v. | Civil Action No.: 25-cv-457-CKK |
| INTERNAL REVENUE SERVICE, et al., | |
| Defendants. | |

## DECLARATION OF JOHN J. WALKER

I, John J. Walker, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Acting Chief Privacy Officer at the Internal Revenue Service (IRS). I have been employed by the IRS since January 1995 and held the position of Acting Chief Privacy Officer since April 27, 2025.

2.      The position of Chief Privacy Officer oversees the Office of Privacy, Governmental Liaison and Disclosure (PGLD), a business unit within the IRS. I have held positions in PGLD or its predecessor, the Privacy, Identity Protection and Data Security office, since July 2009, including as an analyst, the Privacy Review Manager, the Associate Director of Incident Management, and the Acting Director of Privacy Policy and Compliance. PGLD is responsible for protecting the privacy of sensitive return information of taxpayers and employees, and it is responsible for compliance with the confidentiality provisions of 26 U.S.C. § 6103.

3.      As the Acting Chief Privacy Officer, my duties include overseeing the management of PGLD, as well as ensuring compliance with the Privacy Act, the Freedom of Information Act,

the Federal Records Act, and 26 U.S.C. § 6103. In conjunction with this work, among other things, I oversee data exchanges with federal, state, and local government agencies.

4.    This declaration is based on my personal knowledge and on information acquired in my official capacity and in the performance of my duties as the Acting Chief Privacy Officer.

5.    On April 7, 2025, the U.S. Department of the Treasury, on behalf of the IRS, and the Department of Homeland Security (DHS), on behalf of the U.S. Immigration and Customs Enforcement (ICE), executed a Memorandum of Understanding (MOU) to create a framework for the sharing of specific return information between the agencies. The MOU governs requests submitted by ICE for return information under 26 U.S.C. § 6103(i)(2). A true and complete copy of the executed MOU is attached as **Exhibit 1**. The "points of contact" on page 13 of the MOU were redacted to protect the personal privacy interests of the listed government employees.

6.    On June 27, 2025, the IRS received a letter from ICE Acting Director Todd M. Lyons. The letter requested, pursuant to the terms of the MOU, the last known address of approximately 1.28 million individuals identified by ICE.

7.    The IRS responded to ICE on August 7, 2025. It provided ICE with the last known address of an individual only if ICE provided all of the information required by the MOU for that individual and the IRS was able to match the individual to a known taxpayer. In total, the IRS provided to ICE the last known address for 3.70% of the individuals requested by ICE.

//

//

//

//

//

8.      Since the June 27 request described in paragraph 6 above, the IRS has not received

a request pursuant to the MOU from ICE.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2025

John J. Walker

Digitally signed by John J.
Walker
Date: 2025.08.28 18:55:13
-04'00'

John J. Walker

3

# EXHIBIT 1

Department of the Treasury
Internal Revenue Service

Case 1:25-cv-00457-CKK     Document 31-1     Filed 09/17/2025     Page 8 of 22
USCA Case #25-5181     Document #2135321     Filed: 09/17/2025     Page 8 of 22

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

# MEMORANDUM OF UNDERSTANDING

BETWEEN

THE U.S. DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE

AND

THE U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

FOR THE EXCHANGE OF INFORMATION FOR NONTAX
CRIMINAL ENFORCEMENT

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

MEMORANDUM OF UNDERSTANDING
BETWEEN
U.S. TREASURY DEPARTMENT on behalf of the INTERNAL REVENUE SERVICE
AND
U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the U.S.
IMMIGRATION AND CUSTOMS ENFORCEMENT,

FOR THE EXCHANGE OF INFORMATION FOR NONTAX CRIMINAL
ENFORCEMENT

1.  **INTRODUCTION:**

   a.  WHEREAS by Executive Order (EO) No. 14161, <u>Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats</u>, 90 Fed. Reg. 8451 (Jan. 20, 2025), the President directed the Secretary of State, in coordination with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, to take immediate steps to identify, exclude, or remove aliens illegally present in the United States; and

   b.  WHEREAS the Department of Homeland Security has identified numerous aliens illegally present in the United States whom they have represented are under final orders to remove them from the United States; and

   c.  WHEREAS the Department of Homeland Security has represented that each of the above-referenced individuals is under criminal investigation for violations of one or more specifically designated Federal criminal statutes (not involving tax administration), including 8 U.S.C. § 1253(a)(1); and

   d.  WHEREAS the parties wish to enter into an agreement setting forth the procedures, processes, and safeguards to be followed upon the receipt of a request for the disclosure of information subject to the confidentiality requirements of Internal Revenue Code (IRC) § 6103;

   e.  NOW THEREFORE, this Memorandum of Understanding (MOU) between the U.S. Treasury Department / Internal Revenue Service (IRS), and the U.S. Department of Homeland Security / U.S. Immigration and Customs Enforcement (ICE), sets forth the agreement of the parties with respect to ICE's use of the authority in IRC § 6103(i)(2) for the submission of requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or another specifically designated Federal criminal statute.

2.  **AUTHORITY:**

The IRS enters into this MOU pursuant to IRC § 7803(a)(2), delegating to the IRS the authority to administer the Internal Revenue Code, and IRC § 6103(i)(2), authorizing the disclosure of return information other than taxpayer return information for purposes of the enforcement of a specified

nontax Federal criminal statute. ICE enters into this MOU pursuant to 8 U.S.C. § 1253(a)(1), 8 U.S.C. § 1103, and 6 U.S.C. § 112(b)(2).

**3. PURPOSE:**

(U//LES) The purpose of this MOU is to establish the procedures and requirements for ICE's submission of valid IRC § 6103(i)(2) requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statutes. The specifications and details regarding the IRS's and ICE's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

**4. CONTACTS:**

A. Contacts for this MOU are the IRS designee(s) and the ICE designee(s). Refer to Exhibit A.

B. Succession of Authority. The IRS and ICE anticipate there may be changes to the titles and\or responsibilities of officers and employees designated within this MOU. In the event of such changes, any actions that may be taken under this MOU by said officers or employees, may be taken by any officer(s) or employee(s) the IRS and ICE determine to have succeeded to the relevant portions of said officers' or employees' authorities or responsibilities. Each party shall be responsible for ensuring the points of contact are current by providing a revised Exhibit A to all parties within 30 days of any change.

**5. DUTIES AND RESPONSIBILITIES OF THE IRS:**

The IRS will:

A. Receive requests for address information from ICE.

B. Review each request for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2). The IRS will provide explanations and/or reasons the request cannot be processed.

C. (U//LES) Search for the last known address for each individual in each request.

D. (U//LES) For each individual the IRS is able to identify from the information provided by ICE, provide the IRS last known address for that individual. For each individual the IRS cannot identify from the information provided by ICE, indicate "no match" in the response.

E. Send responses to ICE in the manner set forth herein.

F. Account for disclosures made under this MOU as required pursuant to IRC § 6103(p)(3)(A).

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

G. (U//LES) Specifications and details regarding the IRS's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

## 6. DUTIES AND RESPONSIBILITIES OF ICE:

ICE will:

A. (U//LES) Send requests for address information for specifically identified individuals pursuant to the specifications contained in a separate implementation agreement between ICE and IRS.

B. Each request must be made consistent with IRC § 6103(i)(2)(A).

C. (U//LES) Each request will contain the following information with respect to each individual identified in the request:

   1. (U//LES) The name and address of the taxpayer.
   2. (U//LES) The taxable period or periods as to which the return information (address) they are seeking relates.
   3. (U//LES) The specifically designated nontax Federal criminal statute (i.e., 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statute) under which an investigation or proceeding regarding the individual is being conducted.
   4. (U//LES) The date of the final order of removal and the related case number assigned to each such order.
   5. (U//LES) The specific reason or reasons why disclosure is, or may be, relevant to the nontax criminal investigation or proceeding. Any other information ICE can provide to help the IRS identify each individual, such as SSNs, ITINs, etc.
   6. (U//LES) Identity information for the ICE officers and employees personally and directly engaged in the nontax criminal investigation that may result in criminal charges against the individual under the specifically designated Federal criminal statute ICE has identified.

D. (U//LES) Each request will attest that the requested address information will only be used by officers and employees of ICE solely for the preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C. § 1253(a)(1), other specifically designated Federal criminal statute, or any subsequent criminal proceedings.

E. ICE will use and redisclose the address information only as specifically authorized by IRC § 6103(i)(2) as implemented in 26 C.F.R § 301.6103(i)-1. Specifically, the regulations provide:
   1. (U//LES) Return information disclosed under IRC § 6103(i)(2) shall be open to inspection by or disclosure to ICE officers and employees personally and directly engaged in, and for their necessary use in, proceedings and investigations that may result in such proceedings, pertaining to the enforcement of a specifically designated nontax Federal criminal statute.

   2. (U//LES) Return information disclosed under IRC § 6103(i)(2) may be disclosed by such

3

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

ICE officers and employees to other persons only to the extent necessary to the enforcement of the specifically designated nontax Federal criminal statute, including:

    a. (U//LES) To properly obtain the services of persons having special knowledge or technical skills (such as, but not limited to, handwriting analysis, photographic development, sound recording enhancement, or voice identification);

    b. (U//LES) To properly interview, consult, depose, or interrogate or otherwise obtain relevant information from, the taxpayer to whom such return or return information relates (or such taxpayer's legal representative) or any witness who may be called to give evidence in the proceeding; or

    c. (U//LES) To properly conduct negotiations concerning, or obtain authorization for, disposition of the proceeding, in whole or in part, or stipulations of fact in connection with the proceeding.

3. (U//LES) Among those persons to whom returns and return information may be disclosed by officers and employees of ICE on a need-to-know basis as provided are:

    a. (U//LES) Other ICE officers and employees such as clerical personnel (for example, secretaries, stenographers, docket and file room clerks, and mail room employees) and supervisory personnel;

    b. (U//LES) Officers and employees of another Federal agency (as defined in section 6103(b)(9)) working under the direction and control of such ICE officers and employees; and

    c. (U//LES) Court reporters.

F. (U//LES) ICE will ensure the proper handling, transmission, safeguarding, and security of the address information as contained in Sections 8 and 9 of this MOU.

G. Specifications and details regarding ICE's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**7.  DESCRIPTION OF THE RECORDS:**

A.  Systems of Records Notices

    1.  The IRS will
        a.  (U//LES) disclose address information from the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE.

    2.  ICE will
        a.  (U//LES) disclose the following subject identifier information: CVID; A Number; First, Middle and Last Name; Address Information; Date of Birth; Country of Citizenship; FBI Numbers; and Fingerprint Identification Number (FINS), from the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE; and

        b.  (U//LES) maintain the address information provided by the IRS in the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE.

**8.  INFORMATION SECURITY:**

The IRS and ICE will comply with the requirements of the Federal Information Security Management Act (FISMA), 44 U.S.C. Chapter 35, Subchapter II, as amended by the Federal Information Security Modernization Act of 2014 (Pub. L. No. 113-283); related Office of Management and Budget (OMB) circulars and memoranda, such as Circular A-130, Managing Information as a Strategic Resource (July 28, 2016), and Memorandum M-17-12, Preparing for and Responding to a Breach of Personally Identifiable Information (PII) (Jan. 3, 2017); National Institute of Standards and Technology (NIST) directives; and the Federal Acquisition Regulations, including amendments published after the effective date of this MOU. These laws, directives, and regulations include requirements for safeguarding Federal information systems and Personally Identifiable Information used in Federal agency business processes, as well as related reporting requirements. Both agencies recognize, and will implement, the laws, regulations, NIST standards, and OMB directives, including those published subsequent to the effective date of this MOU.

The FISMA requirements apply to all Federal contractors, organizations, or entities that possess or use Federal information, or that operate, use, or have access to Federal information systems on behalf of an agency. Both agencies are responsible for oversight and compliance of their contractors and agents.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

A.  Incident Reporting

If the IRS or ICE experiences an incident involving the loss or breach of PII provided by IRS under the terms of this MOU, they will follow the incident reporting guidelines issued by OMB. In the event of a reportable incident under OMB guidance involving PII, the agency experiencing the incident is responsible for following its established procedures, including notification to proper organizations (i.e., Cybersecurity & Infrastructure Security Agency (CISA) and the agency's privacy office). Immediately upon discovery of a potential cybersecurity incident involving IRS-provided PII, ICE will contact the IRS Computer Security Incident Response Center (CSIRC) at 240-613-3606.

B.  Breach Notification

The IRS and ICE will follow PII data breach notification policies and related procedures as required by OMB Memorandum M-17-12 (Jan. 3, 2017). If the agency that experienced the data breach, after conducting a risk assessment, determines notification to the potentially impacted individuals and an offer of an identity protection/identity monitoring service, and/or other remedies is required, that agency will carry out the remedies without cost to the other agency.

## 9.  DISCLOSURE, SAFEGUARDS, AND RECORD KEEPING REQUIREMENTS:

A.  ICE will maintain all Federal tax returns and return information sourced from the IRS in accordance with IRC § 6103(p)(4) and comply with the safeguards requirements set forth in Publication 1075, *Tax Information Security Guidelines for Federal, State and Local Agencies*. Publication 1075 is the IRS-published guidance for security guidelines and other safeguards for protecting returns and return information, pursuant to 26 C.F.R. § 301.6103(p)(4).

The IRS safeguarding requirements include:

1. ICE will establish a central point of control for all requests for and receipt of Federal tax returns and return information and maintain a log to account for all subsequent disclosures and products made with/from that information, and movement of the information until destroyed, in accordance with Publication 1075.

2. ICE will establish procedures for secure storage of Federal tax returns and return information consistently maintaining two barriers of protection to prevent unauthorized access to the information, including when in transit, in accordance with Publication 1075.

3. ICE will consistently label Federal tax returns and return information obtained under this MOU to make it clearly identifiable and to restrict access by unauthorized individuals. Any duplication or transcription of Federal tax returns and return information creates new records which must also be properly accounted for and safeguarded. Federal tax returns and return information should not be commingled with other ICE records unless the entire file is safeguarded in the same manner as required for Federal tax returns and return

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

information and the Federal tax information (FTI) within is clearly labeled in accordance with Publication 1075.

4. ICE will restrict access to Federal tax returns and return information solely to officers and employees of ICE as described in this MOU for the purposes of carrying out this MOU. Prior to access ICE must evaluate which employees require such access. Authorized individuals may only access Federal tax returns and return information to the extent necessary to perform services related to, and as authorized by, this MOU, in accordance with Publication 1075.

5. Prior to initial access to FTI and annually thereafter, ICE will ensure that employees and officers that will have access to Federal tax returns and return information receive awareness training regarding the confidentiality restrictions applicable to the Federal tax returns and return information and certify acknowledgement in writing that they are informed of the criminal penalties and civil liability provided by IRC §§ 7213, 7213A, and 7431 for any willful disclosure or inspection of Federal tax returns and return information that is not authorized by the IRC, in accordance with Publication 1075.

6. ICE will submit an annual Safeguard Security Report (SSR) to the Office of Safeguards by the submission deadline specified in Publication 1075 to provide an update on safeguarding activities during the reporting period. The SSR will also provide Head of Agency certification that the SSR addresses all Outstanding Actions identified by the IRS Office of Safeguards from the agency's prior year SSR; accurately and completely reflects ICE's current environment for the receipt, storage, processing, and transmission of FTI; accurately reflects the security controls in place to protect the FTI in accordance with Publication 1075 and of ICE's commitment to assist the Office of Safeguards in the joint effort of protecting the confidentiality of FTI; support the Office of Safeguards on-site review to assess ICE's compliance with Publication 1075 requirements by means of manual and automated compliance and vulnerability assessment testing, including coordination with information technology (IT) divisions to secure pre-approval, if needed, for automated system scanning and to support timely mitigation of identified risk to FTI in ICE's Corrective Action Plan (CAP) for as long as ICE maintains Federal tax returns and return information. Required reports will be transmitted in electronic format and on the template provided by IRS Office of Safeguards using an IRS-approved encryption method in accordance with Publication 1075.

7. ICE will timely report all data incidents involving FTI to the Office of Safeguards and cooperate with Office of Safeguards investigators, providing data and access as needed to determine the facts and circumstances of the incident.

8. When a data incident results in ICE taking adverse or disciplinary action against an employee based on an unauthorized inspection or disclosure of FTI in violation of ICE's procedures ICE must notify each impacted taxpayer in writing. The notification letter must include the date of the unauthorized inspection or disclosure and the rights of the taxpayer

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

under IRC § 7431. ICE must report to IRS Safeguards when taxpayer notification letters are issued, in accordance with Publication 1075.

9. ICE will ensure that Federal tax return and return information is properly destroyed or returned to the IRS when no longer needed based on established ICE record retention schedules in accordance with Publication 1075.

10. ICE will conduct periodic internal inspections of facilities where Federal tax returns and return information is maintained to ensure IRS safeguarding requirements are met and will permit the IRS access to such facilities as needed to review the extent to which ICE is complying with the IRC § 6103(p)(4) requirements of this section.

11. IRC § 6103(p)(9) requires ICE to conduct on-site assessments of each contractor's compliance with safeguarding requirements. ICE must submit findings of the most recent review as part of the annual SSR submission. ICE must certify to the IRS that each contractor is in compliance with safeguarding standards in accordance with Pub 1075. ICE must ensure that contracts with contractors and subcontractors performing work involving returns or return information contain specific language requiring compliance with IRC § 6103(p)(4) and Publication 1075 standards. Contract language must enforce ICE's right to access contractor and subcontractor facilities in order to comply with IRC § 6103(p)(9) to ensure IRS safeguarding requirements are met.

12. Usage of FTI for Artificial Intelligence (AI) purposes must be disclosed to the Office of Safeguards for assessment of compliance with safeguard requirements.

B. Generally, this MOU covers secure electronic transmission of Federal tax returns and return information to ICE, provided ICE computer systems are compliant with National Institute of Standards and Technology (NIST) Special Publication 800-53 standards and guidance for security of data at the moderate impact level. ICE's SSR must fully describe the computer system and security controls implemented for the receipt, processing, storage, and transmission of electronic Federal tax returns and return information. Required security controls for systems that receive, process, store, and transmit electronic Federal tax returns and return information are specified in Publication 1075.

C. Any creation or receipt of Federal tax returns and return information in paper format must also be fully disclosed in ICE's SSR. Required security controls associated with the receipt, processing, and storage of any Federal tax returns and return information received in paper format are specified in Publication 1075.

D. ICE must report suspected unauthorized inspection or disclosure of Federal tax returns and return information within 24 hours of discovery to the IRS Office of Safeguards in accordance with Publication 1075.

E. IRS will conduct periodic safeguard reviews of ICE to assess whether security and confidentiality of Federal tax returns and return information is maintained consistent with the

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

safeguarding protocols described in Publication 1075, ICE's SSR, and in accordance with the terms of this MOU. Periodic safeguard reviews will involve the inspection of ICE's facilities where FTI is maintained; the testing of technical controls for computer systems storing, processing, or transmitting FTI; review of ICE's recordkeeping and policies; and interviews of ICE's employees to verify the use of FTI and to assess the adequacy of procedures established to protect FTI.

F.   ICE recognizes and will reflect in its actions and procedures that all Safeguards documents and related communications are IRS official records; that they are property of the IRS; that IRS records are subject to disclosure restrictions under Federal law and IRS rules and regulations and may not be released publicly under state Sunshine or Information Sharing/Open Records provisions and that any requestor seeking access to IRS records should be referred to the Federal Freedom of Information Act (FOIA) statute. If ICE determines that it is appropriate to share Safeguards documents and related communications with another governmental function/branch for the purposes of operational accountability or to further facilitate protection of FTI, the recipient governmental function/branch must be made aware, in unambiguous terms, that Safeguards documents and related communications are property of the IRS; that they constitute IRS official records; that any request for the release of IRS records is subject to disclosure restrictions under Federal law and IRS rules and regulations and that any requestor seeking access to IRS records should be referred to the Federal Freedom of Information Act (FOIA) statute. Federal agencies in receipt of FOIA requests for Safeguards documents must forward them to IRS for reply.

G.   All information received from ICE under this MOU becomes return information as defined in IRC § 6103(b)(2) and will not be further disclosed or disseminated except as authorized by IRC § 6103.

**10.   TRANSMITTAL PROCEDURES:**

Transmittal procedures and transmittal security requirements will be included in a separate implementation agreement entered into between IRS and ICE.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**11. LIABILITY:**

A. Each party to this MOU shall be liable for the acts and omissions of its own employees.

B. The IRS shall not be liable for any injury to another party's personnel or damage to another party's property unless such injury or damage is compensable under the Federal Tort Claims Act (28 U.S.C. § 1346(b)), or pursuant to other Federal statutory authority. Similarly, ICE shall not be liable for any injury to another party's personnel or damage to another party's property unless such injury or damage is compensable under applicable Federal Tort Claims Act (28 U.S.C. § 1346(b)), or pursuant to other Federal statutory authority.

C. This MOU is not an obligation or commitment of funds, nor a basis for transfer of funds, but rather is a basic statement of the understanding between the parties. Unless otherwise agreed in writing, each party shall bear its own costs in relation to this MOU. Expenditures by each party will be subject to its budgetary processes and to the availability of funds and resources pursuant to applicable laws, regulations, and policies.

**12. THIRD PARTY RIGHTS:**

This MOU does not confer any rights or benefits on any third party.

**13. PRIVACY:**

The IRS and ICE will ensure the integrity and accuracy of personal and financial data. The IRS and ICE will perform their duties in a manner that recognizes and enhances individuals' right of privacy and will ensure their activities are consistent with laws, regulations, and good administrative practices.

**14. EFFECTIVE DATE:**

The effective date of this MOU is the date it has been signed by all parties to the Agreement. The information exchange contained in this agreement will not commence until a separate implementation agreement between the IRS and ICE has been signed and implemented.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**15. AMENDMENT OF MOU:**

This MOU may be amended by deletion or modification of any provisions, provided that such amendment is in writing and is signed by all parties to the MOU.

**16. TERMINATION OF MOU:**

(U//LES) This MOU will remain in effect as necessary for the IRS to provide address information in response to ICE requests satisfying the requirements contained in this MOU.  This MOU may be terminated upon ninety  (90) days written notice by either the IRS or ICE, which shall describe the rationale for the termination and be publicly posted on the respective party's website 90 days prior to termination.

**17. LIMITATIONS:**

Any provision of this MOU which conflicts with Federal law will be null and void. The provisions of paragraph 11, *Liability*, will continue until all potential liabilities have lapsed.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

Page 20 of 22

Filed: 09/17/2025

Document #2135321

USCA Case #25-5181

**APPROVALS**:

U.S. DEPARTMENT OF TREASURY on behalf of the
INTERNAL REVENUE SERVICE

Secretary Scott Bessent

Date: April 07, 2025

U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

Secretary Kristi Noem

Date: April ___, 2025

12
**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**APPROVALS**:


U.S. DEPARTMENT OF TREASURY on behalf of the
INTERNAL REVENUE SERVICE


_____
Secretary Scott Bessent

Date: April ___, 2025




U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT


_____
Secretary Kristi Noem

Date: April 7, 2025


12
**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

Page 22 of 22

Filed: 09/17/2025

Document #2135321

USCA Case #25-5181

**EXHIBIT A – POINTS OF CONTACT**

**INTERNAL REVENUE SERVICE:**

Name:
Title:
Phone:
Email:

Name:
Title:
Phone:
Email:

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT:**

Name:
Title:
Phone:
Email:

Name:
Title:
Phone:
Email:

13

UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE